

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ AUG 17 2010 ★

BROOKLYN OFFICE

### UNITED STATES DISTRICT
### EASTERN DISTRICT COURT OF NEW YORK

CONCEPCION CAMPBELL,
**individually & for all those similarly situated,**
**Plaintiff,**

-against-

STEVEN J. BAUM, ESQ.; STEVEN J. BAUM, PC;
STEPHANIE M. VAMPOTIC; DAWN HANZLIK-
HEXEMER, ESQ.; JANE & JOHN DOES 1-10 AS
AGENTS AND/OR EMPLOYEES RELATED
TO STEVEN J. BAUM, PC; MERSCORP, INC.;
MORTGAGE ELECTRONIC REGISTRATIONS,
INC.; REBECCA A. COSGROVE; JOHN DOES 1-10
AS AGENTS AND/OR EMPLOYEES RELATED
TO DEFENDANT MERSCORP, INC.;&
HSBC MORTGAGE CORP;
**Defendants.**

CASE NUMBER: **10 · 3800**

*SUMMONS IN A CIVIL ACTION*

**Plaintiff demands trial by jury**
**CIVIL**
**COMPLAINT FOR DAMAGES**

PLAINTIFF DEMANDS TRIAL BY JURY

# WEINSTEIN, J.
## J. ORENSTEIN, M.J.

Assigned to: Hon. _____

Plaintiff, Concepcion Campbell ("Campbell"), by and through her counsel, complains as follows:

### JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this action pursuant to federal question under 18 U.S.C.A. §§1961-68, 18 U.S.C.A. §1343 and 28 U.S.C. §1331; 12 U.S.C.§ § 2605-2608, and 15 U.S.C. §1692.

2. Diversity subject matter jurisdiction exists over this class-action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2,119 Stat. 4 (CAFA"), amending 28 USC §1332, at new subsection (d), conferring federal jurisdiction over class actions involving (a) 100 or more members in the proposed Class; (b) at least some members of the proposed class have different citizenship from some Defendnats and (c) the claims of the proposed class members exceed the sum or value five million dollars ($5,000,000) in the aggregate. 28 U.S.C. §1332(d)(2) and (6).

3. Venue is proper in the Eastern District of New York, Brooklyn, pursuant to 28 U.S.C. §1391 and 18 U.S.C. §1965(a), in that Defendants systematically conduct and transact substantial business in this State and District as New York State licensed attorneys, licensed banks and corporations organized and operating in the State of New York, the causes of action occurred in this District and Plaintiff Campbell resides in Kings County Brooklyn.

## PARTIES

4. Plaintiff Campbell is a resident of the State of New York, Kings County, Brooklyn.

5. Defendant Steven J. Baum, Esq. is a New York State licensed attorney who owns and operates Defendant Steven J. Baum, PC (collectively, "Baum"), with an office located at 220 North Pointe, Parkway, Suite G, Amherst, NY 14228 that conducts substantial business in this District filing foreclosures and default documents in the Courts and with the County Clerks in this District.

6. Defendants Stephanie M. Vamporic, Dawn Hanzlik-Hexemer, Esq., Jane & John Does 1-10 as agents and/or employees of Steven J. Baum, PC are employees and/or licensed attorneys who work under the direct supervision, management and control of Defendants Baum throughout New York State and in this District.

7. Defendant Merscorp, Inc. is a foreign corporation located at 1818 Library Street, Suite 300 Reston, VA 20190 transacting substantial business in the State of New York and the Eastern District as a foreclosure industry registration service that is the sole shareholder of the entity Defendant Mortgage Electronic Registrations Systems, Inc. (collectively, "MERS") which served as the "nominee" on documents at issue in this action.

8. During all relevant times stated herein, Defendant MERS executed and/or had filed in the New York State Supreme Court, Kings County and with the Kings County Clerk legal documents, including Mortgages, Notes and they allege to file Assignments of Notes.

9. Defendant HSBC Mortgage Corp. ("HSBC") is a Delaware corporation transacting sunstantial banking business in the State of New York and the Eastern District with banks located in the State of New York and Kings County, maintaining a principal place of business in Buffalo, New York and is a principal shareholder of Defendant MERS.

10. Upon information and belief, Defendant Rebecca A. Cosgrove is an employee of Defendants MERS, HSBC and/or Defendants Baum in the State of New York and she has executed legal documents filed in the Eastern District on behalf of said Defendants.

11. Defendants Jane & John does 1-10 as agents and/or employees related to Steven J. Baum, PC are at all times relevant herein were acting under the direction and supervision of Defendants Baum as co-conspirators to the acts alleged herein that occurred throughout the State of New York and in this District. Their identities are to be discovered in this action.

12. Defendants Jane & John does 1-10 as agents and/or employees related to Merscorp, Inc. are at all times relevant herein were acting under the direction and supervision of Defendant MERS as

co-conspirators to the acts alleged herein that occurred throughout the State of New York and in this District. Their identities are to be discovered in this action.

## FACTS

13. On or about July 13, 2005, Plaintiff Campbell as Mortgagor executed a 30 year mortgage of $190,000 at 5.85% annual interest for monthly payments of $1,23.93 on her home located at 171 Union Street, Brooklyn, with Defendant MERS as Mortgagee (the "Mortgage") (**Exhibit "A"**- attached hereto and made a part hereof as if fully set forth herein).

14. On or about July 28, 2005, the Mortgage was recorded naming Defendant MERS as Mortgagee.

15. Upon information and belief, Defendant MERS was created in 1996 by the mortgage banking industry to create a secondary mortgage market, internally administer the purchasing and selling of mortgaged and simplify home mortgage administration, including foreclosure proceedings.

16. In the case at bar, Defendants never assigned Plaintiff's mortgage to Defendant HSBC

17. Members of Defendants MERS are mortgage originators, mortgage servicers and sub-servicers, warehouse lenders, wholesale lenders, retail lenders, settlement agents, title companies,insureres and investors who act as agents of Defendants MERS.

18. At all relevant times herein, Defendant MERS was under the direct control of Defendant HSBC as one of many other banks, including Citigroup, JPMorgan Chase and Wells Fargo, that own, operate, control, manage and direct the activities of Defendant MERS.

19. Defendant MERS was created and established to facilitate the business interests and limit the liability of its members, including Defendant HSBC.

20. Upon information and belief, Defendant MERS has an annual income of $11 Million Dollars and about 40 employees.

21. Upon information and belief, Defendant HSBC makes hundreds of billions of dollars annually.

22. Mortgages registered with the MERS' registry system hold title in Defendant MERS' name.

23. Defendant MERS saves its members, one of which being Defendant HSBC, county filing fees by not recording assignments that Defendants' mortgage documents state they will assign.

24. Defendants Baum is a mortgage foreclosure business representing banks, including Chase, HSBC, Bank of America and admits that they are "a New York State law firm serving the default industry." at http://www.mbaum.com/SJB/index.jsp .

25. Upon information and belief, Defendant Baum over the years has filed tens of thousands of foreclosures in the New York State Supreme Court and other Courts against homeowners and their properties throughout the State of New York, including this District, by naming a member of the MERS system as the mortgagee when the mortgage was never assigned to that member.

26. On June 7, 2007 a Notice of Pendency and Foreclosure Complaint was filed against Plaintiff by Defendants Baum as attorneys for Defendant HSBC stating Defendant HSBC was foreclosing on a Plaintiff's July 13, 2005 Mortgage (**Exhibit "B"**- attached hereto and made a part hereof as if fully set forth herein).

27. Both the Notice of Pendency and the Foreclosure Complaint ¶3 state "Said Mortgage to be assigned by an Assignment to be recorded in the Office of the Clerk of KINGS County."

28. Attached to the documents referred to in ¶26 herein above, Defendant Dawn Hanzlick-Hexemer executed and filed affidavits under penalty of perjury that the Notice of Pendency and Foreclosure Complaint filed with the Kings County Court and clerk were not "frivolous" after due inquiry and that "the grounds for her belief as to all matters in the complaint not stated to be upon her knowledge are the original note, mortgage and/or financial statements together with correspondence."

29. Defendant Dawn Hanzlick-Hexemer is not an agent or officer of Defendants MERS or HSBC.

30. On September 3, 2009, Defendants Baum, by their agent and employee attorney Michelle Maccagnano, admitted to Plaintiff's counsel that Defendants Baum never had the original Note as follows:

> "**From:** Michelle D. Maccagnano [mailto:Michelle-Maccagnano@mbaum.com]
> **Sent:** Thursday, September 03, 2009 11:36 AM
> **To:** Susan Chana Lask, Esq.
> **Subject:** RE: Campbell-Subpoena
>
> The only communications that will not be provided will be those between our office and our client. To the extent that we possess any communications with your client, they will be provided. **We do not have the original note as the original note is not required in the State of New York to commence a foreclosure action.** Upon information and belief, our client would be in control of the original note."

