*UNITED STATES DISTRICT*
*EASTERN DISTRICT COURT OF NEW YORK*

_____

**CONCEPCION CAMPBELL &**
**JEFFREY F. MILLER,**
**individually & for all those similarly situated,**          **CASE NUMBER:10-3800**
                    **Plaintiffs,**


          **-against-**

**STEVEN J. BAUM, ESQ.; STEVEN J. BAUM, PC;**          **Plaintiff demands trial by jury**
**STEPHANIE M. VAMPOTIC; DAWN HANZLIK-**          <u>**FIRST AMENDED**</u>
**HEXEMER, ESQ.; JANE & JOHN DOES 1-10 AS**          <u>**COMPLAINT FOR DAMAGES**</u>
**AGENTS AND/OR EMPLOYEES RELATED**
**TO STEVEN J. BAUM, PC; MERSCORP, INC.;**          **PLAINTIFF DEMANDS TRIAL BY JURY**
**MORTGAGE ELECTRONIC REGISTRATIONS,**
**INC.; REBECCA A. COSGROVE; & JOHN DOES 1-10**
**AS AGENTS AND/OR EMPLOYEES RELATED**
**TO DEFENDANT MERSCORP, INC.;**
                    **Defendants**.
_____          **Assigned to: Hon. Weinstein**

     Plaintiffs, Concepcion Campbell ("Campbell") and Jeffrey F. Miller ("Miller"), by and through their counsel, complain as follows:

<u>**JURISDICTION AND VENUE**</u>

1.  The Court has subject matter jurisdiction over this action pursuant to federal question under 18 U.S.C.A. §§1961-68, 18 U.S.C.A. §1343 and 28 U.S.C. §1331; 12 U.S.C.§ § 2605-2608, and 15 U.S.C. §1692**.**

**2.**  Diversity subject matter jurisdiction exists over this class-action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2,119 Stat. 4 (CAFA") amending 28 USC §1332, at new subsection (d), conferring federal jurisdiction over class actions involving (a) 100 or more members in the proposed Class; (b) at least some members of the proposed class have different citizenship from some Defendnats and (c) the claims of the proposed class members exceed the sum or value five million dollars ($5,000,000) in the aggregate. 28 U.S.C. §1332(d)(2) and (6).

3.  Venue is proper in the Eastern District of New York, Brooklyn, pursuant to 28 U.S.C. §1391 and 18 U.S.C. §1965(a), in that Defendants systematically conduct and transact substantial business in this State and District as New York State licensed attorneys, licensed banks and corporations organized and operating in the State of New York, the causes of action occurred in this District and Plaintiff Campbell resides in Kings County Brooklyn.

## PARTIES

4. Plaintiff Concepcion Campbell is a resident of the State of New York, Kings County, Brooklyn.

5. Plaintiff Jeffrey F. Miller is a resident of the State of New York, Sullivan County, Rock Hill.

6. Defendant Steven J. Baum, Esq. is a New York State licensed attorney who owns and operates Defendant Steven J. Baum, PC (collectively, "Baum"), with an office located at  220 North Pointe, Parkway, Suite G, Amherst, NY 14228 that conducts substantial business in this District filing foreclosures and default documents in the Courts and with County Clerks in this District.

7. Defendants Stephanie M. Vamporic, Dawn Hanzlik-Hexemer, Esq., Jane & John Does 1-10 as agents and/or employees of Steven J. Baum, PC are employees and/or licensed attorneys who work under the direct supervision, management and control of Defendants Baum throughout New York State and in this District.

**8.** Defendant Merscorp, Inc. is a foreign corporation located at 1818 Library Street, Suite 300 Reston, VA 20190 transacting substantial business in the State of New York and the Eastern District as a foreclosure industry registration service that is the sole shareholder of the entity Defendant Mortgage Electronic Registrations Systems, Inc. (collectively, "MERS") which served as the "nominee" on  documents at issue in this action.

**9.** Upon information and belief, Defendant Rebecca A. Cosgrove is an employee of Defendants MERS and/or Defendants Baum in the State of New York and she has executed legal documents filed in the Eastern District on behalf of said Defendants.

10. Defendants Jane & John does 1-10 as agents and/or employees related to Steven J. Baum, PC are at all times relevant herein were acting under the direction and supervision of Defendants Baum as co-conspirators to the acts alleged herein that occurred throughout the State of New York and in this District. Their identities are to be discovered in this action.

11. Defendants Jane & John does 1-10 as agents and/or employees related to Merscorp, Inc. are at all times relevant herein were acting under the direction and supervision of Defendant MERS as co-conspirators to the acts alleged herein that occurred throughout the State of New York and in  this District.  Their identities are to be discovered in this action.

## FACTS

### CAMPBELL FACTS

12. On or about July 13, 2005, Plaintiff Campbell as Mortgagor executed a 30 year mortgage of $190,000 at 5.85% annual interest for monthly payments of $1,23.93 on her home located at 171 Union Street, Brooklyn, with Defendant MERS as Mortgagee (the "Mortgage") (**Exhibit "A"**-attached hereto and made a part hereof as if fully set forth herein).

13. On or about July 28, 2005, the Mortgage was recorded naming Defendant MERS as Mortgagee.

14. Upon information and belief, Defendant MERS was created in 1996 by the mortgage banking industry to create a secondary mortgage market, internally administer the purchasing and selling of mortgages and simplify home mortgage administration, including foreclosure proceedings.

15. Members of Defendant MERS are mortgage originators, mortgage servicers and sub-servicers, warehouse lenders, wholesale lenders, retail lenders, settlement agents, title companies,insureres and investors who act as agents of Defendants MERS.