31. The admission that Defendants Baum did not have the original Note means Defendant Dawn Hanzlick-Hexemer's affidavits referred to in ¶27 hereinabove were fraudulent filings.

32. Nowhere did the Foreclosure Complaint establish a prima facie case in an action to foreclose a mortgage by establishing the existence of the mortgage and the mortgage note, *ownership of the mortgage*, nor did it disclose that Defendant HSBC was the assignee of the mortgage or provide proof that HSBC was an assignee of the originally recorded Mortgage as required by law.

33. The Notice of Pendency and Foreclosure Complaint named Defendant HSBC as the plaintiff yet HSBC had no standing as a plaintiff to foreclose as no assignment from Defendant MERS existed to Defendant HSBC.

34. The Foreclosure Complaint conceals facts and is deliberately disoriented to sow confusion that at ¶15 it states the Mortgage was to Defendant Mers " as nominee for HSBC" but provides no proof of an actual assignment to HSBC.

35. The Notice of Pendency and Foreclosure Complaint and affidavits attached thereto were fictitious, false, and fraudulent legal documents filed in the Courts and County Clerk's office under penalty of perjury.

36. On October 30, 2007, a Satisfaction of Mortgage, dated October 17, 2007, was recorded in the Kings County Clerk's office regarding Plaintiff's 2005 Mortgage, with a cover page listing Defendant HSBC as presenter but MERS as Mortgagee (**Exhibit "C"**- attached hereto and made a part hereof as if fully set forth herein).

37. Page 2 of the Cover page to the Satisfaction of Mortgage lists HSBC as Mortgagee.

38. The actual Satisfaction document states Defendant HSBC is the lender with MERS as the Mortgagee, and that "The mortgage has not been assigned unless stated below".

39. There is no statement in the Satisfaction of Mortgage of any assignment, recorded or otherwise.

40. The Satisfaction is signed by Defendant Rebecca A. Cosgrove as an Officer of Defendant Mers and notarized as by an Erie New York notary.

41. Defendant Cosgrove claims to be an officer of Defendant MERS whose offices are located in Virginia, not Erie, New York.

42. Erie New York is located near Buffalo New York where Defendants Baum are located.

43. Upon information and belief, Cosgrove is not an officer of Defendant MERS.

44. Upon information and belief, the notary is a fraud and known to be a fraud by Defendants.

45. The Satisfaction of Mortgage along with the affidavits attached thereto were fictitious, false, and fraudulent legal documents filed in the County Clerk's office under penalty of perjury.

46. Defendants knew they filed false and fraudulent documents with the court and county clerk to foreclose on Plaintiff's property.

47. Defendants participated in a scheme to file fraudulent foreclosure documents against Plaintiff to extract money and her property from her knowing the Mortgage was never assigned and that Defendant HSBC had no standing to file a foreclosure.

48. New York Federal and State Courts consistently hold that a "mortgagee" that files a foreclosure complaint in the courts without standing equates to fraud.

49. New York criminal statutes relating to false filings and perjury exist to protect citizens and the judiciary from false filings, including §210.05:A person is guilty of perjury in the third degree when he swears falsely;§ 210.35: A person is guilty of making an apparently sworn false statement in the second degree when (a) he subscribes a written instrument knowing that it contains a statement which is in fact **false** and which he does not believe to be true, and (b) he intends or believes that such instrument will be uttered or delivered with a jurat affixed thereto, and (c) such instrument is uttered or delivered with a jurat affixed thereto; and (c)§ 175.35 Offering a false instrument for filing in the first degree-A person is guilty of offering a false instrument for filing in the first degree when, knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision, public authority ..., he offers or presents it to a public office, public servant, public ...with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, public authority ...; and §175.30 A person is guilty of offering a false instrument for filing in the second degree when, knowing that a written instrument contains a false statement or false information, he offers or presents it to a public office or public servant with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant.

50. The Foreclosure Complaint was the typical slovenly and ambiguous document recently complained of by many New York State judges as it named persons irrelevant to the action at paragraph 26 as "Patricia Graziano and Lena M. Alio" and after ¶35 it states "**Add to WHEREFORE Clause" with improper numeration.

51. The Foreclosure Complaint is a document that is one of thousands of sloppy, irresponsible and fraudulent Court filings as part of Defendants Baum "foreclosure mill" practice which, upon information and belief, is a conspiracy between the Defendants to unlawfully extract money and

property from desperate homeowners throughout the State of New York after they have sold parts of the "bad paper" mortgages they made to hundreds of thousands of homeowners nationwide during the home buying boom.

52. Upon information and belief, Defendants are part of the nationwide foreclosure scandal who knew in advance their "bad paper" would bust so they sold and resold it to investors over the years and when it completely failed, after making money on it, they knew they could make more money by taking the property from fraudulent foreclosure filings and auctioning it off.

53. Upon information and belief, the original sales and resales of the "bad paper" included sales to investors in the stock market that affects interstate commerce.

54. Upon information and belief, the real parties in interest, here being Defendant HSBC, received the benefit of obtaining "mortgage insurance" which was an additional fraud when Defendants MERS never assigned the mortgage to them; thus, Defendants engaged in insurance fraud.

55. Upon information and belief, the present mortgage crisis and economic recession was planned in advance by our own banking institutions, including Defendants HSBC and MERS with the help of attorney "Foreclosure Mills" such as Defendants Baum, all of whom profit from their conspiracy while homeowners and American citizens suffer.

56. On July 31, 2007, Defendants Baum and Vampotic sent a reinstatement letter to Plaintiff listing the following fees due Defendants Baum to reinstate the Mortgage:

| | |
|---|---|
| **Bank Charges** | |
| PROPERTY INSPECTIONS | $66.50 |
| ESCROW ADVANCE | $301.56 |
| LATE CHARGES | $505.80 |
| OVERDUE PAYMENTS | $10,282.44 |
| **Disbursements** | |
| SEARCH CHARGES | $485.00 |
| INDEX NUMBER FEE | $210.00 |
| NOTICE OF PENDENCY FILING FEE | $35.00 |
| SERVICE FEES | $950.00 |
| CANCEL NOTICE OF PENDENCY | $35.00 |
| **Attorney Fees** | |
| LEGAL FEES TO FORECLOSURE | $1,620.00 |
| **REINSTATEMENT AMOUNT DUE AS OF JULY 31, 2007** | |
| **TOTAL PAYABLE TO:STEVEN J. BAUM, PC** | **$14,491.30** |
| **Estimated Additional Attorney Fees & Disbursements** | |
| **Good Through August 15, 2007** | |
| REQUEST FOR JUDICIAL INTERVENTION FEE | $95.00 |
| COURT ADMIN. FEE (EXPARTE/MOTION) | $45.00 |

| | |
|---|---|
| OVERNIGHT MAIL | $10.00 |
| COURT SERVICE | $62.50 |
| **ESTIMATED ADDITIONAL REINSTATEMENT AMOUNT** | |
| **GOOD THROUGH AUGUST 15, 2007** | |
| **TOTAL PAYABLE TO: STEVEN J. BAUM, PC** | **$14,703.80** |

57. Upon information and belief, the actual legal fees paid by Defendants MERS or HSBC are about $400, not $1,620, and other above listed fees are inflated and false.

58. Plaintiff's mortgage ¶14 states that the Lender may charge her fees on default which means actual fees paid, not false or inflated fees to Defendants Baum.

59. The July 31, 2007 reinstatement letter stated Defendants Baum were acting as debt collectors "pursuant to federal law".

60. On or about September 28, 2007, Defendants Baum sent a Payoff statement to Plaintiff's attorney Alfred Walendowski listing different numbers :

**Bank Charges**

| | |
|---|---|
| PROPERTY INSPECTIONS | $95.00 |
| ESCROW ADVANCE | $1,823.94 |
| LATE CHARGES | $393.40 |
| INTEREST | $8,141.30 |
| PRINCIPAL BALANCE | $186,574.54 |
| RECORDING FEE | $40.00 |

**Disbursements**

| | |
|---|---|
| SEARCH CHARGES | $485.00 |
| INDEX NUMBER FEE | $210.00 |
| NOTICE OF PENDENCY FILING FEE | $35.00 |
| SERVICE FEES | $950.00 |
| REQUEST FOR JUDICIAL INTERVENTION FEE | $95.00 |
| COURT ADMIN. FEE (EXPARTE/MOTION) | $45.00 |
| COURT SERVICE | $62.50 |
| CANCEL NOTICE OF PENDENCY | $35.00 |
| **Attorney Fees** | |
| LEGAL FEES TO FORECLOSURE | $1,260.00 |
| **PAYOFF AMOUNT DUE AS OF SEPTEMBER 28, 2007** | |
| **TOTAL PAYABLE TO:STEVEN J. BAUM, PC** | **$200,???** |
| **Estimated Additional Attorney Fees & Disbursements** | |
| **Good Through August 15, 2007** | |
| REQUEST FOR JUDICIAL INTERVENTION FEE | $? |
| COURT ADMIN. FEE (EXPARTE/MOTION) | $45.00 |
| REFEREE'S FEE TO COMPUTE | $50.00 |
| OVERNIGHT MAIL | $10.00 |
| COURT SERVICE | $125.00 |
| 28 DAYS OF INTEREST @$30.030833 PER DIEM | $840.?? |
| **ESTIMATED ADDITIONAL REINSTATEMENT AMOUNT** | |

**GOOD THROUGH OCTOBER 26, 2007**
**TOTAL PAYABLE TO: STEVEN J. BAUM, PC**                    **$201,316.54**

61. That September 28, 2007 payoff letter stated Defendants Baum were acting as debt collectors "pursuant to federal law".