16. At all relevant times herein, Defendant MERS was under the direct control of the banks, including HSBC, Citigroup, JPMorgan Chase and Wells Fargo, that are members of MERS and own, operate, control, manage and direct the activities of MERS.

17. Defendant MERS was created and established to facilitate the business interests and limit the liability of its member banks.

18. Upon information and belief, Defendant MERS has an annual income of $11 Million Dollars and about 40 employees.

19. Upon information and belief, Defendant MERS bank members each make hundreds of billions of dollars annually while MER operates at a much lower income to shield its members' liability.

20. Mortgages registered with the MERS' registry system hold title in Defendant MERS' name instead of its member bank names.

21. Defendant MERS saves its bank members county filing fees by not recording assignments.

22. Defendant MERS mortgage documents state MERS will assign the mortgages to a lender named on the mortgage.

23. There are times when Defendant MERS does not assign mortgages in its name to the lender before foreclosures are filed aganst a homeowner.

24.   Defendants Baum is a mortgage foreclosure business representing banks, including Chase, HSBC, Bank of America and admits that they are "a New York State law firm serving the default industry." at http://www.mbaum.com/SJB/index.jsp .

25.   Upon information and belief, Defendant Baum has filed tens of thousands of foreclosures in the New York State Supreme Court and other Courts against homeowners and their properties throughout the State of New York, including this District, by naming Defendant MERS or a bank member of the MERS system as the mortgagee when the mortgage was never assigned from MERS to that member.

## CAMPBELL FACTS

26. On June 7, 2007 a Notice of Pendency and Foreclosure Complaint was filed against Plaintiff by Defendants Baum as attorneys for Defendant MERS' member HSBC, verifying that HSBC was foreclosing on  Plaintiff's July 13, 2005 Mortgage (**Exhibit "B"-** attached hereto and made a part hereof as if fully set forth herein).

27. Both the Notice of Pendency and the Foreclosure Complaint ¶3 state "Said Mortgage to be assigned by an Assignment to be recorded in the Office of the Clerk of KINGS County."

28. The Mortgage was never assigned when the foreclosure complaint was filed.

29. Attached to the documents referred to in ¶26 herein above, Defendant Dawn Hanzlick-Hexemer executed and filed affidavits under penalty of perjury that the Notice of Pendency and Foreclosure Complaint filed with the Kings County Court and clerk were not "frivolous" after due inquiry and that "the grounds for her belief as to all matters in the complaint not stated to be upon her knowledge are the original note, mortgage and/or financial statements together with correspondence."

30. Defendant Dawn Hanzlick-Hexemer is not an agent or officer of Defendant MERS or HSBC.

31.  On September 3, 2009, Defendants Baum, by their agent and employee attorney Michelle Maccagnano, admitted to Plaintiff's counsel that Defendants Baum never had the original Note:

"**From:** Michelle D. Maccagnano [mailto:Michelle-Maccagnano@mbaum.com]
**Sent:** Thursday, September 03, 2009 11:36 AM
**To:** Susan Chana Lask, Esq.
**Subject:** RE: Campbell-Subpoena

The only communications that will not be provided will be those between our office and our client.  To the extent that we possess any communications with your client, they will be provided.  **We do not have**

**the original note as the original note is not required in the State of New York to commence a foreclosure action.**  Upon information and belief, our client would be in control of the original note."

32. Defendant Dawn Hanzlick-Hexemer's affidavits referred to in ¶27 hereinabove were fraudulent filings are fraudulent because she did not have the original Note that she swore under penalty of perjury that she reviewed.

33. The Foreclosure Complaint did not establish a prima facie case in an action to foreclose a mortgage by establishing the existence of the mortgage and the mortgage note, ownership of the mortgage, nor did it disclose that HSBC was the assignee of the mortgage or Note or provide proof that HSBC was an assignee of the originally recorded Mortgage or Note as required by law.

34. The Notice of Pendency and Foreclosure Complaint named HSBC as the plaintiff, yet HSBC had no standing as a plaintiff to foreclose because no assignment existed from Defendant MERS to HSBC.

35. The Foreclosure Complaint conceals facts and is deliberately disoriented to sow confusion that at ¶15 it states the Mortgage was to Defendant Mers "as nominee for HSBC",  but provides no proof of an assignment to HSBC.

36. On October 30, 2007, a Satisfaction of Mortgage, dated October 17, 2007, was recorded in the Kings County Clerk's office regarding Plaintiff's 2005 Mortgage, with a cover page listing Defendant HSBC as presenter but MERS as Mortgagee (**Exhibit "C"-** attached hereto and made a part hereof as if fully set forth herein**).**

37. Page 2 of the Cover page to the Satisfaction of Mortgage lists HSBC as Mortgagee.

38. The actual Satisfaction document lists HSBC as the lender with MERS as the Mortgagee, and that "The mortgage has not been assigned unless stated below".

39. There is no listing of an assignment in the Satisfaction of Mortgage.

40. The Satisfaction is signed by Defendant Rebecca A. Cosgrove as an Officer of Defendant Mers and notarized as by an Erie New York notary.

41. Defendant Cosgrove claims to be an officer of Defendant MERS whose offices are located in Virginia, not Erie, New York.

42. Erie New York is located near Buffalo New York where Defendants Baum are located.

43.  Upon information and belief, Cosgrove is not an officer of Defendant MERS.

44.  Upon information and belief, the notary is a fraud and known to be a fraud by Defendants.

45.  The Notice of Pendency and Foreclosure Complaint were fictitious, false, and fraudulent legal documents filed in the Court and County Clerk's office under penalty of perjury.