62. Plaintiff's mortgage ¶14 states that the Lender may charge fees on default, which means actual fees paid, not false or inflated fees to Defendants Baum.

63. Upon information and belief, Defendant Steven Baum acting by himself or through or with the other persons, associations and/or companies, has formulated, directed, controlled, or participated in the acts or practices of Defendants Steven Baum P.C., MERS and HSBC as set forth in this Complaint, including developing, producing, creating and disseminating to Plaintiff and the purported class members false, fraudulent and deliberately deceitful (a) collection letters regarding impending foreclosures, (b) Notice of Pendencies, (c) Summons and Complaints for Foreclosure, (d) other legal documents filed with courts and clerks throughout the State of New York and (e) Reinstatement and Payoff letters.

64. Upon information and belief, Defendants MERS and HSBC acting by themselves or through or with the other persons, associations and/or companies, have formulated, directed, controlled, or participated in the acts or practices of Defendants Baum and all other Defendants named herein as set forth in this Complaint, including developing, producing, creating and disseminating to Plaintiff and the purported class members internationally false, fraudulent and deliberately deceitful (a) collection letters regarding impending foreclosures, (b) Notice of Pendencies, (c) Summons and Complaints for Foreclosure, (d) other legal documents filed with courts and clerks throughout the State of New York and (e) Reinstatement and Payoff letters.

65. Defendants, including licensed attorneys, have become skilled in using the artifice of MERS to sabotage the judicial process to the detriment of homeowner borrowers.

66. Upon information and belief, from on or about January, 2006 to date, Defendants engaged in a pattern and practice being a scheme to prey upon the homeowners of the State of New York and the New York Judiciary and County Clerks' by use of the federal wires and mails to citizens, other counsel, the judiciary, and clerks by making believe they are filing proper legal papers when they actually are filing fraudulent documents to take people's homes, property and money away from them and to Defendants.

67. By entering into their scheme of filing unlawful foreclosures, Defendants Baum and the other conspiring Defendants were and are able to secure a reliable source of income wherein Defendants Baum make legal fees and other costs above and beyond actual costs incurred and

Defendants HSBC and MERS make money from the foreclosed properties by getting the loans paid off based on their fraudulent letters and foreclosure filings or taking over homeowners homes and auctioning or selling them off.

68. To further their scheme, Defendants used the federal wires and mail to transfer said income, monies received at the foreclosure closings and sent their false and fraudulent payoff and other letters to homeowners, banks, title companies, attorneys, judges, court clerks and county clerks regarding their false foreclosure filings.

69. At all times relevant herein, Defendants knew it was unlawful, unethical and improper to deceive the public and the judiciary that could lead to referral to a disciplinary committee and a risk of revocation or suspension of one or more of the Conspiring Defendants' licenses to practice law.

**CLASS ACTION ALLEGATIONS**

70. Plaintiff brings this action on behalf of herself and as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of the following class:

"Between January, 2005 to date, all persons in the State of New York subjected to Defendants' Baum collection procedures to foreclose their home mortgages naming Defendant MERS on said mortgages who were served with or received from Defendants' Baum foreclosure papers, including but not limited to reinstatement letters, payoff letters, Notice of Pendencies and/or Foreclosure Complaints filed naming a banking institution other than Defendant MERS, which said homeowners either paid off their mortgage in response thereto or lost their homes."

71. Excluded from the class are Defendants, their subsidiaries and affiliates, officers, directors, and employees.

72. Plaintiff believes that there are at least some ten thousand members of the class as above described; their exact number and identities are currently unknown. The basis of this belief is that recent news articles report Defendants Baum file over ten thousand foreclsoures at issue annually. As this case includes the past 6 years at about ten thousand filings a year, then there are enough persons to form a class.

73. The members of the class are so numerous that joinder of all members is impracticable.

74. There are questions of law and fact common to the members of the class, which questions relate to the existence of the acts of the Defendants hereinafter alleged, the wrongful nature thereof, and the type of damage sustained as a result thereof, to wit:

(a) Is Defendant Baum and his Defendant employees and agents working at his office in a conspriracy with Defendants MERS and HSBC to serve fraudulent foreclosures upon homeowners in the State of New York to deceive homeowners into paying their mortgages off and/or removing them from their homes so Defendants could sell the properties?

(b) Are Defendants filing fraudulent foreclosure papers with the courts of the State of New York and the County Clerks to deceive the Courts and clerks that they are accepting proper legal papers when the papers are fictitious?

(c) Are Defendants Baum and his Defendant employees and agents, some being licensed attorneys, deliberately drafting and filing ambiguous legal documents to confuse the courts, clerks and homeowners as to whom the real party in interest is in the collection and foreclsoure proceedings they commence to avoid following the law by filing assignments of mortgage to avoid paying county clerk fees?

(d) Is the conduct of Defendants illegal, unlawful and criminal to which they are engaging in a racket against the public and the judiciary that causes homeowners to unlawfully lose their homes and ay money to Defendants?

(e) Is Defendants Baum charging inflated and other fees to homeowners that are not permitted by the Mortgages he seeks to collect nor actual fees incurred?

(f) Are Defendants making profits from their illegal, unlawful and criminal conduct?

75. Plaintiff's claims are typical of the claims of class members, and she will fairly and adequately protect the interests of the class. The interests of Plaintiff are coincident with, and not antagonistic to, those of the other members of the class.

76. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

77. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

78. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

79. The class is readily definable and prosecution as a class will eliminate the possibility of repetitious litigation, while also providing redress for claims too small to support the expense of individual, complex litigation.

**COUNT ONE**
(Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(a))

80. The averments of the above stated paragraphs are stated here as if fully set forth herein.

81. Plaintiffs and each member of the Class are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964.

82. Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3).

83. Defendant Baum is the leader, manager, organizer and controller who influences the enterprise consisting of all other Defendants.

84. Defendants follow the directions of Defendant Baum to file fraudulent foreclosures, false letters, and other false documents with courts and county clerks to promote his scheme to defraud the the public and the judiciary to fictionalize foreclosures in the name of partys without standing.

85. With respect to Plaintiff's claims under 18 U.S.C. §1962(a) Defendants together constitute an "enterprise" as that term is defined in 18 U.S.C. § 1961(4), which through Defendants, were and are engaged in interstate or foreign commerce and the activities of which affect interstate or foreign commerce.

86. During the Class Period, the acts lasted a substantial period of time and to date do last indefinitly and are pervasive as Defendants intend to have them last indefinitely and to victimize tens of thousands of homeowners, attorneys and the judiciary by perpetuating their frauds and deceptions.

87. Defendants acting individually and/or by and through their officers and directors, engaged in a fraudulent scheme and common plan which included using or causing the interstate wires to transfer and obtain funds from the fraudulent foreclosures and by so doing they engaged in multiple commissions of wire fraud involving the same and/or similar fraudulent representations to tens of thousands of homeowners, violating 18 U.S.C. §§ 1341 and 1343, and 15 U.S.C. §§ 45 and 52.

88. This conduct constitutes predicate acts of racketeering activity within the meaning of 18 U.S.C. § 1961(1). All such instances were related in their common objective, or repeated on multiple occasions during the Class Period, and are capable of further repetition, as a result of which they constitute a pattern of racketeering activity.

89. Defendants and their respective agents have used or invested income derived from this pattern of racketeering activity in the enterprise in violation of 18. U.S.C. § 1962(a), including use of the proceeds of their racketeering activity to further their scheme.

90. Plaintiffs and the other members of the Class suffered injury and financial damages to their by reason of Defendants' use for investment of income derived from their pattern of racketeering and the enterprise, which used or invested enabled the enterprise to continue its operations, and paid for Defendants' perpetuation of their fraudulent activities, as a result of which Plaintiff and the other members of the Class have been deceived to believe they were in foreclosure when the foreclosure documents were unlawful.