46.   The Satisfaction of Mortgage along with the affidavits attached thereto were fictitious, false, and fraudulent legal documents filed in the County Clerk's office under penalty of perjury.

47.  Defendants knew they filed false and fraudulent documents with the court and county clerk to foreclose on Plaintiff Campbell's property.

48.  Defendants participated in a scheme to file fraudulent foreclosure documents against Plaintiff Campbell to extract money and her property from her knowing the Mortgage was never assigned and that Defendant HSBC had no standing to file a foreclosure.

49. Plaintiff Campbell was damaged as she lost her home because Defendants' foreclosure filing against her panicked her to sell her home to payoff the mortgage to HSBC.

50. HSBC did not have standing to bring the foreclosure complaint against Plaintiff Campbell.

51. HSBC was not the actual Note holder when the foreclosure was filed.

52. Defendants filings against Plaintiff Campbell were a fraud.

53.  New York Federal and State Courts consistently hold that a "mortgagee" that files a foreclosure complaint in the courts without standing equates to fraud.

54.  New York criminal statutes relating to false filings and perjury exist to protect citizens and the judiciary from false filings, including §210.05:A person is guilty of perjury in the third degree when he swears falsely;§ 210.35: A person is guilty of making an apparently sworn false statement in the second degree when (a) he subscribes a written instrument knowing that it contains a statement which is in fact false and which he does not believe to be true, and (b) he intends or believes that such instrument will be uttered or delivered with a jurat affixed thereto, and (c) such instrument is uttered or delivered with a jurat affixed thereto; and (c)§ 175.35 Offering a false instrument for filing in the first degree-A person is guilty of offering a false instrument for filing in the first degree when, knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision,

public authority ..., he offers or presents it to a public office, public servant, public ...with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, public authority ...; and §175.30 A person is guilty of offering a false instrument for filing in the second degree when, knowing that a written instrument contains a false statement or false information, he offers or presents it to a public office or public servant with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant.

55. On July 31, 2007, Defendants Baum and Vampotic sent a reinstatement letter to Plaintiff Campbell listing the following fees due Defendants Baum to reinstate the Mortgage:

**Bank Charges**

| | |
|---|---|
| PROPERTY INSPECTIONS | $66.50 |
| ESCROW ADVANCE | $301.56 |
| LATE CHARGES | $505.80 |
| OVERDUE PAYMENTS | $10,282.44 |
| **Disbursements** | |
| SEARCH CHARGES | $485.00 |
| INDEX NUMBER FEE | $210.00 |
| NOTICE OF PENDENCY FILING FEE | $35.00 |
| SERVICE FEES | $950.00 |
| CANCEL NOTICE OF PENDENCY | $35.00 |
| **Attorney Fees** | |
| LEGAL FEES TO FORECLOSURE | $1,620.00 |
| **REINSTATEMENT AMOUNT DUE AS OF JULY 31, 2007** | |
| **TOTAL PAYABLE TO:STEVEN J. BAUM, PC** | **$14,491.30** |
| **Estimated Additional Attorney Fees & Disbursements** | |
| **Good Through August 15, 2007** | |
| REQUEST FOR JUDICIAL INTERVENTION FEE | $95.00 |
| COURT ADMIN. FEE (EXPARTE/MOTION) | $45.00 |
| OVERNIGHT MAIL | $10.00 |
| COURT SERVICE | $62.50 |
| | |
| **ESTIMATED ADDITIONAL REINSTATEMENT AMOUNT** | |
| **GOOD THROUGH AUGUST 15, 2007** | |
| **TOTAL PAYABLE TO: STEVEN J. BAUM, PC** | **$14,703.80** |

56. Upon information and belief, the actual legal fees paid by Defendant MERS or HSBC are about $400, not $1,620, and the other above listed fees are as inflated and false.

57. Plaintiff's mortgage ¶14 states that the Lender may charge fees on default, which means actual fees paid, not false or inflated fees to Defendants Baum.

**58.** The July 31, 2007 reinstatement letter states Defendants Baum were acting as debt collectors "pursuant to federal law".

**59.** On or about September 28, 2007, Defendants Baum sent a Payoff statement to Plaintiff's then attorney Alfred Walendowski listing different numbers **:**

**Bank Charges**

| | |
|---|---|
| PROPERTY INSPECTIONS | $95.00 |
| ESCROW ADVANCE | $1,823.94 |
| LATE CHARGES | $393.40 |
| INTEREST | $8,141.30 |
| PRINCIPAL BALANCE | $186,574.54 |
| RECORDING FEE | $40.00 |

**Disbursements**

| | |
|---|---|
| SEARCH CHARGES | $485.00 |
| INDEX NUMBER FEE | $210.00 |
| NOTICE OF PENDENCY FILING FEE | $35.00 |
| SERVICE FEES | $950.00 |
| REQUEST FOR JUDICIAL INTERVENTION FEE | $95.00 |
| COURT ADMIN. FEE (EXPARTE/MOTION) | $45.00 |
| COURT SERVICE | $62.50 |
| CANCEL NOTICE OF PENDENCY | $35.00 |

**Attorney Fees**

| | |
|---|---|
| LEGAL FEES TO FORECLOSURE | $1,260.00 |
| **PAYOFF AMOUNT DUE AS OF SEPTEMBER 28, 2007** | |
| **TOTAL PAYABLE TO:STEVEN J. BAUM, PC** | **$200,???** |

**Estimated Additional Attorney Fees & Disbursements**
**Good Through August 15, 2007**

| | |
|---|---|
| REQUEST FOR JUDICIAL INTERVENTION FEE | $? |
| COURT ADMIN. FEE (EXPARTE/MOTION) | $45.00 |
| REFEREE'S FEE TO COMPUTE | $50.00 |
| OVERNIGHT MAIL | $10.00 |
| COURT SERVICE | $125.00 |
| 28 DAYS OF INTEREST @$30.030833 PER DIEM | $840.?? |
| **ESTIMATED ADDITIONAL REINSTATEMENT AMOUNT** | |
| **GOOD THROUGH OCTOBER 26, 2007** | |
| **TOTAL PAYABLE TO: STEVEN J. BAUM, PC** | **$201,316.54** |

**60.** The September 28, 2007 payoff letter states Defendants Baum were acting as debt collectors "pursuant to federal law".