91. The amount of financial damage remains undetermined.

## COUNT TWO
(Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d))

92. The averments of the above stated paragraphs are stated here as if fully set forth herein.

93. Defendants have conspired to use or invest income derived from a pattern of racketeering activity along with each other, all in violation of 18 U.S.C. § 1962(d).

94. Plaintiff and members of the Plaintiffs' class suffered injury and financial damage to their property by reason of Defendants' conspiracy

## COUNT THREE
(Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c))

95. The averments of the above stated paragraphs are stated here as if fully set forth herein.

96. The association in fact of the Defendants is an enterprise engaged in, and whose activities affect, foreign and interstate commerce within the meaning of 18 U.S.C. §§ 1961(4) and 1962. The enterprise exists separate and apart from the pattern of racketeering alleged.

97. Defendants conducted or participated, directly and/or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

98. The conspiracy was agreed upon between Defendants wherein Defendants Baum perpetuated the false, fraudulent and deceitful foreclosure filings for years.

99. The other named Defendants agreed to the conspiracy of the fraudulent foreclosure filing scheme by using their computers, phones and wires to distribute to homeowners and judiciary the false, fraudulent and deceitful foreclosure filings and false county clerk recordings.

100. Plaintiff and the other members of the Class sustained injury and financial damages to their property as a direct and proximate result of the acts of Defendants and the enterprise by Defendants through the pattern of racketeering activity alleged herein.

## COUNT FOUR
(Wire Fraud)

101. The averments of the above stated paragraphs are stated here as if fully set forth herein.

102. Defendants' accomplished and completed their fraudulent scheme to defraud the public and judiciary by using the wires via e-mail, the web and faxing their fraudulent foreclosure documents and related letters in violation of 18 U.S.C. § 1343 wherein the transmissions were made in and left the State of New York between all named Defendants and to the public, plaintiff,

**115.**   Unless enjoined, Plaintiffs and the members of the Class will be irreparably harmed.

**116.**   Defendants should therefore be required to disgorge the profits they have obtained and will unjustly obtain at the expense of the members of the Class and homeowners or their agents who paid any sums to them during this period of fraud as detailed above, and a constructive trust should be imposed thereon.

### COUNT EIGHT
(RESPA Violation)

**117.**   The averments of the above stated paragraphs are stated here as if fully set forth herein.

**118.**   Pursuant to 12 U.S.C. §2605 a Lender shall notify the borrower in writing of any sale, transfer or assignment of the mortgage within 15 days of the assignment.

**119.**   Defendants Baum, MERS and HSBC filed legal documents in the foreclosure action against Plaintiff stating the mortgage was assigned to HSBC.

**120.**   Plaintiff never received a 15 day notice.

Plaintiff demands damages pursuant to 12 U.S.C. §2605(f) of any actual damages to her as a result of that failure, and any additional damages as the court may allow, up to $1,000 and Defendants are liable in the case of this class action for any actual damages to the borrowers, and any additional damages in an amount not greater than $1,000 to each class member, except that the total amount of damages may not exceed the lesser of $500,000 or 1 percent of the net worth of the servicer and manda tory costs and attorney fees.

### COUNT NINE
(Fair Debt Collection Practices Act (FDCPA))

**121.**   The averments of the above stated paragraphs are stated here as if fully set forth herein

**122.**   Defendants Baum, MERS and HSBC were and are a debt collector under the FDCPA.

**123.**   Defendants Baum, MERS and HSBC filed false and fraudulent legal documents in the courts and county clerks to collect a debt they had no standing to collect.

**124.**   Defendants Baum, MERS and HSBC deceived Plaintiff and the class into believing they owed a debt because of legal documents that were actually unlawful.

**125.**   Plaintiff demands damages under the FDCPA 15 U.S.C. §1692K providing for civil liability and damages against any debt collector who fails to comply with any provision thereof with respect to a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members,

4. That Defendants, their subsidiaries, successors, transferees, assignees and their respective officers, directors, partners, agents, and employees, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or reviving the unlawful conduct alleged herein with respect to any product;

5. That reasonable attorney fees and costs of the suit be granted to Plaintiff and the Class;

6. That Punitive damages be granted to Plaintiff and the Class;

7. That compensatory damages, restitution and all allowable damages be granted to Plaintiff and the Class regarding the FDCPA, RESPA, Fraud, Unjust Enrichment and other violations alleged herein above; and

6. That Plaintiff and members of the class have such other, further and different relief as the Court may deem just and proper.


Dated:   August 17, 2010                    LAW OFFICES OF SUSAN CHANA LASK
         New York, NY


                                            By: Susan Chana Lask, Esq.(SCL-1744)
                                            Attorney for Plaintiff
                                            244 Fifth Avenue, Suite 2369
                                            New York, NY 10001
                                            (212) 358-5762

MAY-31-2007  14:38      PERSONAL TOUCH RESEARCH          7188581934     P.012

# EXHIBIT A

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2005072000450001002EC76F

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 23 |
|---|---|

Document ID: 2005072000450001      Document Date: 07-13-2005      Preparation Date: 07-27-2005
Document Type: MORTGAGE
Document Page Count: 22

| PRESENTER: | RETURN TO: |
|---|---|
| DIRECT LAND SERVICE CORP, AS AGENT FOR OLD REPUBLIC<br>7823 15TH AVENUE<br>DLS-5230-O PICK UP<br>BROOKLYN, NY 11228<br>718-833-0200 | POLLACK, POLLACK, ISAAC AND DECICCO ESQS<br>225 BROADWAY SUITE 307<br>NEW YORK, NY 10007 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 429 | 69  Entire Lot | | 371 UNION STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year_____ Reel ____ Page____ or File Number_____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| CONCEPCION CAMPBELL<br>371 UNION STREET<br>BROOKLYN, NY 11231 | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.<br>PO BOX 2026<br>FLINT, MI 48501 |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ 147.00 |
|---|---|---|---|
| Mortgage Amount: | $ | 190,000.00 | Affidavit Fee: $ 0.00 |
| Taxable Mortgage Amount: | $ | 190,000.00 | NYC Real Property Transfer Tax Filing Fee: |
| Exemption: | | | $ 0.00 |
| TAXES: County (Basic): | $ | 950.00 | NYS Real Estate Transfer Tax: |
| City (Additional): | $ | 1,900.00 | $ 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** |
| TASF: | $ | 475.00 | **OF THE CITY REGISTER OF THE** |
| MTA: | $ | 540.00 | **CITY OF NEW YORK** |
| NYCTA: | $ | 0.00 | Recorded/Filed     07-28-2005 17:22 |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): |
| TOTAL: | $ | 3,865.00 | 2005000423583 |

*Annette M Hill*

***City Register Official Signature***

(A)
12

EXHIBIT A

MAY-31-2007  14:38      PERSONAL TOUCH RESEARCH                    7188581934    P.013

Return To:
POLLACK, POLLACK, ISAAC
AND DECICCO
225 BROADWAY, SUITE
307, NEW YORK, NY
Prepared By:
MILLER, DANIELL, 2929
WALDEN AVENUE, DEPEW,
NY 14043

---

——————————————[Space Above This Line For Recording Data]——————————————

# MORTGAGE MIN 100022405499713512

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated July 13, 2005
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." CONCEPCION CAMPBELL.

whose address is 371 UNION STREET, BROOKLYN, NY 11231

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE,
MERS IS THE MORTGAGEE OF RECORD.
(D) "Lender." HSBC Mortgage Corporation (USA)

will be called "Lender." Lender is a corporation or association which exists under the laws of
DELAWARE                          Lender's address is 2929 WALDEN AVENUE,
DEPEW, NY 14043-2602

---

NY 3115                                                              0549971351
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3033 1/01

VMP®-6A(NY) (0009).07
Page 1 of 17                         Initials: C C
    VMP Mortgage Solutions, Inc. (800)521-7291

( 3

Title Number DLS-5230-O                                              Page    1

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northeasterly side of Union Street, distant 160 feet southeasterly from the corner formed by the intersection of the northeasterly side of Union Street with the southeasterly side of Smith Street;

RUNNING THENCE northeasterly parallel with Smith Street, 90 feet;

THENCE southeasterly parallel with Union Street, 14 feet;

THENCE southwesterly, again parallel with Smith Street, and part of the distance through a party wall, 90 feet to the northeasterly side of Union Street; and

THENCE northwesterly along the said northeasterly side of Union Street, 14 feet to the point or place of BEGINNING.