**61.** Plaintiff's mortgage ¶14 states that the Lender may charge fees on default, which means actual fees paid, not false or inflated fees to Defendants Baum.

**MILLER FACTS**

62.   On March 9, 2007**,** Plaintiff Miller closed a loan with Real Estate Mortgage Network of New Jersey as the lender of his loan.

63.  The Mortgage at paragraph C, page 1, states that for recording purposes MERS is the nominee for Real Estate Mortgage Network of New Jersey.

64. About 30 days thereafter, Plaintiff Miller received notice that the servicing was transferred to Wells Fargo Home Mortgage ("Well Fargo").

65. From the date of the mortgage of March 9, 2007 to Plaintiff Miller's first notice from Defendant Baum he was in default, there were no assignments or other documents filed in the Sullivan County clerk's office to show the mortgage was transferred in any way from Real Estate Mortgage Network of New Jersey as the lender to any other entity.

66.   In 2008, Plaintiff Miller received a letter from Defendants Baum as a collection agency that he was in default of his loan.

67. Defendants Baum represented that they were counsel to HSBC, as trustee for Wells Fargo Alternative Loan Trust ("WFALT").

68.  Wells Fargo was only the servicer of the loan that collects the mortgage payments.

69.  On or about December 12, 2008, Plaintiff was served with a lis pendens and a foreclosure Complaint from Defendants Baum as counsel to HSBC, as trustee for WFALT.

70.  The lis pendens and Complaint were filed in the Sullivan County court and clerk's offices.

71.  The Complaint dated December 12, 2008, signed by Defendants Baum, under penalty of perjury, states the Mortgage was assigned to HSBC as trustee for WFALT and also states Defendants Baum reviewed the original Note as a basis to file the Complaint.

72.  Defendants Baum never produced the original Note in the foreclosure proceeding against Plaintiff Miller.

73.  Defendants Baum produced a copy of what they said was an original Note.

74.  The Complaint verification page is signed by a Tracy Fourtner who is an attorney for Defendants Baum.

75.   Upon information and belief, that verification falsely states that HSBC does not reside nor have an office in Defendants Baum's county, yet a December 26, 2008 Assignment states Defendants HSBC have an office at 2929 Walden Avenue, Depew, New York, which is in Defendants Baum's County of Erie.

76.   An assignment was never recorded in the Sullivan County Clerk's office until December 26, 2008

77.   The December 12, 2008 Complaint verifies there was an assignment as of December 12, 2008.

78.   The December 26, 2008 Assignment names Defendant MERS assigning to HSBC and is executed by a MERS Assistant Secretary and Vice President named Elpiniki M. Bechakas.

79.   The notary on the assignment executed by Ms. Bechakas is a Jamie Canella of Erie County New York, which is where Defendants' Baum are located.

80.   Elpiniki M. Bechakas is an attorney for Defendants Baum and, upon information and belief, receives a salary from Defendants Baum.

81.   Elpiniki M. Bechakas does not receive a salary from Defendant MERS.

82.   Upon information and belief, Ms. Bechakas did not have information to verify the Assignment, but is one of many Defendant Baum employees who rubber stamp legal documents for Defendants Baum to perpetuate the filing of fraudulent foreclsoures by Defendants Baum.

83.   Upon information and belief, in Plaintiff Miller's case, Defendants Baum and MERS and HSBC never produced proper documentation that an assignment was made for Defendant MERS to HSBC.

84.    Upon information and belief, Defendants MERS never had authority to assign the Mortgage or the Note to HSBC.

85.   Defendants Baum as a collection agent for HSBC is actually representing MERS, HSBC and Wells Fargo home Mortgage in conflict of interest by representing multiple clients with different interests in the same lawsuit.

86.   Plaintiff Miller did not have a loan with any of the entities Defendant Baum represented, including Wells Fargo, HSBC nor WFALT.

87.    Plaintiff Miller never received notice that his Note was assigned, transferred or otherwise owned by any entity other than Real Estate Mortgage Network of New Jersey.

88.   Plaintiff Miller's Note was never assigned, transferred or otherwise owned by any entity other than Real Estate Mortgage Network of New Jersey.

89.   Plaintiff Miller objected to the foreclosure based on HSBC as trustee for WFALT lack of standing as a plaintiff in the foreclosure filing because the Note was never assigned to them.

90.    At the time the lis pendens and Complaint were filed, Plaintiff Miller had his home listed for sale with a realtor.

91.   Defendants Baum filings against Plaintiff Miller interefered with his right to sell the home, he was unable to sell his home because of the false filing that also caused Plaintiff Miller to engage in protracted litigation for almost two years.

92.   On October 29, 2009 the Sullivan County Supreme Court held that HSBC as trustee for WFALT did not have standing and dismissed the foreclosure and subsequently vacated the lis pendens and sanctioned defendants Baum and HSBC.

93.   Defendant Baum's collection notices and attempts to collect a debt for HSBC from Plaintiff Miller was a fraudulent collection attempt by a debt collector.