(E) "Note." The note signed by Borrower and dated **July 13, 2005**                    , will be called the "Note." The Note shows that I owe Lender **ONE HUNDRED NINETY THOUSAND and NO/100**

                                 Dollars (U.S. $**190,000.00**                )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by **August 01, 2035**

(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

NY 3115

Initials: *CC*

0549971351

-6A(NY) (0005).07                    Page 2 of 17                    Form 3033 1/01

### BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

### DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 371 UNION STREET

[Street]

BROOKLYN                         [City, Town or Village], New York 11231        [Zip Code].
This Property is in KINGS                                County. It has the following legal description: SEE SCHEDULE A ATTACHED HERETO THIS PROPERTY IS IMPROVED BY A TWO FAMILY DWELLING.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

NY 3115                                                                      0549971351

-6A(NY) (0006).07              Page 3 of 17         Initials: CC              Form 3033 1/01

(6

MAY-31-2007  14:38        PERSONAL TOUCH RESEARCH                7188581934    P.017

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

NY 3115

-6A(NY) (0005).07                    Page 4 of 17            Initials: CC            0549971351

Form 3033 1/01

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

NY 3115                                                                   0549971351

Initials: _CC_

-6A(NY) (0005).07                    Page 6 of 17                          Form 3033 1/01

(P

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

NY 3115                                                                    0549971351

VMP -6A(NY) (0005).07                      Page 8 of 17          Initials: CC          Form 3033 1/01

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

NY 3115                                                                                          0549971351

-6A(NY) (0005).07                    Page 7 of 17          Initials: _C.C._           Form 3033 1/01

20

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

NY 3115                                                                   0549971351

-6A(NY) (0008).07                      Page 8 of 17        Initials: CC          Form 3033 1/01

21

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

22

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

NY 3115                                                                        0549971351

-6A(NY) (0006).07                    Page 10 of 17          Initials: CC          Form 3033 1/01

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. Continuation of Borrower's Obligations And of Lender's Rights.

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations. If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

-6A(NY) (0005).07                    Page 11 of 17          Initials                Form 3033 1/01

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

NY 3115                                                                          0549971351

-6A(NY) (0005).07                    Page 12 of 17                    Form 3033 1/01

Initials: *C.C.*

25

MAY-31-2007  14:39   PERSONAL TOUCH RESEARCH                7188581934    P.026

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. **Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. **Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

NY 3115                                                                                    0549971351

-6A(NY) (0008).07                    Page 13 of 17            Initials: C.C            Form 3033 1/01

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

NY 3115                                                                          0549971351

®-6A(NY) (0005).07                 Page 16 of 17        Initials: C C            Form 3033 1/01

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____     _____ (Seal)
                                     CONCEPCION CAMPBELL         -Borrower

_____     _____ (Seal)
                                                                -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                                -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                                -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                                -Borrower

NY 3115                                              0549971351

-6A(NY) (0005).07              Page 16 of 17         Form 3033 1/01

STATE OF NEW YORK,                    **KINGS**                    County ss:


On the   **13TH**    day of    **JULY**, 2005              before me, the undersigned, a notary
public in and for said state, personally appeared


### CONCEPCION CAMPBELL

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public


Tax Map Information:

JAMES A. GORDON
Notary Public, State of New York
No. 01GO5020047
Qualified in Kings County
Commission Expires Nov. 3, 2005


NY 3115                                                                0549971351

**-6A(NY)** (0005).07           Page 17 of 17        Initials: _____        Form 3033 1/01


EXHIBIT A

EXHIBIT B

STATE OF NEW YORK
SUPREME COURT: COUNTY OF KINGS
--------------------------------------------------------X

HSBC MORTGAGE CORPORATION USA
2929 Walden Avenue
Depew, NY 14043

Plaintiff,

vs.

CONCEPCION CAMPBELL, ALVIN S. CALVIN,
NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD, NEW YORK CITY PARKING VIOLATIONS
BUREAU, NEW YORK CITY TRANSIT
ADJUDICATION BUREAU,

JOHN DOE (Said name being fictitious,
it being the intention of Plaintiff to
designate any and all occupants of
premises being foreclosed herein, and
any parties, corporations or entities,
if any, having or claiming an interest
or lien upon the mortgaged premises.)

Defendant(s).
--------------------------------------------------------X

NOTICE OF PENDENCY OF
ACTION

ORIGINAL FILED WITH THE
CLERK ON 10 7 07

INDEX NO.: 20393 07

Mortgaged Premises:
371 UNION STREET
BROOKLYN, NY 11231

SBL #:
Block: 429 Lot: 69

NOTICE IS HEREBY GIVEN, that an action has been commenced and is now pending in the SUPREME
Court of KINGS County upon the Complaint of the above named Plaintiff against the above named Defendant(s)
for the foreclosure of a mortgage bearing date the 13th day of July, 2005 executed by CONCEPCION
CAMPBELL to secure the sum of $190,000.00, and recorded at Instrument No. 2005000423583 in the Office of
the Clerk of the County of KINGS, on the 28th day of July, 2005; Said mortgage is to be assigned by an
Assignment to be recorded in the Office of the Clerk of KINGS County.

AND, NOTICE IS FURTHER GIVEN, that the mortgaged premises described in such mortgage(s)
affected by the said foreclosure action, were, at the time of the commencement of this action, and at the time of
the filing of this Notice, situated in the County of KINGS and State of New York, and are described in "Schedule
A - Legal Description" attached hereto and made a part hereof.

The Clerk of the County of KINGS, is directed to index this Notice against the names of all the
Defendant(s).
DATED:       June 6, 2007
SBL #:        Block: 429 Lot: 69

Steven J. Baum, P.C.
Attorneys for Plaintiff
220 Northpointe Parkway, Suite G
Amherst, New York 14228
Tel.: 716-204-2400

EXHIBIT B

*Title Number DLS-5230-O*                                                    Page    1

ALL that certain plot, piece or parcel of land, with the buildings and
improvements thereon erected, situate, lying and being in the Borough of
Brooklyn, County of Kings, City and State of New York, bounded and described
as follows:

BEGINNING at a point on the northeasterly side of Union Street, distant 160 feet
southeasterly from the corner formed by the intersection of the northeasterly side
of Union Street with the southeasterly side of Smith Street;

RUNNING THENCE northeasterly parallel with Smith Street, 90 feet;

THENCE southeasterly parallel with Union Street, 14 feet;

THENCE southwesterly, again parallel with Smith Street, and part of the distance
through a party wall, 90 feet to the northeasterly side of Union Street; and

THENCE northwesterly along the said northeasterly side of Union Street, 14 feet
to the point or place of BEGINNING.

2

SCHEDULE A

DAWN HANZLIK-HEXEMER, AN ATTORNEY AT LAW LICENSED TO
PRACTICE IN THE STATE OF NEW YORK, AND THE ATTORNEY FOR THE
PLAINTIFF IN THIS ACTION HEREBY CERTIFIES THAT, TO THE BEST OF HER
KNOWLEDGE, INFORMATION AND BELIEF, FORMED AFTER AN INQUIRY
REASONABLE UNDER THE CIRCUMSTANCES, THE PRESENTATION OF THIS
PLEADING, AFFIDAVIT, (OR MOTION IF APPLICABLE), OR THE
CONTENTIONS CONTAINED HEREIN ARE NOT FRIVOLOUS AS DEFINED IN
22 N.Y.C.R.R. 130-1.1(c).

_____

DAWN HANZLIK-HEXEMER, ESQ.

3

STATE OF NEW YORK
SUPREME COURT: COUNTY OF KINGS
-----------------------------------------------------------------X
HSBC MORTGAGE CORPORATION USA
2929 Walden Avenue
Depew, NY 14043

                          Plaintiff,

vs.

CONCEPCION CAMPBELL, ALVIN S. CALVIN,
NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD, NEW YORK CITY PARKING VIOLATIONS
BUREAU, NEW YORK CITY TRANSIT
ADJUDICATION BUREAU,

JOHN DOE (Said name being fictitious,
it being the intention of Plaintiff to
designate any and all occupants of
premises being foreclosed herein, and
any parties, corporations or entities,
if any, having or claiming an interest
or lien upon the mortgaged premises.)