94.   Defendant Baum's filings in the Sullivan County Court and clerk's office against Plaintiff Miller were fraudulent.

95.   Plaintiff Miller has been damaged by losing his right to sell his home because of Defendants' false foreclosure complaint filed with a false lis pendens connected to that Complaint against him.

96.   Plaintiff Miller has been damaged because to date title to his property is clouded as a result of Defendants multiple false assignments and false mortgage documents they created regarding Plaintiff Milelr's property.

## **DEFENDANTS' SCHEME**

97.   The Foreclosure Complaints against Plaintiffs are two of thousands of fraudulent Court filings as part of Defendants Baum "foreclosure mill" practice which, upon information and belief, is a conspiracy between the Defendants to unlawfully extract money and property from desperate homeowners throughout the State of New York after Defendant MERS' bank members profited in the billions of dollars from the securitization and sale of the "bad paper" mortgages of homeowners nationwide during the home buying boom.

98.   Upon information and belief, Defendants are part of the nationwide foreclosure scandal who knew in advance their "bad paper" would bust, so they sold and resold it to investors over the years and when it completely failed, after making money on it, they knew they created a new income stream by filing fraudulent foreclosure documents to sell off that business.

99.   Upon information and belief, the original sales and resales of the "bad paper" included sales to investors in the stock market that affects interstate commerce.

100.   Upon information and belief, the present mortgage crisis and economic recession was planned in advance by our banks, including the bank members of Defendant MERS with the help of attorney "Foreclosure Mills" such as Defendants Baum, who makes about $200 Million a year from the foreclosures, and all of whom profit from their conspiracy while homeowners and American citizens suffer.

101.   The foreclosure income is so profitable that Defendants are motivated to file foreclosures whether they are based on fact or fiction.

102.   Defendants knew they filed false and fraudulent documents with the court and county clerk to foreclose on PlaintiffS' property.

103. Defendants participated in a scheme to file fraudulent foreclosure documents against PlaintiffS to extract money and property from them knowing the Mortgage was never assigned and that Defendant MERS' member bank HSBC had no standing to file a foreclosure.

104. Upon information and belief, Defendant Steven Baum acting by himself or through or with the other persons, associations and/or companies, has formulated, directed, controlled, or participated in the acts or practices of Defendants Steven Baum P.C., MERS and all other Defendants named herein as set forth in this Complaint, including developing, producing, creating and disseminating to Plaintiffs and the purported class members false, fraudulent and deliberately deceitful (a) collection letters regarding impending foreclosures, (b) Notice of Pendencies, (c) Summons and Complaints for Foreclosure, (d) other legal documents filed with courts and clerks throughout the State of New York and (e) Reinstatement and Payoff letters.

105. Upon information and belief, Defendant MERS and its bank members and shareholders acting by themselves or through or with the other persons, associations and/or companies, have formulated, directed, controlled, or participated in the acts or practices of Defendants Baum and all other Defendants named herein as set forth in this Complaint, including developing, producing, creating and disseminating to Plaintiffs and the purported class members internationally false, fraudulent and deliberately deceitful (a) collection letters regarding impending foreclosures, (b) Notice of Pendencies, (c) Summons and Complaints for Foreclosure, (d) other legal documents filed with courts and clerks throughout the State of New York and (e) Reinstatement and Payoff letters.

106. Defendants, including licensed attorneys, have become skilled in using the artifice of MERS to sabotage the judicial process to the detriment of homeowner borrowers by filing false documents in the courts and with the county clerks.

107. Upon information and belief, from on or about January, 2006 to date, Defendants engaged in a pattern and practice being a scheme to prey upon the homeowners of the State of New York and the New York Judiciary and County Clerks' by filing fraudulent complaints, lis pendens and satisfaction of mortgages, among other documents to complete the scheme, including collection letters and pay-off statements, to take people's homes, property and money away from them to Defendants by using the federal wires and mail when they fax and e-mail the docuements and mail to send those fraudulent documents to banks, homeowners, other counsel, the judiciary, and clerks.

108. By entering into their scheme of filing unlawful foreclosures , Defendants Baum and the other conspiring Defendants were and are able to secure a reliable source of income wherein Defendants Baum get legal fees and other costs, including fees above and beyond actual costs incurred, and Defendant MERS' profits as its shareholders using the MERS subterfuge make money from the

foreclosed properties by getting loans paid off based on their involvement with the fraudulent letters and foreclosure filings to take homes away and auction or sell them.

109. To further their scheme, Defendants used the federal wires and mail to send false collection and payoff letters to homeowners on behalf of Defendant MERS shareholders who had no legal right to collect.

110. The mails are used to send their false and fraudulent payoff and other letters and court filings to homeowners, banks, title companies, attorneys, judges, court clerks and county clerks regarding their false foreclosure filings.

111.  Defendants use wire transfers of  monies they collect received from the foreclosures.

112.   At all times relevant herein, Defendants knew it was unlawful, unethical and improper to deceive the public and the judiciary that could lead to referral to a disciplinary committee and a risk of revocation or suspension of one or more of the Conspiring Defendants' licenses to practice law and banking licenses of Defendant MERS' members and shareholders.

**CLASS ACTION ALLEGATIONS**

113. Plaintiffs brings this action on behalf of themselves and as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of the following class: "Between January, 2005 to date, all persons in the State of New York subjected to Defendants' Baum collection procedures against their home mortgages who were served with or received from Defendants' Baum documents naming Defendant MERS and/or a banking member of Defendant MERS, including but not limited to reinstatement letters, payoff letters, Notice of Pendency and/or Foreclosure Complaints which did not name a plaintiff with standing and said persons either paid off their mortgage in response thereto, lost their homes or engaged in litigation in response to Defendants Baum's foreclosures for plaintiffs that had no standing."