                          Defendant(s).
-----------------------------------------------------------------X

**SUMMONS**

ORIGINAL FILED WITH THE
CLERK ON  07/07

INDEX NO.: 20373/07

Mortgaged Premises:
371 UNION STREET
BROOKLYN, NY 11231

SBL #:
Block: 429 Lot: 69

TO THE ABOVE NAMED DEFENDANTS:

        YOU ARE HEREBY SUMMONED to answer the Complaint in the above entitled action and to serve a
copy of your Answer on the Plaintiff's attorney within twenty (20) days after the service of this Summons,
exclusive of the day of service, or within thirty (30) days after completion of service where service is made in any
other manner than by personal delivery within the State. The United States of America, if designated as a
Defendant in this action, may answer or appear within sixty (60) days of service hereof. In case of your failure to
appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

        KINGS County is designated as the place of trial. The basis of venue is the location of the mortgaged
premises foreclosed herein.
DATED:        June 6, 2007

                                        Steven J. Baum, P.C.
                                        Attorneys for Plaintiff
                                        220 Northpointe Parkway, Suite G
                                        Amherst, New York 14228
                                        Tel.: 716-204-2400

1

STATE OF NEW YORK
SUPREME COURT: COUNTY OF KINGS
------------------------------------------------------------X
HSBC MORTGAGE CORPORATION USA
2929 Walden Avenue
Depew, NY 14043

                Plaintiff,

vs.

CONCEPCION CAMPBELL, ALVIN S. CALVIN,
NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD, NEW YORK CITY PARKING VIOLATIONS
BUREAU, NEW YORK CITY TRANSIT
ADJUDICATION BUREAU,

JOHN DOE (Said name being fictitious,
it being the intention of Plaintiff to
designate any and all occupants of
premises being foreclosed herein, and
any parties, corporations or entities,
if any, having or claiming an interest
or lien upon the mortgaged premises.)

                Defendant(s).
------------------------------------------------------------X

**COMPLAINT**

INDEX NO.: 20393/07

Mortgaged Premises:
371 UNION STREET
BROOKLYN, NY 11231

SBL #:
Block: 429 Lot: 69

      The Plaintiff by its attorneys, Steven J. Baum, P.C., for its complaint against the Defendant(s) alleges upon information and belief as follows:

AS AND FOR A FIRST CAUSE OF ACTION:

      FIRST:  Plaintiff is a banking corporation duly organized and existing under and by virtue of the laws of the State of New York, and the holder of the mortgage being foreclosed.

      SECOND:  On or about the 13th day of July, 2005, CONCEPCION CAMPBELL duly executed and delivered a note whereby CONCEPCION CAMPBELL promised to pay the sum of $190,000.00 with interest on the unpaid balance of the debt.

      THIRD:  That as security for the payment of said note CONCEPCION CAMPBELL, ALVIN S. CALVIN duly executed and delivered a mortgage in the amount of $190,000.00 which mortgage was recorded as follows and mortgage tax paid thereon:

      Recording Date: July 28, 2005
      Instrument Number: 2005000423583
      County (or City Register of): KINGS

      Said mortgage is to be assigned by an Assignment to be recorded in the Office of the Clerk of KINGS County.

      FOURTH:  The mortgaged premises are commonly known as 371 UNION STREET, BROOKLYN, NY 11231 and more fully described in "Schedule A" attached to this complaint.  The tax map designation is known as all or part of SBL: Block: 429 Lot: 69.

2

FIFTH: That the Defendant(s) CONCEPCION CAMPBELL so named, has/have failed to comply with the conditions of the mortgage and note by failing to pay principal and interest and/or taxes, assessments, water rates, insurance premiums, escrow and/or other charges that came due and payable on the 1st day of February, 2007 as more fully set forth below. Accordingly, Plaintiff elects to call due the entire amount secured by the mortgage.

SIXTH: There is now due and owing on said mortgage the following amounts:

Principal balance: $186,574.54
Interest Rate: 5.875%
Date interest accrues from: January 1, 2007
Escrow advances: $195.36
Late charges: $393.40

Together with monies advanced for taxes, insurance, maintenance of premises and the costs, allowances and reasonable attorney's fees if permitted by the mortgage.

SEVENTH: In order to protect its security interest the Plaintiff or its agent has paid or may be compelled to pay during the pendency of this action, taxes, assessments, water rates, insurance premiums and other charges affecting the mortgaged premises. Plaintiff requests that any sums it or its agent has paid, together with interest, be included in the sum otherwise due as provided for and secured by the mortgage.

EIGHTH: Upon information and belief all the defendants herein have or claim to have some interest in or lien upon said mortgaged premises or some part thereof which interest or lien, if any, has accrued subsequent to the lien of Plaintiff's mortgage, or has been paid or equitably subordinated to Plaintiff's mortgage, or has been duly subordinated thereto. The reason for naming said defendants is set forth in "Schedule B" that is attached to this complaint.

NINTH: The reason for naming any governmental agency or instrumentalities of the Federal, State or local government (however designated), is set forth in "Schedule C" that is attached to this complaint.

TENTH: Upon information and belief the defendant(s) "John Doe" are occupants of the premises being foreclosed, or may be any persons, corporations or entities who claim, or may claim, a lien or other interest against the premises.

ELEVENTH: If applicable, the mortgage originated in compliance with Banking Law Sections 595-a and 6-1.

TWELFTH: Plaintiff requests that in the event this action proceeds to judgment of foreclosure and sale, said premises be sold subject to: any state of facts an inspection of the premises would disclose or an accurate survey of the premises would show; covenants, restrictions, easements and public utility agreements of record, if any; building and zoning ordinances and possible violations of the same; any rights of tenants or persons in possession of the premises; any equity of redemption of the United States of America to redeem the premises within 120 days; prior mortgages and liens, if any. If the mortgage secures more than one parcel, Plaintiff requests the judgment of foreclosure provide for the sale of the parcels in a particular order to the extent necessary to satisfy the indebtedness.

THIRTEENTH: There are no other actions or pending proceedings at law to collect or enforce the note and mortgage.

3

AS AND FOR A SECOND CAUSE OF ACTION:

FOURTEENTH: Plaintiff repeats and re-alleges the allegations contained in Paragraphs "First" through "Thirteenth", as though fully set forth herein.

FIFTEENTH: On or about July 13, 2005, Concepcion Campbell executed and delivered to Mortgage Electronic Registrations Systems, Inc. as nominee for HSBC Mortgage Corporation (USA), the mortgage with respect to the property to be foreclosed herein.

SIXTEENTH: That it was the clear intent of the parties that a legal mortgage be delivered at closing with an enforceable lien against the mortgaged premises.

SEVENTEENTH: That the deed to the subject property, dated March 23, 1965 vests title in Alvin S. Campbell and Concepcion Campbell, his wife.

EIGHTEENTH: That the Note and the Mortgage were by and between the lender and Concepcion Campbell, only.

NINETEENTH: That this inconsistency resulted from a scrivener's error by the parties attending the closing; mutual mistake of fact by the parties attending to the closing; and/or unilateral mistake of fact by the lender and Concepcion Campbell.

TWENTIETH: That this error or mistake of fact created an inconsistency between the mortgage and the deed.

TWENTYFIRST: That this error or mistake of fact resulted in the omission of Alvin S. Campbell as a mortgagor on the recorded mortgage.

TWENTY-SECOND: That this error or mistake of fact requires this court to reform the mortgage by including Alvin S. Campbell as a mortgagor thereon.

TWENTY-THIRD: That the granting of this relief will bring the instruments into conformity with the intent of the parties, and will cure the error caused by the mutual mistakes, unilateral mistakes or the error which occurred in reduction of the agreements of the parties to written form.

TWENTY-FOURTH: That this court has equitable power to strike the name of a party from an instrument or to add a party inadvertently left out where, as here, all interested parties are before this court.

TWENTY-FIFTH: That correction of the scrivener's error and the mistake of fact will reflect the agreements reached by the parties rather than enforce the instruments herein in their mistaken form.

TWENTY-SIXTH: That Patricia Graziano and Lena M. Alio will not be prejudiced by the reformation as they both enjoyed the fruits of the mortgage; and, upon information and belief, they both resided at the mortgaged premises.

TWENTY-SEVENTH: By reason of the foregoing, plaintiff demands that the Mortgage be reformed to add Alvin S. Campbell as a mortgagor.

AS AND FOR A THIRD CAUSE OF ACTION
(EQUITABLE MORTGAGE)

TWENTY-EIGHTH: Plaintiff repeats and re-alleges the allegations contained in Paragraphs "First" through "TWENTYSEVENTH", as though fully set forth herein.

4

TWENTY-NINTH: That Alvin S. Campbell did knowingly benefit from the procurement by Concepcion Campbell of the mortgage.

THIRTIETH: Upon information and belief Alvin S. Campbell resided at the mortgaged premises after the closing.

THIRTY-FIRST: That it was the intention and understanding of the parties that the mortgagor was to give the Plaintiff a valid mortgage lien upon all of the mortgaged premises as security for its mortgage.

THIRTY-SECOND: That the mortgage herein has failed in effectuating its purpose because of the deed to Alvin S. Campbell and Concepcion Campbell, his wife, with the corresponding failure of Alvin S. Campbell to be named as a mortgagor on the mortgage herein.

THIRTY-THIRD: That the Plaintiff does not have an adequate remedy at law regarding this cause of action.