114.  Excluded from the class are Defendants, their subsidiaries and affiliates, officers, directors, and employees.

115.  Plaintiff believes that there are at least some ten thousand members of the class as above described; their exact number and identities are currently unknown. The basis of this belief is that recent news articles report Defendants Baum file over ten thousand foreclosures annually.  As this case includes the past 5 years at some ten thousand filings a year, then there are enough persons to form a class.

116.   The members of the class are so numerous that joinder of all members is impracticable.

**117.**   The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

118. There are questions of law and fact common to the members of the class, which questions relate to the existence of the acts of the Defendants hereinafter alleged, the wrongful nature thereof, and the type of damage sustained as a result thereof, to wit:

    (a) Is Defendant Baum and his Defendant employees and agents working at his office in a conspriracy with Defendant MERS and its bank shareholders alleged to be clients of Defendants Baum to serve fraudulent foreclosure documents upon homeowners in the State of New York to deceive homeowners into paying off  mortgages based upon fraudulent collection documents?

    (b) Are Defendants filing fraudulent foreclosure complaints with the courts of the State of New York and the County Clerks to deceive the Courts and clerks into believing they are accepting proper legal papers to obtain  judgments against homeowners?

    (c) Are the false foreclsoures filed by Defendants interefering and impairing homeowners' rights and interests to their property?

    (d) Is the conduct of Defendants illegal, unlawful and criminal to which they are engaging in a racket against the public and the judiciary that causes homeowners to unlawfully lose their homes, money to Defendants and/or engage in litigation to defend themsleves against false filings by Defendants?

    (e) Are Defendants Baum charging and collecting inflated and other fees to homeowners that are not permitted by the Mortgages he seeks to collect nor are they actual fees incurred?

    (f) Are Defendants profitting from their illegal, unlawful and criminal conduct?

    (g) Are Defendants Baum violating RESPA and the Fair Debt Collection Practices Act by engaging in fraudulent filings and collection procedures that mandates damages to this Class?

119. Plaintiffs'  claims are typical of the claims of class members, and they will fairly and adequately protect the interests of the class. The interests of Plaintiffs are coincident with, and not antagonistic to, those of the other members of the class.

120. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

121. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**122.**    The class is readily definable and prosecution as a class will eliminate the possibility of repetitious litigation, while also providing redress for claims too small to support the expense of individual, complex litigation.

123.    Joinder of all these individuals is impracticable because of the large number of Class members and the fact that Class members are probably dispersed over a large geographical area of the State of New York. Furthermore, many Class members are most probably low income persons, may not speak English, may not know of their rights and would have difficulty in pursuing their rights individually. Thus, the expense and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs they suffered. The cost to the federal court system of adjudicating thousands of individual cases would be enormous.

124.    Individualized litigation would magnify the delay and expense to all parties and the court system. By contrast, to proceed via this action as a class action in this District presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each member of the Class.

125.    Plaintiffs' claims are typical of the claims of the class members because Plaintiffs, and all other members of the class, were injured by exactly the same means- named as defendants in fraudulent foreclosure filing and lost rights to their property.

126.    The Plaintiffs will fairly and adequately protect the interests of the members of the class.

127.    Plaintiffs have retained competent and experienced counsel in both federal class action litigation, with extensive real estate knowledge and experience applicable to this case.

128.    Susan Chana Lask, Esq. is an experienced federal class action litigator with a commercial real estate background who handles nationwide class actions. In 2007 she was appointed class counsel in the historical civil rights prison strip search suit of *Albert Florence* against two New Jersey Counties.  In 2008 she won the case by her summary judgment motion. In 2010, Ms. Lask defended her case in the Third Circuit joined by five former Attorneys General filing amici. Ms. Lask is presently filing a Petition for Certiorari in the Supreme Court.  She handled multi-million dollar complex Federal Hazardous Waste Litigation involving government agencies starting with her work in 1986 with the preeminent national firm of Rivkin, Radler, Dunne and Bayh (working with New York's then senators and partners Senators Dunne & Bayh) in the chemical warfare Agent Orange case against Morton Thikol, the chemical creosote pollution case against James Graham Brown Foundation in Kentucky, Alabama and Florida, and the existence of PCB pollutants in the Hudson River. She worked in Los Angeles with class action counsel against Taco Bell for laborers' wages. Her work with attorneys' general nationwide and other

government agencies brought a successful settlement of the class action RICO suit against Miss Cleo. Also, she settled a class action for New York City drivers wherein the City of New York changed traffic violation procedures and law upon Ms. Lask demonstrating class members were being ticketed under a law that did not exist. In 1995 she handled an international white collar criminal case involving complicated air traffic laws leading the news media to follow Ms. Lask's work worldwide. She was counsel to a Lloyd's of London agent in New York investigating and litigating worldwide multi-million dollar freight losses and frauds, gaining critical investigation skills in detecting and uncovering complex frauds for Lloyd's of London.  Ms. Lask practices before several Circuit Courts and is admitted to the United States Supreme Court, an honor extended to counselors with impeccable records.

129.    Ms. Lask has an excellent reputation without so much as a sanction in her over 23 years of law practice. Her commitment to excellence and ethics in the Bar commits her to obtain the best and most fair settlement for every class member, and insure the Class receives justice and their appropriate damages. She will adequately protect the class interests during litigation and upon settlement and thereafter.

130.    The Plaintiffs have no interests contrary to, or in conflict with, those of the class.

131.    The Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

132.    The class action is superior to any other available means to resolve the issues raised on behalf of the Class. The class action will be manageable because so many different records systems exist from which to ascertain the members of the putative class. Damages can be determined on a classwide basis using a damages matrix set by a jury, or by trying the damages of a statistically valid sample of the class to a jury and extrapolating those damages to the class as a whole. Class treatment will be superior because liability can be determined on a classwide basis.