THIRTY-FOURTH: That by virtue of the facts and circumstances described above, Plaintiff has an equitable lien and equitable mortgage on all of the mortgage premises which equitable lien fully encumbers the mortgaged premises and should continue until satisfied.

THIRTY-FIFTH: The said equitable lien of the Plaintiff is enforceable against the mortgaged premises by this foreclosure action.

***Add to
WHEREFORE CLAUSE:
9. That the mortgage be reformed to add Alvin S. Campbell as a co-mortgagor.
10. That an equitable lien be impressed upon the mortgaged premises and that the Plaintiff have foreclosure of said lien.

5

WHEREFORE, PLAINTIFF DEMANDS JUDGMENT:

1. Adjudging and decreeing the amounts due the Plaintiff for principal, interest, costs, late charges, expenses of sale, allowances and disbursements, reasonable attorney's fees if provided for in the mortgage and any monies advanced and paid which are secured by the mortgage.

2. That the defendants and all persons claiming by, through or under them and every other person or entity whose right, title, conveyance or encumbrance is subsequent to or subsequently recorded, or whose lien is being challenged by being a defendant in this action, be barred and foreclosed of and from all right, claim, lien, interest or equity of redemption in and to said mortgaged premises.

3. That the said mortgaged premises, or such part thereof as may be necessary to raise the amounts due as aforesaid, be decreed to be sold according to law subject to the provisions of paragraph "TWELFTH" of this complaint.

4. That out of the monies arising from the sale thereof, the Plaintiff may be paid the amounts due on said note and mortgage, plus those items referenced in paragraph 1, above, together with any sums expended as aforesaid, with interest as allowed by law upon any advances from the dates of the respective payments, so far as the amount of such money properly applicable thereto will pay the same.

5. That either or any of the parties to this action may become a purchaser upon such sale.

6. That this court, if requested, forthwith appoint a receiver of the rents and profits of said premises with the usual powers and duties.

7. That the defendants referred to in paragraph "FIFTH" of this complaint and any original or subsequent obligors so named in this action, may be adjudged to pay any deficiency that may remain after applying all of said monies so applicable thereto, unless the debt has been listed and discharged in a bankruptcy petition, or unless the Plaintiff is unable to produce a copy of the note, in which case no deficiency judgment will be sought.

8. In the event Plaintiff possesses any other liens against the premises, they shall not be merged with the same. Plaintiff specifically reserves its right to share in any surplus monies arising from the sale of the subject premises by virtue of its position as a judgment or other lien creditor, excluding the mortgage being foreclosed herein.

9. That an equitable lien be impressed upon the mortgaged premises and that the Plaintiff have foreclosure of said lien.

10. That the mortgage be reformed to add Alvin S. Campbell as a co-mortgagor.

11. Awarding the relief requested in the SECOND cause of action stated in this complaint.

12. Awarding the relief requested in the THIRD cause of action stated in this complaint.

13. That the Plaintiff may have such other and further relief as may be just, equitable and proper.

Steven J. Baum, P.C.
Attorneys for Plaintiff
220 Northpointe Parkway, Suite G
Amherst, New York 14228
Tel.: 716-204-2400

Title Number DLS-5230-Q                                            Page    1

ALL that certain plot, piece or parcel of land, with the buildings and
improvements thereon erected, situate, lying and being in the Borough of
Brooklyn, County of Kings, City and State of New York, bounded and described
as follows:

BEGINNING at a point on the northeasterly side of Union Street, distant 160 feet
southeasterly from the corner formed by the intersection of the northeasterly side
of Union Street with the southeasterly side of Smith Street;

RUNNING THENCE northeasterly parallel with Smith Street, 90 feet;

THENCE southeasterly parallel with Union Street, 14 feet;

THENCE southwesterly, again parallel with Smith Street, and part of the distance
through a party wall, 90 feet to the northeasterly side of Union Street; and

THENCE northwesterly along the said northeasterly side of Union Street, 14 feet
to the point or place of BEGINNING.

7

# SCHEDULE A

## Schedule B - Defendants

CONCEPCION CAMPBELL          Record owner and original mortgagor.

ALVIN S. CALVIN             Record owner.

JOHN DOE                    Said name being fictitious, it being the
                            intention of Plaintiff to designate any and all
                            occupants of premises being foreclosed herein,
                            and any parties, corporations or entities, if any,
                            having or claiming an interest or lien upon the
                            mortgaged premises.

8

## Schedule C - Defendants

| | |
|---|---|
| NEW YORK CITY ENVIRONMENTAL CONTROL BOARD | Holder of possible judgments against Concepcion Campbell and/or Alvin S. Campbell, see attached. |
| NEW YORK CITY TRANSIT ADJUDICATION BUREAU | Holder of possible judgments against Concepcion Campbell and/or Alvin S. Campbell, judgments cannot be certified since docket books are missing. |
| NEW YORK CITY PARKING VIOLATIONS BUREAU | Holder of possible judgments against Concepcion Campbell and/or Alvin S. Campbell, see attached. |

9

MAY-31-2007  14:38   PERSONAL TOUCH RESEARCH                7188681934   P.004
REPORT PAGE: 1783          JUDGMENT DOCKET BOOK          DATA AS OF : 05/06/07

| JUDGMENT DEBTOR | ADDRESS | | J-# | J-AMT | J-INT | PLT OR SUM ST |
|---|---|---|---|---|---|---|
| CAMPANELLA PAUL J | 11 LEGGETT PL | STATEN ISLAND NY10314 | 3 | 186 | 8.46 | CSC3249 |
| CAMPANELLA SAL D | 35 BAYVIEW LN FL1 | STATEN ISLAND NY10309 | 1 | 155 | 26.33 | BKP2934 |
| CAMPANELLA VINCENT | 15915 91ST ST | HOWARD BEACH NY11414 | 3 | 505 | 4.92 | DJY1166 |
| CAMPANELLA ANTHONY | 324E 77TH ST  APT 4D | NEW YORK NY 10021 | 1 | 175 | 42.12 | 3904427787 |
| CAMPANELLA · ANTHONY | 8267 AUSTIN ST | KEW GARDENS NY 11415 | 1 | 130 | 45.46 | 3611322805 |
| CAMPANELLI LUCILLE J | 9017 149TH AVE FL 2 | OZONE PARK NY11417 | 2 | 90 | 53.05 | BN245B |
| CAMPANELLI PAOLO | 2025 YATES AVE | BRONX NY 10461 | 1 | 105 | 5.33 | 1108794064 |
| CAMPANERO CARMEN J | 1898 LONGFELLOW AVE | BRONX NY10460 | 1 | 175 | 2.24 | DRB8630 |
| CAMPANIOLO TONY A | 1925 19TH LN | BROOKLYN NY11214 | 6 | 890 | 38.59 | BTS2470 |
| CAMPANIOLO TONY | 1925 19TH AVE | BROOKLYN NY 11214 | 1 | 115 | 61.43 | 3523031047 |
| CAMPANIONI DEBRA | 129 W 147TH ST # 133 | NEW YORK NY10039 | 1 | 175 | 2.24 | AYM4444 |
| CAMPASANO JEANETTE | 84 44 118 ST | KEW GARDENS NY11415 | 1 | 125 | 2.47 | AVH6305 |
| CAMPAS MARIO | 794 MIDWOOD ST # 2E | BROOKLYN NY11203 | 12 | 1380 | 706.44 | ADG9648 |
| CAMPBELL AHMED A | 11550 174TH ST | SAINT ALBANS NY11434 | 2 | 230 | 149.04 | S331NW |
| CAMPBELL AIDA A | 3511 BARNES AVE # 8H | BRONX NY10467 | 6 | 1040 | 274.83 | BYH6032 |
| CAMPBELL AINSLEY W | 138 WASHINGTON AVE # | BROOKLYN NY11205 | 1 | 125 | 5.49 | BNH2359 |
| CAMPBELL ALARIC S | 1383 DEAN ST # 2W | BROOKLYN NY11216 | 4 | 610 | 7.31 | DNV4025 |
| CAMPBELL ALBERT A | 14662 181ST ST | JAMAICA NY11413 | 3 | 445 | 90.35 | CUY3033 |
| CAMPBELL ·ALBERT A | 955 EVERGREEN AVE | BRONX NY10473 | 2 | 120 | 4.96 | DEV1810 |
| CAMPBELL ALERICK M | 937 E 219TH ST | BRONX NY10467 | 2 | 250 | 12.27 | DKF1750 |
| CAMPBELL ALEXANDER J | 92 PINEHURST AVE # 5 | NEW YORK NY10033 | 6 | 670 | 247.46 | AEH7268 |
| CAMPBELL ALFRED | 2131 NOSTRAND AVE | BROOKLYN NY11210 | 1 | 115 | 74.92 | KMF647 |
| CAMPBELL ALFREDO | 328 CROZIER AVE | BRONX NY10472 | 3 · | 335 | 144.23 | WCT6625 |
| CAMPBELL ALGERNON C | 755 WASHNGTN AVE # MB | BROOKLYN NY11238 | 1 | 105 | 7.87 | DNV8732 |
| CAMPBELL ALICIA Y | 3334 BOUCK AVE | BRONX NY10469 | 1 | 135 | 8.03 | DLO5636 |
| CAMPBELL ALROMEO M | 302 ANDROS AVE | STATEN ISLAND NY10303 | 28 | 3040 | 2036.72 | E686EB |
| CAMPBELL ALVIN | 4068 WHITE PLAINS RD | BRONX NY10466 | 11 | 1265 | 501.33 | EXT72C |
| CAMPBELL ALVIN E | 202 MAPLE ST | BROOKLYN NY11225 | 1 | 125 | .74 | 71862JF |
| CAMPBELL ANDREA | 937 E 216TH ST # 1 | BRONX NY10469 | 5 | 725 | 4.90 | DTG8620 |
| CAMPBELL ANDREA D | 221 14 133RD AVE 1 | LAURELTON NY11413 | 2 | 20 | 12.07 | DW685X |
| CAMPBELL ANDREA M | 25 MONROE ST | BROOKLYN NY11238 | 10 · | 1205 | 42.49 | DPW3926 |
| CAMPBELL ANDREW | 3630 BRONX BLVD | BRONX NY10467 | 2 | 300 | 39.54 | BET1949 |
| CAMPBELL ANDREW | 531 E 28TH ST | BROOKLYN NY11210 | 2 | 280 | 4.07 | CL455W |
| CAMPBELL ANDREW | 1516 E.90TH 8ST. | BKLYN NY 11236 | 1 | 115 | 59.04 | 3534262050 |
| CAMPBELL ANDREW | 1516 E.90TH ST. | BKLYN NY 11236 | 1 | 115 | 61.22 | 3499406536 |
| CAMPBELL ANDREW | 216 23 131 AVE | JAMAICA NY11413 | 1 | 95 | 54.02 | X320VZ |
| CAMPBELL ANDREW M | 21809 100TH AVE | JAMAICA NY11429 | 3 | 325 | 208.52 | Y171JT |
| CAMPBELL ANDREW S | 1500 CARROLL ST # 4A | BROOKLYN NY11213 | 2 | 230 | 101.40 | BGH8095 |
| CAMPBELL ANGEL | 502 BEACH 21 ST | FAR ROCKAWAY NY 11691 | 1 | 95 | 39.42 | 3648969122 |
| CAMPBELL ANGEL | 502 BEACH 21 ST | FAR ROCKAWAY NY 11691 | 1 | 115 | 47.72 | 3653572630 |