133.    Damages can also be determined on a classwide basis through use of statistical sampling.

**<u>COUNT ONE</u>**

(Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(a))

134.    The averments of the above stated paragraphs are stated here as if fully set forth herein.

135.    Plaintiffs and each member of the Class are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964.

136.     Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3).

137.    Defendant Baum is the leader, manager, organizer and controller who influences the enterprise consisting of all other Defendants.

138.   Defendants follow the directions of Defendant Baum to file fraudulent foreclosures, false letters, and other false documents with courts and county clerks to promote their scheme to defraud the the public and the judiciary to fictionalize foreclosures in the name of partys without standing.

139.   With respect to Plaintiff's claims under 18 U.S.C. §1962(a) Defendants together constitute an "enterprise" as that term is defined in 18 U.S.C. § 1961(4), which through Defendants, were and are engaged in interstate or foreign commerce and the activities of which affect interstate or foreign commerce.

140.   During the Class Period and to date the acts lasted a substantial period of time, do last indefinitly and are pervasive as Defendants intend to have them last indefinitely and to victimize tens of thousands of homeowners, attorneys and the judiciary by perpetuating their frauds and deceptions for profit.

141.   Defendants acting individually and/or by and through their officers and directors, engaged in a fraudulent scheme and common plan which included using or causing the interstate wires to transfer and obtain funds from the fraudulent foreclosures and by so doing they engaged in multiple commissions of wire fraud involving the same and/or similar fraudulent representations to tens of thousands of homeowners, violating 18 U.S.C. §§ 1341 and 1343, and 15 U.S.C. §§ 45 and 52.

142.   This conduct constitutes predicate acts of racketeering activity within the meaning of 18 U.S.C. § 1961(1). All such instances were related in their common objective, or repeated on multiple occasions during the Class Period, and are capable of further repetition, as a result of which they constitute a pattern of racketeering activity.

143.   Defendants and their respective agents have used or invested income derived from this pattern of racketeering activity in the enterprise in violation of 18. U.S.C. § 1962(a), including use of the proceeds of their racketeering activity to further their scheme.

144.   Plaintiffs and the other members of the Class suffered injury and financial damages to their by reason of Defendants' use for investment of income derived from their pattern of racketeering and the enterprise, which used or invested enabled the enterprise to continue its operations, and paid for Defendants' perpetuation of their fraudulent activities, as a result of which Plaintiff and the other members of the Class have been deceived to believe they were in foreclosure when the foreclosure documents were unlawful.

145.   The amount of financial damage remains undetermined.

## COUNT TWO

(Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d))

146.   The averments of the above stated paragraphs are stated here as if fully set forth herein.

147.   Defendants have conspired to use or invest income derived from a pattern of racketeering activity along with each other, all  in violation of 18 U.S.C. § 1962(d).

148.    Plaintiffs and members of the class suffered injury and financial damage to their property by reason of Defendants' conspiracy

## COUNT THREE

(Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c))

149.   The averments of the above stated paragraphs are stated here as if fully set forth herein.

150.   The association in fact of the Defendants is an enterprise engaged in, and whose activities affect, foreign and interstate commerce within the meaning of 18 U.S.C. §§ 1961(4) and 1962.

151.   The enterprise exists separate and apart from the pattern of racketeering alleged.

152.   Defendants conducted or participated, directly and/or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

153.   The conspiracy was agreed upon between Defendants wherein Defendants Baum perpetuated the false, fraudulent and deceitful foreclosure filings for years.

154.   The other named Defendants agreed to the conspiracy of the fraudulent foreclosure filing scheme by using their computers, phones and wires to distribute to homeowners and judiciary the false, fraudulent and deceitful foreclosure filings and false county clerk recordings.

155.   Plaintiffs and the other members of the Class sustained injury and financial damages to their property as a direct and proximate result of the acts of Defendants and the enterprise by Defendants through the pattern of racketeering activity alleged herein.

## COUNT FOUR

(Wire Fraud)

156.   The averments of the above stated paragraphs are stated here as if fully set forth herein.

157.   Defendants' accomplished and completed their fraudulent scheme to defraud the public and judiciary by using the wires via e-mail, the web and faxing their fraudulent foreclosure documents and related letters  in violation of 18 U.S.C. § 1343 wherein the transmissions were made in and left the State of New York between all named Defendants and to the public, plaintiff, class members, the judiciary, courts and other persons to file the fraudulent foreclosure documents.

158.   The purpose is specified hereinabove .

**COUNT FIVE**

(fraud and deceit)

159.    The averments of the above stated paragraphs are stated here as if fully set forth herein.

160.    Defendants scheme obstructs justice by corruptly influencing, obstructing, and impeding, and endeavoring to influence, obstruct, and impede the due administration of justice in fraudulent foreclosure lawsuits filed and litigated in the United States courts, violating Tile 18, U.S.C. § 1503.

**COUNT SIX**

(False Oaths)

161.    The averments of the above stated paragraphs are stated here as if fully set forth herein.

162.    Defendants made false material decalarations under oath in proceedings before and ancillary to courts of the United State in violation of 18 U.S.C. §1623(a).

**COUNT SEVEN**

(unjust enrichment and imposition of constructive trust)

163.    The averments of the above stated paragraphs are stated here as if fully set forth herein.

164.    As a result of the conduct described above, defendants have been and will be unjustly enriched at the expense of the members of the Class.