10



| | LastName | FirstName | Number | Street | City | State | Zip | BuckDate | OrdDate | DockBal | NOONo | Balance | SalVal | SVDate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CAMPBELL | ALVIN | 137 | MADISON STREET | BROOKLYN | NY | 11216 | 10/03/02 | 08/19/02 | 01/03 | 0130113022 | $300.00 | | |
| 1 | CAMPBELL | ALVIN | 137 | MADISON STREET | BROOKLYN | NY | 11216 | 02/19/04 | 01/05/04 | 07/04 | 0191498420 | $500.00 | | |

MAY-31-2007  14:38       PERSONAL TOUCH RESEARCH       7188891994       P.006

11

STATE OF NEW YORK ).
COUNTY OF ERIE        )

DAWN HANZLIK-HEXEMER, being duly sworn, deposes and says:

That your deponent is the attorney for the plaintiff, having an office at 220

Northpointe Parkway, Amherst, New York, and that she has read the foregoing Summons

and Complaint and knows the contents thereof; that the same is true to her knowledge

except as to the matters therein stated to be alleged upon information and belief, and as to

those matters your deponent believes it to be true. Deponent further states that the

grounds of her belief as to all matters in the complaint not stated to be upon her

knowledge are based upon the original note, mortgage and/or financial statements,

together with correspondence.

That the reason this verification is made by your deponent instead of the Plaintiff

is because the Plaintiff does not reside or have an office for the conduct of business

within the County of Erie, which is the County where your deponent has her office.

_____
DAWN HANZLIK-HEXEMER, ESQ.

Sworn to before me this

10th  day of  Jun 2007

DECIA M. WALKER
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN ERIE COUNTY
My Commission Expires April 11, 2009

12

DAWN HANZLIK-HEXEMER, AN ATTORNEY AT LAW LICENSED TO
PRACTICE IN THE STATE OF NEW YORK, AND THE ATTORNEY FOR THE
PLAINTIFF IN THIS ACTION HEREBY CERTIFIES THAT, TO THE BEST OF HER
KNOWLEDGE, INFORMATION AND BELIEF, FORMED AFTER AN INQUIRY
REASONABLE UNDER THE CIRCUMSTANCES, THE PRESENTATION OF THIS
PLEADING, AFFIDAVIT, (OR MOTION IF APPLICABLE), OR THE
CONTENTIONS CONTAINED HEREIN ARE NOT FRIVOLOUS AS DEFINED IN
22 N.Y.C.R.R. 130-1.1(c).

_____
DAWN HANZLIK-HEXEMER, ESQ.

13

EXHIBIT B

EXHIBIT C



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2007102300501001001E5FE2

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

**Document ID:** 2007102300501001    Document Date: 10-17-2007    Preparation Date: 10-23-2007
Document Type: SATISFACTION OF MORTGAGE
Document Page Count: 1

| PRESENTER: | RETURN TO: |
|---|---|
| HSBC MORTGAGE CORPORATION (USA) | CONCEPCION CAMPBELL |
| 2929 WALDEN AVENUE | 371 UNION STREET |
| DEPEW, NY 14043 | BROOKLYN, NY 11231 |
| 800-338-4626 | |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 429 | 69 | Entire Lot | 371 UNION STREET |

Property Type: DWELLING ONLY - 2 FAMILY

**CROSS REFERENCE DATA**

CRFN: 2005000423583

**PARTIES**

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| CONCEPCION CAMPBELL | MERS |

x   Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed   10-30-2007 12:10 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | 2007000545719 | | |
| Recording Fee: | $ | 42.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*City Register Official Signature*

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER |  |
|---|---|

2007102300501001001C5D62

**RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)        PAGE 2 OF 3**

| Document ID: 2007102300501001 | Document Date: 10-17-2007 | Preparation Date: 10-23-2007 |
|---|---|---|

Document Type: SATISFACTION OF MORTGAGE

**PARTIES**
**MORTGAGEE/LENDER:**
HSBC MORTGAGE CORPORATION (USA)

EXHIBIT C

Recording Requested By:
HSBC MORTGAGE CORPORATION (USA)

When Recorded Return To:

CONCEPCION CAMPBELL
371 UNION STREET
BROOKLYN, NY 112310000

---

## SATISFACTION OF MORTGAGE

HSBC MORTGAGE CORPORATION (USA) #:5497135 "CAMPBELL" Lender ID:757/666/1699072187  Kings, New York
MERS #: 100022405499713512  VRU #: 1-888-679-6377

KNOW ALL MEN BY THESE PRESENTS that MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HSBC MORTGAGE CORPORATION (USA), whose address is 2929 WALDEN AVENUE, DEPEW, NY 14043, holder of a *certain mortgage evidencing an indebtedness in the amount of $190,000.00 plus interest*, whose parties, dates and recording information are below, does hereby acknowledge that it has received full payment and satisfaction of the same, and in consideration thereof, does hereby satisfy and discharge said mortgage.

Mortgagor:  CONCEPCION CAMPBELL
Mortgagee:  MERS AS NOMINEE FOR HSBC MORTGAGE CORPORATION (USA)
Dated:  07/13/2005 Recorded:  07/28/2005  in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2005000423583
This mortgage has not been assigned unless stated below.

Section/Block/Lot —429-69

Property Address: 371  UNION STREET, BROOKLYN, NY  11231

County:  Kings

State of  New York

IN WITNESS WHEREOF, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HSBC MORTGAGE CORPORATION (USA), by the officer duly authorized, has duly executed the foregoing instrument.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HSBC MORTGAGE
CORPORATION (USA)
On October 17th, 2007

By: _____
REBECCA A COSGROVE, Officer

STATE OF New York
COUNTY OF Erie

On the 17th day of October in the year 2007 before me, the undersigned, personally appeared REBECCA A COSGROVE, Officer, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
FERNANDO MONTERO
Notary Expires: 09/03/2010  #01MO6079957
Erie, New York

(This area for notarial seal)