165.    Defendants have been unjustly enriched as the mortgage terms are strictly limited to their actual costs, fees and expenses that were incurred or obligated to be paid in connection with enforcement proceedings.

166.    Defendants have been routinely overcharging for attorneys' fees and other fees and costs that have not been incurred in addition to such things as clerk filing fees, service of process fees, statutory clerk fees, late charges, delinquency fees, appraisal fees, recording fees, unspecified foreclosure  fees and costs, administrative fees, escrow fees, and interest charges.

167.    Those fees and expenses charged were not actually incurred by Defendants and/or were incurred at lesser amounts than were billed to and paid by Class members.

168.    Defendants have unjustly profited.

169.    Plaintiffs demand all said fees accounted for and returned.

170.    Unless enjoined, Plaintiffs and the members of the Class will be irreparably harmed.

171.    Defendants should therefore be required to disgorge the profits they have obtained and will unjustly obtain at the expense of the members of the Class and homeowners or their agents who

paid any sums to them during this period of fraud as detailed above, and a constructive trust should be imposed thereon.

**COUNT EIGHT**

(RESPA Violation)

172.   The averments of the above stated paragraphs are stated here as if fully set forth herein.

173.   Pursuant to 12 U.S.C. §2605 a Lender shall notify the borrower in writing of any sale, transfer or assignment of the mortgage within 15 days of the assignment.

174.   Defendants filed legal documents in the foreclosure action against Plaintiffs stating the mortgage was assigned to an entity.

175.   Plaintiffs never received a 15 day notice.

176.   Plaintiffs demand damages pursuant to 12 U.S.C. §2605(f) of any actual damages to them as a result of that failure, and any additional damages as the court may allow, up to $1,000 and Defendants are liable in the case of this class action for any actual damages to the borrowers, and any additional damages in an amount not greater than $1,000 to each class member, except that the total amount of damages may not exceed the lesser of $500,000 or 1 percent of the net worth of the Defendants and mandatory costs and attorney fees.

**COUNT NINE**

(Fair Debt Collection Practices Act (FDCPA))

177.   The averments of the above stated paragraphs are stated here as if fully set forth herein

178.   Defendants Baum were and are a debt collector under the FDCPA.

179.   Defendants Baum served Plaintiffs with collection letters for debts they had no right to collect.

180.    Defendants Baum filed false and fraudulent legal documents in the courts and county clerks to collect a debt they had no standing to collect.

181.    Defendants Baum deceived Plaintiffs and the class into believing they owed a debt because of legal documents that were actually unlawful.

182.   Defendants Baum violated FDCPA §812 by creating the false belief in Plaintiffs as consumers of mortgage products that a debt was owed to an entity when in fact that entity was not owed money, §1692e  including by threatening foreclosure action for a party when a debt was not owed that party and threatening to take legal action on behalf of that party that would be fraudulent; and §1692j by filing compliants and serving other forms falsely indicating a party is owed a debt that is not the real party in interest.

183.    Plaintiff demands damages under the FDCPA 15 U.S.C. §1692K providing for civil liability and damages against any debt collector who fails to comply with any provision thereof with respect to

a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and the costs of the action, together with a reasonable attorney's fee as determined by the court.

## COUNT TEN

(punitive damages)

184.    The averments of the above stated paragraphs are stated here as if fully set forth herein.

185.    Defendants Baum as licensed attorneys are held to a high standard of honesty.

186.    Defendants' frauds and other misconduct upon the public and the judiciary for their financial benefit is reprehensible, outrageous and demands serious punitive damages to stop Defendants from further harming the public and deceiving the judiciary.

187.    Defendants' conduct described herein was done with the conscious disregard of Plaintiffs' and the class members rights to their property to a fair hearing and due process and using fraudulent collection proecdures with the intent to vex, injure or annoy Plaintiffs and members of the Class such as to constitute oppression, fraud or malice, entitling Plaintiffs and the members of the Class to an award of punitive damages in an amount appropriate to punish or set an example of Defendants.

## JURY DEMAND

188.    Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for relief as follows:

a. That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

b. That the aforesaid conduct of Defendants be adjudged and declared to have been in violation of RICO, 18 U.S.C. §1961 et seq., and that judgment be entered for Plaintiffs and the members of the class and against Defendants for threefold the amount of damages sustained by Plaintiffs and the class together with the costs of this action, including reasonable attorneys' fees;

c. That the aforesaid conduct of Defendants be adjudged and declared to have been in violation of the common law and statutes of New York and other states, and that judgment be entered for Plaintiffs and the members of the class and against Defendants for the amount of damages determined to have been sustained by them or otherwise allowed by law, together with punitive damages to punish Defendants and deter them from future misconduct, multiple damages where authorized by statute, and the costs of this action, including reasonable attorneys' fees;

d. That Defendants, their subsidiaries, successors, transferees, assignees and their respective officers, directors, partners, agents, and employees, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or reviving the unlawful conduct alleged herein with respect to any product;

e. That reasonable attorney fees and costs of the suit be granted to Plaintiffs and the Class;

f. That Punitive damages be granted to Plaintiffs and the Class;

g. That compensatory damages, restitution and all allowable damages be granted to Plaintiffs and the Class regarding the FDCPA, RESPA, Fraud, Unjust Enrichment and other violations alleged herein above; and

h. That Plaintiff and members of the class have such other, further and different relief as the Court may deem just and proper.

Dated:   September 28, 2010
        New York, NY

LAW OFFICES OF SUSAN CHANA LASK

/s Susan Chana Lask

_____
By: **Susan Chana Lask, Esq.(SCL-1744)**
Attorney for Plaintiffs
**244 Fifth Avenue, Suite 2369**
**New York, NY 10001**
**(212) 358-5762**