UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------

CONCEPCION CAMPBELL, &
JEFFREY F. MILLER, individually and
for all those similarly situated,

                    Plaintiff,

                                         Case No.
                                         10-cv-3800 (JBW) (JO)

-against-

STEVEN J. BAUM, ESQ., STEVEN J. BAUM, P.C.,
STEPHANIE M. VAMPOTIC, DAWN HANZLIK-
HEXEMER, ESQ., JANE & DOES 1-10 AS AGENTS
AND/OR EMPLOYEES RELATED TO STEVEN J.
BAUM, PC, MERSCORP, INC., MORTGAGE
ELECTRONIC REGISTRATIONS, INC., REBECCA
A. COSGROVE & JOHN DOES 1-10 AS AGENTS
AND/OR EMPLOYEES RELATED TO DEFENDANT
MERSCORP, INC.,

                    Defendants.

------------------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO DISMISS PURSUANT
## TO FED. R. CIV. P. 12(B) and 9(B)

.

## **TABLE OF CONTENTS**

**PAGE NO.**

TABLE OF AUTHORITIES ...................................................................................... i

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 3

ALLEGATIONS IN THIS ACTIONS ....................................................................... 7

    A. Allegations Specific to Campbell ..................................................................... 9

    B. Allegations Specific to Miller ........................................................................ 10

ARGUMENT ........................................................................................................... 11

I    PLAINTIFFS' CLAIMS MUST BE DISMISSED PURSUANT
    TO RULE 12(B)(6) ............................................................................................ 11

    A. Plaintiff's Case Must Be Dismissed Because Plaintiff Has
       Failed To State a Claim That Is Plausible On Its Face ............................. 11

    B. Additional Grounds For Dismissal Of Campbell's Claims....................... 14

    C. Additional Grounds For Dismissal Of Miller's Claims ........................... 17

II   PLAINTIFFS HAVE FAILED TO PLEAD VIABLE RICO
    CASES OF ACTION....................................................................................... 20

III  PLAINTIFFS HAVE FAILED TO PLEAD A CAUSE
    OF ACTION FOR FRAUD ............................................................................. 25

IV  PLAINTIFFS' CLAIM FOR VIOLATION OF 18 U.S.C. § 1623(A)
    MUST BE DISMISSED ................................................................................. 27

V   PLAINTIFFS' CLAIMS ARE BARRED BY THE
    ROOKER-FELDMAN DOCTRINE AS WELL AS COLLATERAL
    ESTOPPEL ..................................................................................................... 28

i

VI   PLAINTIFFS' CLAIMS FOR A RESPA VIOLATION FAILS
     TO STATE A CAUSE OF ACTION........................................................... 31

VII  PLAINTIFFS' CLAIMS FOR FDCPA VIOLATIONS ARE
     BARRED BY THE STATUTE OF LIMITATIONS .................................... 32

VIII PLAINTIFFS' PUNITIVE DAMAGES CAUSE OF ACTION
     MUST BE DISMISSED ............................................................................. 33

IX   THE COURT SHOULD ABSTAIN FROM RULING ON
     ISSUES CONCERNING SUBSTANTIVE ISSUES .................................. 33

CONCLUSION.......................................................................................................... 37

## TABLE OF AUTHORITIES

**Page**

*Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411 (1980).................................................. 29

*American Disposal Servs., Inc., v. O Brien*, 839 F.2d 84 (2d Cir. 1988) .................. 34

*Ashcroft v. Iqbal*, 550 U.S. 555, 129 S.Ct. 1937 (2009) ............................................. 11

*Auburn Medical Center v. Andrus*, 9 F.Supp.2d 1291 (M.D. Ala. 1998).................. 24

*Bay Harbour Management, LLC v. Carother*, 282 Fed. Appx. 71(2d Cir. 2008) ..... 24

*Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)..................... 11

*Blau v. America's Servicing Co.*,
2009 U.S. Dist. 90632 (D. Ariz. Sept. 28, 2009)................................................. 13, 21

*Burford v. Sun Oil Co.*, 319 U.S.315, 63 S.Ct. 1098 (1943) ...................................... 34

*Burnett v. Mortgage Elec. Registration Sys., Inc.*,
2009 U.S. Dist., 100409 (D. Utah October 27, 2009)................................................. 19

*Calka v. Kucker, Kraus & Bruh, LLP*, 1998 U.S. Dist. 11868 (E.D.N.Y. 1998) ...... 32

*Campaign v Barba*, 23 A.D.3d 327 (2d Dep't 2005).................................................. 18

*Canaday v. Koch*, 608 F. Supp. 1460 (S.D.N.Y. 1985)........................................ 34, 35

*Cardiello v. Money Store, Inc.*,
2001 U.S. Dist. LEXIS 7107 (S.D.N.Y. June 1, 2001)................................................ 32

*Cohen v. Sudler & Hennessey, LLC*,
2010 WL 3431534 (S.D.N.Y. 2010)............................................................................ 26

*Conde-Dedonato*, 391 B.R. 247 (Bankr. E.D.N.Y. 2008) ......................................... 18

*Countrywide Home Loans, Inc. v Gress*, 68 A.D.3d 709 (2d Dep't 2009)................ 20

*Crigger v. Fahnestock and Co., Inc.*, 443 F.3d 230, 234 (2nd Cir. 2006)................. 15

*Curtis v. Moore*, 152 N.Y. 159 (1897)........................................................................ 16

*Daddona v. Gaudio*, 156 F. F.Supp.2d 153 (D.Conn. 2002) ...................................... 24

*Deutsche Bank Nat'l Trust Co. v. McRae*, 2010 WL 309015
(N.Y. Sup. Ct. Allegany Cnty Jan. 25, 2010) ........................................................... 16

*Expert Electric v. Levine*, 554 F.2d 1227 (2nd Cir. 1977) ........................................... 29

*Fargo Bank N.A. v. Marchiove*,
69 A.D.3d 204, 887 N.Y.S.2d 615 (2d Dep't 2009) ............................................. 15, 20

*Federal Nat'l Mrtg Ass'n., v. Youkelson*,
303 A.D.2d 546, 755 N.Y.S.2d 730 (2d Dep't 2003) ................................................. 15

*Feiwus v. Genpar, Inc.*,
43 F.Supp.2d 289 (E.D.N.Y. 1999) .................................................................... 34, 35

*First Capital Asset Management, Inc. v. Satinwood, Inc.*,
385 F. 3d 159 (2d Cir. 2004) ...................................................................................... 22

*First Nationwide Bank v. Gelt Funding, Corp.*,
820 F.Supp. 89, 98 (2d 1993) ............................................................................... 20, 21

*Flyer v. Sullivan*,
284 A.D.697, 134 N.Y.S.384 (2d Dep't 1954) ......................................................... 16

*Fryer v. Rockefeller*, 63 N.Y. 268 (1875) ................................................................... 16

*Gorham-Dimaggio v. Countrywide Home Loans, Inc.*,
2009 U.S. Dist. LEXIS 52078 (N.D.N.Y June 19, 2009) .......................................... 32

*Grant v. Aurora Loan Services*, 2008 WL 4411323 (E.D.N.Y. 2008) ...................... 32

*Grumbkow v. Greenpoint Bank*,
132 Fed. Appx. 913, 2005 WL 1327602 (2nd Cir. 2005) ........................................... 28

Hoblock v. Albany County Bd. Of Elections, 422 F.3d 77 (2nd Cir. 2005)............... 28

*Jacques v. U.S. Bank N.A.*, 416 B.R. 63 (Bankr. E.D.N.Y. 2009)............................. 32

*Joint Eastern and Southern Dist. Asbestos Litigation*,
78 F.3d 764 (2nd Cir. 1996)...................................................................................... 34

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ......................................................... 24

*Kartiganer Associates, P.C., v. Wehran Engineering, P.C.,*
92 A.D.2d 911, 460 N.Y.S.2d 124 (2d Dep't 1983)..................................................... 29

*Katz v. Dime Savings Bank, FSB*, 992 F. Supp. 250 (W.D.N.Y. 1997)...................... 31

*Lasalle Bank Nat. Ass'n v. Ahearn,*
59 A.D.3d 911, 875 N.Y.S.2d 595 (3d Dep't 2009)........................................ 16, 18, 20

*Lawrence v. Household International, Inc.,*
123 Fed. Appx. 414, 2005 WL 78779 (2nd Cir. 2005)................................................. 28

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2nd Cir. 2006)........................................... 26

*McGinnis v. GMAC Mortg. Corp.,*
2010 U.S. Dist. LEXIS 90286 (D. Utah Aug. 27, 2010) ............................................ 19

*Metlife Investors USA Insurance Company v. Zeidman,*
2010 WL 3418251 (E.D.N.Y. 2010)............................................................................ 11

*Migra v. Warren City School District Board of Education,*
465 U.S. 75, 104 S.Ct. 892 (1984).............................................................................. 29

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2nd Cir. 1993).................................. 25

*Moll v. U.S. Life Title Ins. Co.,* 654 F. Supp. 1012 (S.D.N.Y. 1987)......................... 22

*Morin v. Trupin,* 711 F. Supp. 97 (S.D.N.Y. 1989)..................................................... 24

*Mortgage Elec. Registration Sys., Inc. v. Azize,*
965 So. 2d 151 (Fl. Dist. 2d Ct. App. 2007)............................................................... 19

*Mortgage Elec. Reg. Sys., Inc. v. Nebraska Depart. of Banking,*
270 Neb. 529, 704 N.W.2d 784, 785 (Neb. 2005)...................................................... 12

*Mortgage Elec. Reg. Sys., Inc. v. Ventura,*
2006 Conn. Super. LEXIS 1154 (Conn. Super. Ct. April 20, 2006) .......................... 19

*Murphy v. GE Capital Asset Corp.,*
38 Fed. Appx. 86, 2002 WL 1270890 (2nd Cir. 2002)............................................... 28

*Nakahara v. Bal, No.,*
1998 U.S. Dist. LEXIS 825, 1998 WL 35123 (S.D.N.Y. Jan. 30, 1998) ................. 24

*National Mortgage Consultants v. Elizaitis*,
3 Misc.3d 1109A, 787 N.Y.S.2d 679 (N.Y.Sup. 2004) .................................. 16, 17, 18

*New Orleans Pub. Serv., Inc., v. Council of New Orleans*,
491 U.S. 350 (1989) ...................................................................................................... 34

*NLRB v. United Technologies Corp.*, 706 F.2d 1254 (2nd Cir. 1983) ........................ 30

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ........................................................... 24

*Plout v. American Home Assurance Co.*, 668 F.Supp. 204 (S.D.N.Y. 1987) ............. 25

*Polur v. Raffe*, 912 F.2d 52 (2nd Cir. 1990) ................................................................. 29

*Reeves, et al. v. Ernst & Young*, 507 U.S. 170 (1993) ................................................. 22

*Rhoads v. Wash. Mut. Bank, F.A.*,
2010 U.S. Dist. LEXIS 44389 (D. Ariz. Apr. 6, 2010) ......................................... 21, 25

*Rocanova v Equitable Life Assur. Socy. of U.S.*,
83 N.Y.2d 603, 634 N.E.2d 940, 612 N.Y.S.2d 339 (1994) ....................................... 33

*Rodeback v. Utah Fin.*,
2010 U.S. Dist. LEXIS 69821 (D. Utah July 13, 2010) ............................................. 19

*Saud v. Bank of New York*, 929 F.2d 916 (2nd Cir. 1991) ........................................... 29

*Schuh v. Druckman & Sinel, L.L.P.*, 602 F.Supp.2d 454 (S.D.N.Y. 2009) ................ 28

*Sierra v. Foster & Garbus*, 47 F.Supp. 2d 393 (S.D.N.Y. 1999) ............................... 33

*Singh v. Parnes*, 199 F.Supp.2d 152 (S.D.N.Y. 2002) ............................................... 29

*Smartix Int'l Corp. v. Mastercard Int'l, LLC, et al.*,
2009 U.S.App. LEXIS 23810 (2d Cir. 2009) ....................................................... 20, 21

*Smith v. Russell Sage College*, 54 N.Y.2d 185, 445 N.Y.S.2d 68 (1981) ................. 29

*S.Q.K.F.C. v. Bell Atlantic Tricon Leasing Corp.*,
84 F.3d 629 (2d Cir. 1996) ......................................................................................... 23

*States* v. *Coonan*, 938 F.2d 1553 (2d Cir. 1991) ....................................................... 22

*Stoneridge Inv. Partners, LLC v. Scientific Atlanta,*
552 U.S. 148, 128 S.Ct. 761 (2008) .......................................................................... 27

*Stringer v. Liinve*, 92 Fed. Appx. 818, 2004 WL 393160 (2nd Cir. 2004) ........... 28, 30

*Swiatkowski v. New York,*
160 Fed. Appx. 30, 2005 WL 34066678 (2nd Cir. 2005) ........................................... 28

*U.S. Bank, N.A. v Collymore,*
68 A.D.3d 752, 890 N.Y.S.2d 578 (2d Dept 2009) ............................................. 18, 20

*U.S. v. Muhammad*, 595 F.3d 426 (2nd Cir. 2010) ...................................................... 28

*United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002) .................................. 24

*von Bulow v. von Bulow*, 657 F. Supp. 1134 (S.D.N.Y. 1987) ................................... 24

*Waldman v. Village of Kiryas Joel*, 207 F.3d 105 (2nd Cir. 2000) ............................. 30

*Wall v. CSX Transport, Inc.*, 471 F.3d 410 (2nd Cir. 2006) ....................................... 26

*Warnock v. State Farm Mut. Auto. Ins. Co.*
2008 U.S. Dist. LEXIS 81507 (S.D. Miss. Oct. 14, 2008) ......................................... 25

## STATUTES

12 U.S.C. §2601 (2000) ............................................................................................. 31

12 U.S.C. § 2605(a)(b)(c) ..................................................................................... 31, 32

15 U.S.C. 1692k(d) ..................................................................................................... 32

18 U.S.C. §1623 .......................................................................................................... 27

## MISC

N.Y. Jur.2d Mortgages and Deeds of Trust § 272 (2009) ..................................... 16, 18

N.Y. Real Property Law § 244 .................................................................................... 18

The Law of Real Estate Financing, § 12:35 ............................................................... 36

## PRELIMINARY STATEMENT

Defendants, Steven J. Baum, Esq., Steven J. Baum, P.C., Stephanie M. Vampotic, Dawn Hanzlik-Hexemer, Esq. (collectively the "Baum defendants") move pursuant to Federal Rule of Civil Procedure 12(b) and Rule 9(b) to dismiss the complaint, and submit this Memorandum of Law in support of the motion. This case represents an aggressive and unfounded attempt by two homeowners who have defaulted on their mortgages to block their foreclosure by claiming that their failure to pay their mortgage was brought about by a massive conspiracy between mortgage lenders, mortgage servicers, Mortgage Electronic Registrations, Inc. ("MERS") and the attorneys who handled the plaintiffs' foreclosures. Never once challenging that they both defaulted on their mortgages (and in plaintiff Miller's case – not making a mortgage payment for over two years), both plaintiffs attempt to articulate claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), fraud, conspiracy, Real Estate Settlement Practices Act ("RESPA"), Fair Debt Collection Practices Act ("FDCPA"), unjust enrichment and punitive damages. Plaintiffs allege that the defendants engaged in a massive scheme originating with the loan approval process running all the way through the foreclosure process wherein the defendants collectively planned to issue mortgages, bundle them and sell them as securities, hope for the borrowers to default, then commence foreclosure proceedings years later and reap huge profits.[1] Plaintiffs have named a number of defendants, including the Baum defendants, who are the attorneys who filed the two foreclosure actions at issue.

---

[1]     The fact that plaintiffs assume that foreclosures are a profitable endeavor for any lending institution sheds light on how outlandish the claims in this action really are.

The facts purportedly giving rise to the claims asserted by the two plaintiffs in this case, Concepion Campbell and Jeffrey F. Miller, are at some points identical (i.e., both failed to pay their mortgages) and at other points diametrically opposed. Campbell, a homeowner dissatisfied with the outcome of a foreclosure action litigated and resolved by payment in full of her mortgage debt in New York State court in 2007, now attempts to re-litigate that action before this Court. Campbell makes broad and conclusory allegations that the foreclosure action against her was "unlawful" and advanced by "false" filings – never once disputing the simple fact that she defaulted on her mortgage and, thus, was rightfully subject to foreclosure. Her claims against the Baum defendants with respect to their handling of the foreclosure action against her are disproved by the very documents she relies upon in the complaint. To the extent Campbell has any complaint about what happened in the foreclosure action, it could have and should have been raised in state court. To the extent that Campbell attempts to plead broad conspiracy theories, her allegations are simply insufficient and implausible on their face. The shortcomings in the complaint are all the more apparent given the heightened pleading requirements of the causes of action sounding in RICO and fraud. Her claims are also barred by the Rooker-Feldman doctrine.

With respect to Miller, he too was subject to a foreclosure action after he failed to pay his mortgage. After tentatively halting the foreclosure process (by challenging HSBC's standing to proceed without a written assignment of the loan note), he elected to go "on the offensive" in this action claiming that Baum defendants committed fraud in the foreclosure action – premised primarily on the assertion that the Baum Defendants' client in that action, lacked standing to commence the foreclosure action. Miller's claims against the Baum Defendants are based upon

2

his conclusory assertion that because he has temporarily prevailed in the foreclosure action by raising a standing defense then the Baum Defendants must have acted fraudulently, participated in a conspiracy and fraud, as well as violating RESPA, RICO and the FDCPA, by commencing the action on their client's behalf. As discussed herein, the Baum Defendants filed the foreclosure action based upon existing law and there is no evidence of any fraud, conspiracy or other wrongdoing.

As set forth herein, the complaint should be dismissed as against the Baum defendants.

## STATEMENT OF FACTS

### *Facts Pertaining to Plaintiff Campbell*

Campbell owned property located at 171 Union Street in Brooklyn, New York (the "Campbell Property"). Complaint[2] at ¶12. In July, 2005, plaintiff executed a 30 year mortgage (the "Campbell Mortgage") on the property, borrowing $190,000 from HSBC Mortgage Corporation ("HSBC"), designated as the "Lender" on the face of the Campbell Mortgage. *Id.* The Campbell Mortgage specifically lists the "Borrower" as Campbell and the "Lender" as HSBC. Complaint, Ex. A. Campbell's promise to repay HSBC over 30 years was reflected in a promissory note (the "Campbell Note"). Scher Dec., Exhibit B. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is listed in the Campbell Mortgage as "a separate

---

[2] "Complaint" refers to the plaintiff's Second Amended Complaint, filed September 28, 2010 (ECF Doc. No. 4) (incorrectly titled First Amended Complaint) and annexed to the accompanying Declaration of Brett A. Scher, Esq. as Exhibit A. The copy of the Second Amended Complaint uploaded by plaintiff appears to omit the exhibits to the complaint which were attached to prior versions of the complaint. As the documents are referenced in the complaint, the Baum defendants have attached those exhibits to the Second Amended Complaint for the Court's convenience.

corporation that is acting solely as a nominee for Lender [HSBC] and Lender's successors and assigns." Complaint, Ex. A. The Mortgage specifically states: "FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD." Complaint, Ex. A. The Mortgage specifically includes plaintiff's transfer of her property right "to Lender" and her pledge to "mortgage, grant and convey" the Campbell Property "to MERS solely as nominee for Lender and Lender's successors in interest) and its successors in interest . . . ." *Id.* The Mortgage allows defendant MERS "solely as nominee for Lender" or its successors in interest to foreclose. *Id.*

In November 2006, Campbell admits that she fell behind in her mortgage payments. Scher Dec., Ex. C, ¶13. On June 7, 2007, MERS, as nominee for HSBC, assigned the Campbell Mortgage to HSBC ("the Campbell Assignment"). Scher Dec., Ex. D. On the same date, June 7, 2007, defendant Steven J. Baum, P.C. commenced a foreclosure action on behalf of its client, HSBC, against Campbell (the "Campbell Foreclosure Action") based upon her failure to pay the amounts she promised to pay HSBC under the terms of the Campbell Note and Mortgage. Complaint ¶26, Ex. B ("Campbell Foreclosure Complaint"). The Campbell Foreclosure Complaint alleges that plaintiff executed and delivered the Mortgage to MERS "as nominee for HSBC," and states that HSBC is the "holder" of the Mortgage. Complaint, Ex. B (Foreclosure Complaint), at ¶¶1, 15. The Campbell Foreclosure Complaint was accompanied by a verification from attorney Dawn Hanzlik-Hexemer, Esq., from the office of Steven J. Baum, P.C., stating, *inter alia,* that "the grounds of her belief as to all matters in the complaint not stated to be upon her knowledge are based upon the original note, mortgage and/or financial statements." Complaint, Ex. B, p. 12. The Campbell Foreclosure Complaint further alleges that the

4

"mortgage is to be assigned by an Assignment to be *recorded* in the Office of the Clerk of Kings County." *Id.* The Campbell Assignment was subsequently recorded with Kings County Clerk's office on June 25, 2007, although the actual assignment took place and was dated June 7, 2007, the same day the foreclosure complaint was filed. *Id.*

In response to a request from Campbell for the terms necessary to reinstate her mortgage, Steven J. Baum, P.C. sent Campbell a letter, dated July 31, 2007, setting forth an estimate of the amount necessary to reinstate her mortgage. Complaint, ¶55; see also Scher Dec., Ex. E. On or about August 16, 2007, Campbell, through counsel, interposed an Answer in the Campbell Foreclosure Action. Scher Dec., Ex. F. Campbell did not reinstate her mortgage and instead, on or about September 19, 2007, Campbell's attorney in the Campbell Foreclosure Action, Alfred Walendowski, Esq., requested a payoff letter for the Campbell Mortgage. Steven J. Baum, P.C. forwarded a payoff letter to Mr. Walendowski on or about September 28, 2007. Complaint, ¶59. Scher Dec., Ex.G.[3] Campbell does not appear to dispute the figures set forth in the payoff letter.

During the pendency of the Campbell Foreclosure Action, Campbell satisfied the Campbell Mortgage. Complaint, ¶36. In an order dated February 25, 2010, the Supreme Court of the State of New York, Kings County, dismissed the Campbell Foreclosure Action and cancelled the Lis Pendens on the Campbell Property. Scher Dec., Exhibit H.

---

[3]    It is important to note that the complaint in this action purports to quote from the September 28, 2007 letter but contains several errors including several "?" which DO NOT appear in the body of the actual September 28, 2007 letter by Steven J. Baum, P.C. The errors are those of plaintiffs' counsel, not Steven J. Baum, P.C. See Scher Dec., Ex. G.

*Facts Pertaining to Plaintiff Miller*

Miller owned property located at 108 Lakeshore Drive South, Rock Hill, New York (the "Campbell Property"). On or about March 9, 2007, Miller borrowed $525,000 from Real Estate Mortgage Network, Inc. ("REMN") pursuant to a Note and Mortgage (hereinafter the "Miller Note" and "Miller Mortgage"). Complaint, ¶62; Scher Dec., Ex. I.   REMN was designated as the "Lender" on the face of the Miller Mortgage. *Id.*  Defendant MERS is listed in the Miller Mortgage as "a separate corporation that is acting solely as a nominee for Lender [REMN] and Lender's successors and assigns." Scher Dec., Ex. I. The Mortgage specifically states: "FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD." Scher Dec., Ex. I. The Miller Mortgage specifically includes plaintiff's transfer of his property right "to Lender" and his pledge to "mortgage, grant and convey the [Miller] Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest . . . ." *Id.* The Mortgage allows defendant MERS "solely as nominee for Lender" or its successors in interest to foreclose. *Id.*

Miller was subsequently notified that servicing of the mortgage was being transferred to Wells Fargo Home Mortgage. Complaint, ¶63. On December 12, 2008, MERS, as nominee for REMN, assigned the Miller Mortgage to "HSBC Bank USA, National Association, as Trustee for WFLAT 2007-PA02" (the "Miller Assignment"). Scher Dec., Ex. J. The Miller Assignment was recorded in the Sullivan County Clerk's office on December 26, 2008. Complaint, ¶76.

Miller received a letter from Steven J. Baum, P.C., on behalf of Wells Fargo Home Mortgage, Inc., advising Miller that he was in arrears on the Miller Mortgage. Complaint, ¶66; Scher Dec., Ex. K.   On December 15, 2008, Steven J. Baum, P.C., as attorneys for HSBC Bank

6

USA, National Association, as Trustee for WFLAT [Wells Fargo Alternative Loan Trust] 2007-PA02, commenced a foreclosure complaint against Miller (the "Miller Foreclosure Action"). Scher Dec., Ex. L. Never once disputing that he owed the debt or had failed to pay his mortgage, Miller moved to dismiss the Miller Foreclosure using a novel argument utilized recently by other homeowners facing foreclosure – that the foreclosure could not proceed because HSBC only had proof that the Miller Mortgage had been assigned to it (but not the original note signed by Miller at the time he borrowed the money). As such, Miller argued that HSBC lacked standing to proceed with the Miller Foreclosure.

By order dated May 6, 2009, acting Sullivan County Supreme Court Justice Mark M. Meddaugh accepted Miller's argument (the HSBC needed proof of assignment of both the note and the mortgage) and dismissed the Miller Foreclosure Action, "without prejudice to renew upon proof of a valid assignment of the note." Scher Dec., Ex. M. Rather than engage in a protracted appellate process, the Miller Foreclosure Action will simply be recommenced.

## THE ALLEGATIONS IN THIS ACTION

This action was filed nearly three years after a Satisfaction of Mortgage and Discontinuance Order were filed in the Campbell Foreclosure Action and over a year after the order dismissing the Miller Foreclosure Action was entered. Among the several defendants named in this lawsuit are the law firm Steven J. Baum, P.C., Steven J. Baum, Esq., Dawn Hanzlik-Hexemer, and Stephanie M. Vampotic.[4]   Neither plaintiff disputes the fact that the

---

[4]    Because the complaint contains no allegations as to Mr. Baum or Ms. Vampotic individually, it should be dismissed as to them.

foreclosure proceedings against them were warranted -- they both borrowed money and failed to pay it back.  In the case of Miller, he actually has delayed the foreclosure on his home and lived for free for almost two years.  Yet, both plaintiffs brazenly contend that all of the defendants are engaged in a "conspiracy" to "unlawfully extract money and property from desperate homeowners throughout the State of New York. . . ."  Complaint, ¶97.  Plaintiffs then make the conclusory and fanciful allegation that the banks, MERS and the Baum Defendants conspired to make millions of dollars in loans to homeowners, hoping that they would subsequently default on those loans, eventually allowing the defendants to somehow make money by foreclosing on the properties years later.  Complaint, ¶¶98-112.

Plaintiffs' complaint asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), wire fraud (18 U.S.C.§1343), fraud and deceit, false oaths (18 U.S.C.§1623(a)); unjust enrichment/constructive trust, RESPA, FDCPA, and for punitive damages.

### A.    *Allegations Specific to Campbell*

With respect to Campbell, it is undisputed that she: (a) borrowed money from HSBC secured by a mortgage, (b) failed to pay HSBC; (c) appeared by counsel in the Campbell Foreclosure Action; (d) satisfied the HSBC mortgage; and (e) was a party to the Campbell Foreclosure Action when an order was entered by the court discontinuing that action.  It is further undisputed that no lender, other than HSBC, attempted to foreclose on the Campbell Mortgage.

Nonetheless, in this action, Campbell alleges that the "[d]efendants participated in a scheme to file fraudulent foreclosure documents against Plaintiff to extract money and her

8

property from her knowing the Mortgage was never assigned and that [] HSBC had no standing to file a foreclosure." Complaint, ¶38.  She asserts that in her case, HSBC lacked standing to commence the Campbell Foreclosure Action "because no assignment existed from Defendant MERS to HSBC." Complaint, ¶34.[5]  She further contends that Campbell Foreclosure Complaint "conceal[ed] facts and [was] deliberately disorientated to sow confusion" because the Campbell Mortgage "was [given] to Defendant MERS "as nominee for HSBC", but provides no proof of an assignment to HSBC." Complaint, ¶35.  The complaint makes other bold unsubstantiated assertions like:

> "The Notice of Pendency and [Campbell] Foreclosure Complaint were fictitious, false and fraudulent legal documents filed in the Court and County Clerk's office under penalty of perjury."

> "The Satisfaction of Mortgage along with the affidavits attached thereto were fictitious, false and fraudulent . . ."

Complaint, ¶¶45-46.  Campbell further contends that "HSBC was not the actual Note holder when the foreclosure was filed." Complaint, ¶51.  Campbell also asserts that the amount listed as the estimate of legal fees that would be due if the loan were reinstated (in a reinstatement estimate letter sent to Campbell on July 31, 2007) (Scher. Dec., Ex. E) were "inflated and false." Complaint, ¶56.  She claims, without any substantiation, that the Baum Defendants' attorney's fees for proceeding with the foreclosure could have only been "about $400" not $1,620 as listed. *Id.*

---

[5]     As discussed below, this lynchpin allegation of the plaintiffs' complaint is directly disproved by public records.

### B.    Allegations Specific to Miller

Miller premises his fraud and conspiracy claims on the allegation that he did "not have a loan with any of the entities Defendant Baum, represented, including Wells Fargo, HSBC, nor WFALT." Complaint, ¶86.   He claims that the Miller Assignment (from MERS to HSBC as trustee for WFALT) was invalid because the signatory on behalf of MERS "did not have information to verify the Assignment . . ." Complaint, ¶82. Miller also claims that in the Miller Foreclosure Action, "Baum and MERS and HSBC never produced proper documentation that an assignment was made for [] MERS to HSBC," and that "MERS never had authority to assign the [Miller] Mortgage or the Note to HSBC." Complaint, ¶¶83, 84. Accordingly, Miller concludes that "Baum's filings in the Sullivan County Court and clerk's office against Plaintiff Miller [in the Miller Foreclosure Action] were fraudulent." Complaint, ¶94.

10

# ARGUMENT

## I.   PLAINTIFFS' CLAIMS MUST BE DISMISSED PURSUANT TO RULE 12(b)(6)

### A.   Plaintiff's Case Muse Be Dismissed Because Plaintiff Has Failed To State a Claim That Is Plausible On Its Face.

To avoid dismissal under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007).   While it is true that a court must accept as true all allegations in a plaintiff's complaint in adjudicating a motion to dismiss, that tenet is inapplicable to legal conclusions and threadbare recitals of the elements of a cause of action that are supported by no more than mere conclusory statements. *See Ashcroft v. Iqbal*, 550 U.S.555, 129 S.Ct. 1937, 1949 (2009); *Metlife Investors USA Insurance Company v. Zeidman*, 2010 WL 3418251 (E.D.N.Y. 2010).

Although plaintiffs' complaint is quite lengthy, all of the alleged causes of action are plead in threadbare, perfunctory and conclusory terms, and are insufficient to support any cause of action.  Plaintiffs' theory that the Baum Defendants conspired with banks and MERS to write "bad paper" loans, securitize them, sell them in the hopes that borrowers would subsequently default, and then commence "profitable" foreclosure actions years later is simply nonsensical.

As the role of MERS in the plaintiffs' loans is raised repeatedly in the plaintiffs' complaint, the Baum Defendants[6] offer one court's summary description of MERS as:

---

[6]      As MERS is named as a party, we anticipate that MERS will provide a more detailed explanation of its operation. As MERS does not appear to have been served in this matter to date, we provide a cursory overview.

11

> "a private corporation that administers the MERS System, a
> national electronic registry that tracks the transfer of ownership
> interests and servicing rights in mortgage loans. Through the MERS
> System, MERS becomes the mortgagee of record for participating
> members through assignment of the members' interests to MERS.
> MERS is listed as the grantee in the official records maintained at
> county register of deeds offices. The lenders retain the promissory
> notes, as well as the servicing rights to the mortgages. The lenders
> can then sell these interests to investors without having to record the
> transaction in the public record. MERS is compensated for its
> services through fees charged to participating MERS members."

*Mortgage Elec. Reg. Sys., Inc. v. Nebraska Depart. of Banking*, 270 Neb. 529, 704 N.W.2d 784,

785 (Neb. 2005). MERS is often listed on mortgages as the "nominee" for the lender and its

successors. As detailed in the Factual Summary above, MERS was designated as the "nominee"

for the lender on both plaintiffs' loans. In the case at bar, plaintiffs' complaint attempts to

exploit the role of MERS as a "nominee" for the lender as part of an argument that the Baum

Defendants conspired with the other defendants to file unlawful foreclosure actions.

Despite making wild accusations concerning the defendants' handling of plaintiffs' loans

and subsequent foreclosures, plaintiffs offer nothing to dispute very simple facts which render

their claims of fraud and conspiracy to be without merit. With respect to each plaintiff, the

following facts are not in dispute:

- They borrowed money from a lender;
- They executed a mortgage and note memorializing their loans.
- They ceased making payments on their loans and, thus, breached the terms of the loans;
- With respect to each plaintiff, only one lender has sought to foreclose on the loans at issue (i.e., there were never two lenders demanding payment on the same loan);
- With respect to Campbell, she appeared in the foreclosure action with counsel but elected to subsequently pay-off the mortgage, resolving her default;

- With respect to Miller, he successfully convinced a Sullivan County judge to accept a novel defense in his foreclosure action, that the note memorializing his debt was separate from the mortgage and while the bank had an assignment of the mortgage, it did not have an assignment for the note – thus, it lacked standing to sue him.

What is missing from these facts is any semblance of a viable claim under RICO, fraud, RESPA, FDCPA, or any other cognizable theory of liability. The allegations in the case at bar are very similar to claims that were dismissed in the recent case of *Blau v. America's Servicing Co.*, 2009 U.S. Dist. LEXIS 90632, \*16-17 (D. Ariz. Sept. 28, 2009) where the plaintiff asserted, *inter alia,* RICO, conspiracy and unjust enrichment claims against various defendants arising from their role in a foreclosure proceeding against him. The plaintiff in *Blau* argued that his claims arose from the defendants' inability to produce the original promissory note and his contention that the defendants lacked standing to proceed with the foreclosure against him because MERS lacked a "legally cognizable interest in the Deed of Trust." *Id.* at 17. In *Blau*, the District Court expressly held that "[p]laintiff's claims that the foreclosure proceedings were illegitimate because US Bank [the assignee of MERS] possessed no interest in the property or that the UCC require[d] the presentation of the original Promissory Note lack[ed] merit . . . ." *Id.* at 24-25. It also rejected claims of unjust enrichment and conspiracy similar to the claims raised by the plaintiffs herein, as being not plausible. *Id.* (citing *Iqbal*, 129 S.Ct. at 1949).

In the case at bar, just like in the *Blau* case, plaintiffs' claims, based upon on a purported failure to produce a written assignment of the note during the Miller Foreclosure Action and challenges to MERS' capacity to assign the mortgages and notes, as well as a conspiracy amongst the defendants involving the purported issuance of loans in the hopes that the borrowers

would default later and eventually lead to a "profitable" foreclosure on their properties, should be dismissed as not plausible.

### B.    Additional Grounds for Dismissal of Campbell's Claims

Moving beyond the general implausibility of the claims in the complaint, Campbell's claim is subject to dismissal on several additional grounds. Campbell's allegations focus on whether HSBC could prove that it was the assignee of the Campbell Mortgage at the time of the commencement of the Campbell Foreclosure Action (i.e., did HSBC have standing to commence the Campbell Foreclosure Action). Above and beyond the simple fact that New York law does not require the submission of evidentiary proof at the commencement of litigation, the simple answer is yes, HBSC did have standing, and, as a result, Campbell's claims are entirely without merit.[7]

Campbell executed a mortgage in favor of HSBC Mortgage Corporation ("HSBC") in 2005. Complaint, Ex. A. The Campbell Mortgage specifically states: "FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD." Complaint, Ex. A. The Campbell Mortgage specifically includes plaintiff's transfer of her property right "to Lender" and her pledge to "mortgage, grant and convey" the Campbell Property "to MERS solely as nominee for Lender[HSBC] and Lender's successors in interest) and its successors in interest . . . ." Id. The Mortgage also allows defendant MERS "solely as nominee for Lender" or its successors in interest to foreclose. Id.

---

[7]     Moreover, as discussed below in the analysis of the Rooker-Feldman doctrine, this argument is nothing more than an attempt to relitigate an issue that Campbell failed to raise in the defense of Campbell Foreclosure Action.

In direct contradiction to the allegations in the complaint (that HSBC lacked standing), public records confirm that on June 7, 2007, MERS, as nominee for HSBC, assigned the Campbell Mortgage to HSBC ("the Campbell Assignment"). Scher Dec., Ex. D.  On June 7, 2007, defendant Steven J. Baum, P.C. also commenced the Campbell Foreclosure Action on behalf of HSBC. Complaint ¶26, Ex. B.[8]  The Campbell Assignment was, in fact, recorded with Kings County Clerk's office on June 25, 2007.  Scher Dec., Ex. D.  Thus, the Campbell Foreclosure Complaint put Campbell on notice that an assignment would be recorded and it was – a fact plaintiff acknowledges by quoting that language in the complaint filed with this Court. Complaint, ¶27 ("Both the Notice of Pendency and the Foreclosure Complaint ¶3 state 'Said Mortgage to be assigned by an Assignment to be recorded in the Office of the Clerk of King's County.'").  Thus, there was no fraud or misrepresentation during the course of the Campbell Foreclosure Action.

Second, even if the Campbell Foreclosure Action was commenced before the written assignment of the mortgage to HSBC, there was nothing unlawful, fraudulent, or improper about

---

[8]      Campbell also takes issue with the fact that defendant Dawn Hanzlik-Hexemer, Esq., signed a verification in the Campbell Foreclosure Complaint, as an employee of defendant Steven J. Baum, P.C., without having the "original Note" in her possession. Ms.Hanzlik-Hexemer's verification states simply that the "grounds of her belief as to all matters not stated to be upon her knowledge are based upon the original note, mortgage and/or financial statements, together with correspondence." Complaint, Ex. A. In no way, did Ms. Hanzlik-Hexemer allege in the verification that she was in possession of the original note. Indeed, the verification says nothing about the location of the note, but the verification indicated that the note supported "belief" in the matters stated in the complaint.  Moreover, plaintiffs' allegations regarding "possession" or its "original Note" are a red herring.  In the first instance, New York law does not require a party or its attorney to possess the original note to commence a foreclosure action. *See, e.g., Fargo Bank N.A. v. Marchiove,* 69 A.D.3d 204, 887 N.Y.S.2d 615 (2d Dep't 2009); *Federal Natl. Mrg. Ass'n., v. Youkelson,* 303 A.D.2d 546, 755 N.Y.S.2d 730 (2d Dep't 2003). Second, plaintiffs fail to allege how plaintiff reasonably relied on such a representation, a necessary element in order to prove that a document is fraudulent pursuant to New York law. *See, e.g., Crigger v. Fahnestock and Co., Inc.,* 443 F.3d 230, 234 (2nd Cir. 2006).

that. In New York State, it is well established that a note and mortgage can be transferred by delivery alone, and that that transfer alone gives standing to commence a foreclosure action even in the absence of an assignment. *See Flyer v. Sullivan*, 284 A.D.697, 134 N.Y.S.384 (2d Dep't 1954) ("our courts have <u>repeatedly</u> held that a note and mortgage may be transferred by delivery <u>without</u> a written instrument of assignment."); *see also Lasalle Bank Nat. Ass'n v. Ahearn,* 59 A.D.3d 911, 875 N.Y.S.2d 595 (3d Dep't 2009)(emphasis added). Indeed, where it has been claimed that plaintiff in a mortgage foreclosure action was not the valid assignee of the note and mortgage in default, it has been held that mere delivery of the mortgage and note vested title without need for a written assignment. *Id* at 912; *National Mortgage Consultants v. Elizaitis*, 3 Misc.3d 1109A, 787 N.Y.S.2d 679 (N.Y.Sup. 2004); *In re Conde-Dedonato*, 391 B.R. 247, 252 (Bankr. E.D.N.Y. 2008). "There is no need for a written assignment from the owner of the note and mortgage when it transfers its interests by delivering the actual note and mortgage to the assignee." *Id.*; *see also* N.Y. Real Property Law § 244 ("A grant takes effect, so as to vest the estate or interest intended to be conveyed, only from its delivery; and all the rules of law, now in force, in respect to the delivery of deeds, apply to grants hereafter executed."); *see also Deutsche Bank Nat'l Trust Co. v. McRae*, 2010 WL 309015 at *2 (N.Y. Sup. Ct. Allegany Cnty Jan. 25, 2010) (citing *Fryer v. Rockefeller*, 63 N.Y. 268 (1875)); *Curtis v. Moore*, 152 N.Y. 159 (1897); N.Y. Jur.2d Mortgages and Deeds of Trust § 272 (2009) ("A mortgage can be assigned in two ways-by delivery of the bond and mortgage by the assignor to the assignee with the intention that all ownership interests thereby transferred, or by a written instrument of assignment.").

Here, Campbell was well aware that HSBC was the lender, and the Mortgage gave Campbell notice that MERS was the nominee for HSBC. Complaint, Ex. A. The Foreclosure

16

Complaint indicated that HSBC was the "holder of the Mortgage, and that an assignment would be recorded. Complaint, Ex. B. The assignment was recorded. The papers possessed by Campbell and in the public record establish that HSBC did have standing to commence the Campbell Foreclosure Action, and belie any attempt by her in this action to establish that a fraud was committed upon her in the Campbell Foreclosure Action. Campbell's claims in this action, premised on the assertion that the defendants engaged in wrongdoing because "[t]he [Campbell] Mortgage was never assigned when the foreclosure complaint was filed," (Complaint, ¶28), is not only disproved by the evidence but not even supported by New York law concerning the assignment of mortgages. *See Elizaitis, In re Conde-Dedonato, supra.* As a result, plaintiffs' complaint, as it concerns Campbell, is not plausible and should be dismissed.[9]

### *C. Additional Grounds for Dismissal of Miller's Claims*

Miller's claim focuses more on the legal status and role of MERS in the mortgage transactions at issue in his foreclosure action – more specifically, how assignments of mortgages and notes are handled during the foreclosure process. As noted above, Miller was able to convince a judge to temporarily block the foreclosure on his home on technical grounds (he never disputed that he borrowed money and failed to repay it) based upon the fact that HSBC was unable to produce the actual document memorializing the assignment of the Miller Note (as opposed to the assignment of Miller Mortgage, which was produced). While there is law that

---

[9]     Likewise, plaintiffs' conclusory statements that the defendants committed a fraud upon them because the amount of expected legal fees set forth by Steven J. Baum, P.C. in the letter providing the terms of for reinstating Campbell's mortgage were too high *(see* Complaint, ¶¶55-56; *see also* Scher Dec., Ex. E) are insufficient to sustain any of plaintiffs' claims.

supports the position contrary to that taken by the court in the Miller Foreclosure Action, a recommencement of the action is taking place rather than a lengthy appeal.

Miller now attempts to turn his "lack of standing" affirmative defense into an affirmative claim of RICO violations, fraud, and conspiracy. Miller has attempted to exploit something that, at best, could be deemed a split in the New York courts regarding whether physical proof of the assignment of a note (above and beyond assignment of a mortgage) is required before attempting to foreclosure on the mortgage. The Baum Defendants do not dispute the fact that Miller was successfully able to get the foreclosure action against him dismissed (without prejudice) due to HSBC's purported lack of standing. That being said, the ruling dismissing the Miller Foreclosure Action is contrary to a holding from the Appellate Division, Second Department, in *Campaign v Barba*, 23 A.D.3d 327 (2d Dep't 2005) that "[t]o establish a prima facie case in an action to foreclose a mortgage, the plaintiff must establish the existence of the mortgage and mortgage note, <u>ownership of the mortgage,</u> and the defendant's default in payment." (citations omitted) (emphasis added). As discussed above, written assignment of the note is not a prerequisite to establishing the ability to foreclose. *See U.S. Bank, N.A. v Collymore*, 68 A.D.3d 752, 890 N.Y.S.2d 578 (2d Dept 2009); *Lasalle Bank Nat. Ass'n v. Ahearn*, 59 A.D.3d 911, 875 N.Y.S.2d 595 (3d Dep't 2009); National Mortgage Consultants v. Elizaitis, 3 Misc.3d 1109A, 787 N.Y.S.2d 679 (N.Y.Sup. 2004); *In re Conde-Dedonato*, 391 B.R. 247, 252 (Bankr. E.D.N.Y. 2008); N.Y. Real Property Law § 244; N.Y. Jur.2d Mortgages and Deeds of Trust § 272 (2009).

In fact, courts throughout the country have rejected the defenses raised by Miller in the Miller Foreclosure Action. For example, in *Maxa v. Countrywide Loans, Inc.*, 2010 U.S. Dist. LEXIS 72521, *10-12 (D. Ariz. July 16, 2010), the court expressly rejected the plaintiff's

18

arguments that: (a) the defendants needed to demonstrate they were the holder and owner of both the Note and Deed of Trust to have standing to foreclose on a property; as well as (b) MERS could not assign any interests in the note. In *McGinnis v. GMAC Mortg. Corp.*, 2010 U.S. Dist. LEXIS 90286, *3 (D. Utah Aug. 27, 2010), the District Court also rejected a claim where (similar to the case at bar) the plaintiff did not challenge his non-payment and default on the mortgage, but instead raised a technical challenge that "MERS did not have authority to appoint a trustee [to foreclose] because MERS was not the beneficiary to the Deed of Trust.".

Several courts have recently reaffirmed the fact that the language in the Miller Mortgage that appeared in similar loan documents providing that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument" gives MERS the authority to foreclose on behalf of the lender and that MERS need not possess the note in order to appoint a trustee to foreclose on behalf of a lender who does hold the note. *See Rodeback v. Utah Fin.*, 2010 U.S. Dist. LEXIS 69821, * 9-10 (D. Utah July 13, 2010); *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 2009 U.S. Dist. LEXIS 100409, *10-11 (D. Utah October 27, 2009); *Mortgage Elec. Registration Sys., Inc. v. Azize*, 965 So. 2d 151, 153-54 (Fl. Dist. 2d Ct. App. 2007); *Mortgage Elec. Reg. Sys., Inc. v. Ventura*, 2006 Conn. Super. LEXIS 1154, *3-4 (Conn. Super. Ct. April 20, 2006).

It is clear that Miller is attempting to exploit his tentative victory. While the Baum Defendants believe that the court's decision in the Miller Foreclosure Action was incorrect, that issue is not debated in this forum. Instead, the Baum Defendants focus on the fact that prevailing before one judge on an issue that is, at best is subject to differing opinions, cannot be the factual predicate for claims of fraud and deceit that plaintiffs have based their claim against the Baum

19

Defendants upon.  There are a multitude of cases in New York and throughout the country discussing and analyzing MERS' ability to assign interests in mortgages and notes in just the past year, as well as the ability of lender to foreclose a mortgage with and without simultaneous possession of both the note and mortgage.  The existence of these cases demonstrates that there can be no fraud or conspiracy on the part of the Baum Defendants by merely commencing foreclosure actions on behalf of its clients attempting to enforce their rights in accordance with existing law.  *See e.g. LaSalle Bank Natl. Assn. v Ahearn,* 59 A.D.3d 911 (3rd Dep't 2009); *Wells Fargo Bank, N.A. v Marchion,* 69 A.D.3d 204 (2d Dep't 2009); *Countrywide Home Loans, Inc. v Gress,* 68 A.D.3d 709 (2d Dep't 2009); *U.S. Bank, N.A. v Collymore*, 68 A.D.3d 752 (2d Dep't 2009).

## II.   Plaintiffs Have Failed to Plead Viable RICO Causes of Action

Plaintiffs' first, second and third causes of action allege violations of Racketeer Influenced and Corrupt Organizations Act ("RICO").  In order to establish a substantive civil RICO cause of action, a plaintiff must demonstrate that the defendant participated in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Smartix Int'l Corp. v. Mastercard Int'l, LLC, et al.,* 2009 U.S.App. LEXIS 23810 *3 (2d Cir. 2009).  "The RICO statute defines an 'enterprise' as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Smartix Int'l Corp.,* 2009 U.S.App. LEXIS 23810, *4 (citing 18 U.S.C. § 1961(4)); *First Nationwide Bank v. Gelt Funding, Corp.,* 820 F.Supp. 89, 98 (2d 1993) ("The Supreme Court has held that a RICO 'enterprise' is a 'group of persons associated together for a common

20

purpose of engaging in a course of conduct . . . . [It is] proved by evidence of an ongoing organization, formal or informal, and by any evidence that the various associates function as a continuing unit.'" (quotations omitted)). Finally, there must also be a 'nexus . . . between the enterprise and the racketeering activity that is being conducted.' *Smartix Int'l Corp.,* 2009 U.S.App. LEXIS 23810 *4 (quoting *First Capital,* 385 F.3d at 174).

Plaintiffs' RICO claims are similar to those raised and rejected in other lawsuits – that lenders and other conspired to hand out loans to borrowers with the hope that they would default, leading to profitable foreclosures on the properties years later (although none of these other lawsuits have gone as far as plaintiffs in this case and clamed that the attorneys handling the foreclosures also participated in the conspiracy). *See e.g. Blau v. America's Servicing Co.,* 2009 U.S. Dist. LEXIS 90632, *27-28 (D. Ariz. Sept. 28, 2009) (Dismissing RICO claim where "[a]side from the conclusory allegations that Defendants placed people in loans for which they were not qualified, falsely inflated the asset through puffed appraisals, and failed to inform the borrower of the assignments, Plaintiff has failed to point to any specific allegations concerning her case or these specific Defendants."); s*ee also Rhoads v. Wash. Mut. Bank, F.A.,* 2010 U.S. Dist. LEXIS 44389, *26 (D. Ariz. Apr. 6, 2010) (When defendant did not participate in the original loan transaction and was neither the agent nor principal for any of those participating in the loan transaction, it cannot later be held to have conspired with others to offer loan to plaintiff with the intention that plaintiff would someday default on the loan).

To establish "association in fact" among enterprise members, the plaintiff must plead specific allegations of the enterprise's continuity of structure. *See*; *First Nationwide Bank v. Gelt Funding, Corp.,e t al.,* 820 F.Supp. 89, 98 (2d Cir. 1993) (dismissing the RICO claim because

"[p]laintiff has not specified how all defendants . . . joined together a group to perpetuate the frauds). Further, a plaintiff must plead facts in support of the enterprise's "hierarchy, organization, and activities" to determine whether "its members functioned as a unit." *United States* v. *Coonan,* 938 F.2d 1553, 1560-61 (2d Cir. 1991); *see also, Moll* v. *U.S. Life Title Ins. Co.,* 654 F. Supp. 1012, 1032 (S.D.N.Y. 1987) (dismissing the complaint for failure to specify how the alleged enterprise members joined together to achieve real estate kickbacks, and for failure to plead factual allegations in support of the continuity of structure or personnel in the purported enterprise). To satisfy the defendant's role in the "conduct of the enterprise," the plaintiffs must demonstrate, *inter alia*, that the defendant participated in the "operation and management" of the enterprise by taking "some part in directing the enterprise's affairs." *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F. 3d 159, 176 (2d Cir. 2004) (citations omitted); *Reeves, et al. v. Ernst & Young,* 507 U.S. 170, 183 (1993) (recognizing that the legislative intent behind the RICO statute confirms that one is not liable under RICO absent participation in the operation and management of the enterprise itself).

The complaint in this action fails to plead the requisite "association in fact." Plaintiffs have failed to plead any semblance of an "association" in the purported RICO enterprise as well as the organizational structure. Campbell's mortgage loan was made by HSBC in 2005 and she made payments until 2007. Complaint, ¶14. Miller's mortgage loan was made by Real Estate Mortgage Network of New Jersey in March 2007 and Miller apparently made payments on his mortgage into 2008. Complaint, ¶¶62, 66. Thus, the initial lenders on the two loans were entirely different. Likewise, in the Campbell Foreclosure Action, the foreclosing entity was HSBC Mortgage Corporation but in the Miller Foreclosure Action it was HSBC Bank USA,

22

National Association, as trustee, for WFALT 2007-PA02. *Compare* Complaint, Ex. A *with*

Scher Dec., Ex. L. Thus, with different lenders, different foreclosing parties, and loans

foreclosed under dissimilar circumstances, the plaintiffs have failed to plead an "association in

fact."

Moreover, the complaint fails to articulate how the Baum Defendants were, in any way,

involved in any part of the purported enterprise or, more importantly, that they played any role in

the operation or management of the enterprise.  Accordingly, the RICO claim must fail on this

basis alone.

Second, when a RICO claim arises from the predicate acts of mail fraud (as alleged in

this case), it must be plead with the particularity required under Fed. R. Civ. P. 9(b). *Levoy, v.*

*Gatullo-Wilson*, 170 Fed. Appx. 721, 723 (2d Cir. 2006) (citations omitted). Rule 9(b) provides

that "a party must state with particularity the circumstances constituting fraud or mistake." Fed.

R. Civ. P. 9(b).  To plead mail fraud under RICO, the plaintiff must show: (1) the existence of a

scheme to defraud; (2) the defendant's knowing or intentional participation in the scheme; and

(3) the use of interstate mails or transmission facilities in furtherance of the scheme. *S.Q.K.F.C.*

*v. Bell Atlantic Tricon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996) (citations omitted). An

allegation of mail or wire fraud must include facts that give rise to a *strong inference of*

*fraudulent intent* by (1) alleging facts to show that defendants had both motive and opportunity

to commit fraud; or (2) alleging facts that constitute *strong circumstantial evidence* of conscious

misbehavior or recklessness. *Id.* (emphasis added). The Second Circuit has determined that

*strong circumstantial evidence* is only established through factual allegations of the defendant's

"deliberate illegal behavior" or "conduct which is highly unreasonable and which represents an

23

extreme departure from the standards of ordinary care." *Bay Harbour Management, LLC v. Carothers, et al.* 282 Fed. Appx. 71, 77 (2d Cir. 2008) (quoting *Novak v. Kasaks,* 216 F.3d 300, 309 (2d Cir. 2000)). Further, "[w]here motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).

The Baum Defendants' role was limited to acting as counsel for the holder of the mortgages at issue <u>after</u> both plaintiffs defaulted on their loans. As discussed in Point I, *supra* the Baum Defendants, <u>at worst,</u> commenced a foreclosure action on behalf of their client, where one plaintiff (Miller) was successful in convincing a judge that Miller had a technical defense to his foreclosure action – that is all. The complaint is devoid of any deliberate illegal behavior or unreasonable conduct by the Baum Defendants during the foreclosure actions. Along these same lines, it has long been the law that acts of attorneys on behalf of their clients in advancing litigation cannot form the basis of a RICO claim. *See Morin v. Trupin* 711 F. Supp. 97, 105 (S.D.N.Y. 1989); *accord, Daddona v. Gaudio*, 156 F. F.Supp.2d 153, 161 (D.Conn. 2002). This is due to the fact that RICO claims against attorneys acting as attorneys are little more than rephrased complaints of malicious prosecution or abuse of process which cannot, on their own, suffice as predicate acts of a RICO violation. *See, e.g., von Bulow v. von Bulow*, 657 F. Supp. 1134, 1145 (S.D.N.Y. 1987) ("a complaint based on nothing more than a party's filing of unjustified suits cannot fulfill the requirement that a RICO plaintiff plead a predicate act."); *United States v. Pendergraft,* 297 F.3d 1198 (11th Cir. 2002)*; Auburn Medical Center v. Andrus,* 9 F.Supp.2d 1291, 1299 (M.D. Ala. 1998); *Nakahara v. Bal, No.,* 1998 U.S. Dist. LEXIS 825,

24

1998 WL 35123, at *8 (S.D.N.Y. Jan. 30, 1998); *Warnock v. State Farm Mut. Auto. Ins. Co.*, 2008 U.S. Dist. LEXIS 81507, *21-22 (S.D. Miss. Oct. 14, 2008).

As the plaintiffs are unable to plead any of the elements of a RICO claim, the three RICO causes of action must be dismissed as a matter of law.

## III.   PLAINTIFFS HAVE FAILED TO PLEAD A CAUSE OF ACTION FOR FRAUD

The plaintiff's first, second, third, fourth, fifth and sixth causes of action are based on allegations of fraud. According to Rule 9(b) of the Federal Rules of Civil Procedure, allegations of fraud, and causes of action that contain fraud as part of the offense, must be plead with particularity. *See, e.g., Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2nd Cir. 1993). While the requirement is applied to all allegations sounding in fraud in federal court, federal courts have noted the urgency of that requirement in RICO actions, as merely initiating a RICO action can "unfairly stigmatize [defendant] as a 'racketeer.'" *Plout v. American Home Assurance Co.*, 668 F.supp. 204, 205 (S.D.N.Y. 1987). Plaintiffs' fraud claim in the case at bar is similar to the one rejected in *Rhoads v. Wash. Mut. Bank, F.A.*, 2010 U.S. Dist. LEXIS 44389 (D. Ariz. Apr. 6, 2010), wherein the plaintiff asserted that the lender and trustee defendants,

> "conspired to deprive [Plaintiff] of his property 'through fraud and misrepresentation which would result in Plaintiff entering a loan for which Plaintiff was not qualified' . . . intend[ing] that the loan would be packaged and sold, resulting in a substantial profit to Defendants . . . [that] Defendants' legal objective of assigning and selling the loan was accomplished by illegal means in procuring the loan because of Defendants' violation of [TILA, RESPA, and HOEPA]" and that "[u]pon information and belief, as an alternative to packaging and selling Plaintiffs [sic] loan, Defendants knew that the loan would be subject to foreclosure as a result of Plaintiff's inability to make payments on the Note . . . [and that] Defendant intended that Plaintiff would default on the loan and Defendants would be in the position of seizing the

25

> Residence in a foreclosure action, depriving Plaintiff of his residence."

*Id.* at *26-27.

In the context of fraud claims, the Second Circuit requires that the pleader allege: (1) the time, place, and contents of the false representations or omissions, *with an explanation of how they were fraudulent; (2) the identity of the person* making the misrepresentations; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2nd Cir. 2006). Moreover, in order to prove fraud, plaintiff must plead that: (1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance. *See Wall v. CSX Transport, Inc.*, 471 F.3d 410, 415-416 (2nd Cir. 2006); *Cohen v. Sudler & Hennessey, LLC*, 2010 WL 3431534 (S.D.N.Y. 2010) at *2.

Here plaintiffs have failed to meet their burden of pleading a viable cause of action for fraud. As discussed above, the limited facts plaintiffs have strung together as a series of allegations are disproved by the documents referenced in the complaint and under existing case law. Plaintiffs are unable to identify any communications from the defendants that were false. Plaintiffs' "support" for a claim of fraud is, at best, their argument that the Baum Defendants made false representations to the court because they filed foreclosure actions on behalf of their clients based upon what they perceived to be sufficient evidence to do so under existing law. This is hardly a basis for supporting a claim of fraud against an attorney.

26

Likewise, plaintiffs have failed to establish that they have suffered any damages as a result of any purported misrepresentation by the Baum Defendants. Neither plaintiff disputes that that they defaulted on their mortgage and, thus, clearly were properly the subject of a foreclosure proceeding. It is incomprehensible how plaintiffs can assert that they were damaged by being a defendant in a foreclosure action with respect to a loan that they failed to repay.

Thus, for the above specified reasons (as well as the reasons set forth in Point I, *supra*), plaintiffs' fraud based claims should be dismissed as a matter of law.

## IV. PLAINTIFFS' CLAIM FOR VIOLATION OF 18 U.S.C. § 1623(A) MUST BE DISMISSED

Plaintiff's sixth cause of action for "False Oaths" is based on a federal criminal statute that does not provide a private right of action. 18 U.S.C. §1623. Moreover, it is well-established that there can only be an implied private right of action for violation of a federal statute where the underlying statute can be interpreted to have the intent to create one. *Stoneridge Inv. Partners, LLC v. Scientific Atlanta*, 552 U.S. 148, 128 S.Ct. 761 (2008). In the underlying statute, the statutory language focuses solely on the actor and his filings before the court, with absolutely no language or implication of an intent to create a private right of action. Thus, the plaintiff's sixth cause of action should be dismissed.

Moreover, as discussed in Points I and II, *supra*, there is no factual support to this claim, further warranting dismissal.

27

**V.   PLAINTIFFS' CLAIMS ARE BARRED BY THE *ROOKER-FELDMAN* DOCTRINE AS WELL AS COLLATERAL ESTOPPEL**

It is a well-established tenet of federal jurisprudence that federal district courts lack jurisdiction over suits that are, in substance, appeals from state court judgments. *See* Hoblock v. Albany County Bd. Of Elections, 422 F.3d 77, 84 (2nd Cir. 2005). This rule, which is referred to as the Rooker-Feldman doctrine, "maintains that a federal district court should not entertain a case brought by a litigant who lost in state court and seeks, in effect, appellate review of that decision by a lower federal court." *U.S. v. Muhammad*, 595 F.3d 426, 430 (2nd Cir. 2010) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S.413, (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, (1983)); *see also Exxon Mobil Corp., v. Saudi Basic Indus. Corp.*, 544 U.S.280, 284 (2005) (the doctrine is aimed at cases brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.")  In the Second Circuit, the doctrine is applied to bar claims by unsuccessful state court litigants who complain of injuries caused by the state-court action, and invite district court review and rejection of that prior action. *See Schuh v. Druckman & Sinel, L.L.P., et al*, 602 F.Supp.2d 454, 460 (S.D.N.Y. 2009); *Swiatkowski v. New York, et al*, 160 Fed. Appx. 30, 2005 WL 34066678 (2nd Cir. 2005); *Grumbkow v. Greenpoint Bank*, 132 Fed. Appx. 913, 2005 WL 1327602 (2nd Cir. 2005); *Lawrence v. Household International, Inc.*, 123 Fed. Appx. 414, 2005 WL 78779 (2nd Cir. 2005); *Stringer v. Liinve*, 92 Fed. Appx. 818, 2004 WL 393160 (2nd Cir. 2004); *Murphy v. GE Capital Asset Corp.*, 38 Fed. Appx. 86, 2002 WL 1270890 (2nd Cir. 2002).

28

According to well-established federal doctrine, a federal court must give a final judgment rendered in a state court the same preclusive effect that would be given to the judgment under the law of the state in which it was rendered. *See Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892 (1984); *Allen v. McCurry*, 449 U.S.90, 96, 101 S.Ct. 411 (1980).   Collateral estoppel bars re-litigation of any issue which is identical to one necessarily decided in a prior action and in which the parties were afforded a full and fair opportunity to litigate. *See Polur v. Raffe*, 912 F.2d 52, 55 (2nd Cir. 1990). In addition, New York law precludes re-litigation of claims that arise from the same factual groupings describing the wrong upon which the action is grounded, even if denoted as separately stated claims and related to different legal theories of recovery. *See Smith v. Russell Sage College,* 54 N.Y.2d 185, 445 N.Y.S.2d 68 (1981). For the purpose of this analysis, it is immaterial whether a party was a plaintiff or defendant in the first action, as the key to the analysis is the operative facts. *See, e.g., Kartiganer Associates, P.C., v. Wehran Engineering, P.C.*, 92 A.D.2d 911, 460 N.Y.S.2d 124 (2d Dep't 1983).

Applying New York law, the Second Circuit has stated that it is the facts surrounding the transaction or occurrence which operate for the purposes of defining a cause of action, not the legal theory upon which a litigant relies. *See Saud v. Bank of New York*, 929 F.2d 916, 919 (2nd Cir. 1991) (quoting *Expert Electric v. Levine*, 554 F.2d 1227, 1234 (2nd Cir. 1977)). Consequently, the Second Circuit has held that judgments rendered in prior suits may be given preclusive effect in a subsequent action between the same parties or their privies asserting a RICO claim that could have been, but was not expressly asserting in the earlier litigation. *Saud*, 929 F.2d at 919; *See also Singh v. Parnes*, 199 F.Supp.2d 152, 159-60 (S.D.N.Y. 2002).

29

In determining whether or not to afford a state court judgment preclusive effect, federal courts look at whether: (1) the same transaction or connected series of transactions is at issue; (2) the same evidence is needed to support both claims; and (3) the facts essential to the second claim were present in the first. *NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2nd Cir. 1983); *see also Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 111-12 (2nd Cir. 2000).

The U.S. Court of Appeals dealt with a case similar to the facts at bar. In *Stringer v. Liinve*, 92 Fed. Appx. 818, 2004 WL 393160 (2nd Cir. 2004) (unpublished), the defendant had been granted summary judgment against the plaintiff in a foreclosure action previously pending in New York State Court, Jefferson County. When the plaintiff then filed an action in federal district court alleging fraud stemming from the state court filings and mortgage documents, as well claims of breach of contract and libel, the district court dismissed the suit as barred by, *inter alia*, the Rooker-Feldman doctrine. The Second Circuit affirmed, holding that federal lawsuit was an impermissible attempt to relitigate whether the mortgage should have been foreclosed in the prior state court proceeding and whether evidence presented by the defendant in the state court proceeding was fraudulent. 92 Fed. Appx. at 819-820.

In the case at bar, Campbell's claim – challenging HSBC's standing to commence the foreclosure action against her as well as the veracity of the documents filed in that action – is a clear violation of the Rooker-Feldman doctrine and is also barred by the doctrine of collateral estoppel. The Campbell Foreclosure Action was dismissed by order of the court dated February 25, 2010. Scher Dec., Ex. H. Campbell was represented by counsel in the Campbell Foreclosure Action and failed to raise any of these arguments during that action.

30

Likewise, Miller unsuccessfully sought, as part of the Miller Foreclosure Action, to obtain an order voiding the assignment of mortgage from MERS to HSBC. *See* Scher Dec., Ex. N. He also unsuccessfully sought dismissal of the Miller Foreclosure Action with prejudice. Both requests were denied by order of the court in the Miller Foreclosure Action dated, July 20, 2010. Scher Dec., Ex. O. Because both Campbell and Miller had a full and fair opportunity to litigate questions of standing and validity of the assignments in state court, and because those issues were actually litigated in the state court action, this claim should be dismissed.

## VI.   PLAINTIFFS' CLAIMS FOR A RESPA VIOLATION FAILS TO STATE A CAUSE OF ACTION

RESPA was enacted to provide consumers with "greater and more timely information about the costs of the real estate settlement process." 12 U.S.C. §2601 (2000). "[S]ection 2605 is designed to streamline the servicing of mortgage loans and to clarify the disclosures that loan servicers are required to make to the borrower." *Katz v. Dime Savings Bank, FSB*, 992 F. Supp. 250, 256 (W.D.N.Y. 1997). Section 2605 addresses mortgage loan servicing and escrow account administration. It requires the disclosure of "whether the servicing of the loan may be assigned, sold, or transferred . . . while the loan is outstanding" (12 U.S.C. § 2605(a)), and notice by the transferor and transferee of "any assignment, sale, or transfer of the servicing of the loan to any other person" (12 U.S.C. § 2605(b), (c)). RESPA defines a loan "servicer" as "the person responsible for servicing of a loan." See *Jacques v. U.S. Bank N.A. (In re Jacques)*, 416 B.R. 63, 70 (Bankr. E.D.N.Y. 2009). As the Baum Defendants are not loan "servicers" they are not subject to the provisions of Section 2605.

31

Nonetheless, plaintiffs claim that all of the defendants violated 12 U.S.C. §2605 by failing to provide a 15-day notice of any sale, transfer or assignment of their mortgages. Complaint, ¶¶154-156.  Even assuming that a RESPA notice was required at some point and not provided, plaintiffs have failed to assert how they were damaged by the alleged failure to receive this notice. *Gorham-Dimaggio v. Countrywide Home Loans, Inc.*, 2009 U.S. Dist. LEXIS 52078 (N.D.N.Y June 19, 2009) ("A violation of Defendants' statutory duty alone does not state a REPSA claim.").  "Without an allegation of actual pecuniary damages and proximate cause, plaintiff fails to state a claim upon which relief can be granted." *Id.* (citing *Cardiello v. Money Store, Inc.*, 2001 U.S. Dist. LEXIS 7107, 2001 WL 604007, at \*7-8 (S.D.N.Y. June 1, 2001)).

Moreover, with respect to both plaintiffs, the complaint is devoid of any allegation as to the change in servicing that they claim that they did not receive notice of or when the defendants failed to fulfill §2605's notice obligations or respond to any inquiry from plaintiffs.  Even more disturbing is the fact that Miller acknowledges in the complaint that he was advised of a change in servicing of his loan to Wells Fargo.  Complaint, ¶64.  Thus, it is clear that there is no merit to plaintiffs' RESPA claim.

## VII.   PLAINTIFFS' CLAIMS FOR FDCPA VIOLATIONS ARE BARRED BY THE STATUTE OF LIMITATIONS.

The FDCPA provides, "An action to enforce any liability under this subchapter may be brought . . . within *one year* from the date on which the violation occurs." 15 U.S.C. 1692k(d); *see also Grant v. Aurora Loan Services*, 2008 WL 4411323 (E.D.N.Y. 2008).  As the alleged violation took place at the latest, for Campbell in June of 2007 (when the foreclosure action was

commenced) and for Miller in December 2008 (when his foreclosure action was commenced), both of their FDCPA claims are time-barred and must be dismissed as matter of law. *See Sierra v. Foster & Garbus*, 47 F.Supp. 2d 393, 395 (S.D.N.Y. 1999); *Calka v. Kucker, Kraus & Bruh, LLP,* 1998 U.S. Dist. LEXIS 11868, *9 (E.D.N.Y. 1998).

## VIII. PLAINTIFFS' PUNITIVE DAMAGES CAUSE OF ACTION MUST BE DISMISSED

Plaintiffs' tenth cause of action is for "punitive damages." New York does not recognize an independent cause of action for punitive damages. Instead, "[a] demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action." *Rocanova v Equitable Life Assur. Socy. of U.S.*, 83 N.Y.2d 603, 616, 634 N.E.2d 940, 612 N.Y.S.2d 339 [1994]. Accordingly, the tenth cause of action should be dismissed as a matter of law.

## IX. THE COURT SHOULD ABSTAIN FROM RULING ON ISSUES CONCERNING SUBSTANTIVE STATE ISSUES

This case involves unsettled questions of law that acutely affect the public policy of the State of New York. Principles of comity and federalism counsel this Court to abstain from deciding Mr. Miller s and Ms. Campbell s claims. It is well settled that when a federal district court is asked to adjudicate a case involving difficult questions of state law that bear on sensitive matters of public policy, or where the exercise of federal review of a matter of state law would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial

33

public concern, a federal court must decline to decide that question. *See Burford v. Sun Oil Co.*, 319 U.S.315, 63 S.Ct. 1098 (1943); *In re Joint Eastern and Southern Dis. Asbestos Litigation,* 78 F.3d 764 (2nd Cir. 1996); *American Disposal Servs., Inc., v. O Brien*, 839 F.2d 84, 87 (2d Cir. 1988). In applying the so-called *Burford* doctrine, the state law question does not need to be determinative of state policy, nor does it have to be the central question in the dispute before the court. Rather, it is enough that exercise of federal review of the state law at issue in the case would be disruptive of state efforts to establish coherent policy with respect to a matter of substantial public concern. *Burford* at 315; *Canaday v. Koch*, 608 F. Supp. 1460, 1468 (S.D.N.Y. 1985).

While precedent does not provide a formulaic test for determining when application of the *Burford* doctrine is appropriate, the case-law is clear that three factors inform the deliberation of the court, with no factor being dispositive: (1) that a state's interest in adjudicating a class of issues trumps the federal interest in reviewing the claim in federal court, as well as the plaintiff's right to have his or her case heard by an Article III tribunal. *See New Orleans Pub. Serv., Inc., v. Council of New Orleans*, 491 U.S. 350, 351 (1989); *Feiwus v. Genpar, Inc.*, 43 F.Supp.2d 289, 295 (E.D.N.Y. 1999); (2) that the case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar. *See New Orleans Pub. Serv., Inc.*, 491 U.S. at 361 (*quoting Colorado River Water Conservation District v. United States*, 424 U.S. 800 at 814); and, (3) that federal review of that particular type of case would be disruptive to state efforts to establish a coherent policy with respect to a matter of substantial public concern. *New Orleans Pub. Serv., Inc.*, 491 U.S. at 361; *Feiwus*, 43 F.Supp.2d at 296.

34

The case before this Court is markedly similar to cases where courts of this Circuit have applied the *Burford* doctrine to abstain or stay proceedings involving sensitive issues of state law. For instance, in *Canaday v. Koch*, 608 F. Supp. 1460 (S.D.N.Y. 1985), a purported class action of homeless mothers and families sued the City of New York and many of its elected officials alleging a number of constitutional claims stemming from the city's failure to provide adequate housing to homeless mothers and families. While the plaintiffs sought relief pursuant to federal law, there, as in this case, the gravamen of plaintiffs' complaint was the defendants' alleged failure to adhere to the maze of federal, state, and city statutes governing emergency aid to needy families. *Id.* at 1463. After noting that many of the laws and regulations concerning services to be provided to the homeless were unclear, the District Court invoked the *Burford* doctrine to abstain from deciding the case. In particular, the court noted that the problem was one of predominantly local concern, that the government's obligations to the homeless were unsettled and unclear, and that a federal court ruling in this area of the law would interfere with the state's efforts to craft a comprehensive and effective policy to serve the city's homeless population. *Id.* at 1469-1470.

Because of the necessary interpretation of New York State statutory law that would have to be undertaken by this Court in deciding this dispute, this case also bears close resemblance to *Feiwus v. Genpar, Inc.*, 43 F.Supp.2d 289 (E.D.N.Y. 1999). There, a minority shareholder sued a closely held corporation and its majority shareholders, seeking dissolution or compulsory buy-out under the New York Corporations Law, as well as other relief pursuant to state and federal statutes. The District Court noted that the law of corporate dissolution involved a matter of great importance to the state, and that the exercise of federal review over corporate dissolution would

35

only disrupt New York's attempt to develop a unified policy concerning its corporations. *Id.* at 296. In articulating its reasons for declining to exercise jurisdiction over parts of the dispute involving New York corporate law, the court noted that a corporation's existence and operation were matters of purely state law, the functioning of which often required interpretation of the New York law by New York State courts. Id at 297. Consequently, federal district court review was inappropriate.

While Ms. Campbell and Mr. Miller allege a number of federal and state law claims, the essence of their claim is that defendants failed to comply with New York law on foreclosures. However, New York law governing foreclosure actions is hardly well-settled. Indeed, the defense Mr. Miller availed himself of, and that Ms. Campbell is now trying to assert offensively, is a novel defense that has only recently found any degree of success. While the defense has had some success at the trial court level, there is no Appellate Division or Court of Appeals case on point clarifying New York law, and commentators have noted that the law remains unclear. *See* Michael T. Madison, *The Law of Real Estate Financing, § 12:35. Rights and duties of parties at foreclosure—Standing of MERS and who owns the note?, at* \*3 (2009). In essence, in this suit plaintiffs are asking this Court to rule that defendants did not comply with the statutory and common law of the State of New York concerning foreclosures. Any ruling from this Court will necessarily affect several thousand homeowners in the State of New York – as evidenced by the broad class action certification plaintiffs seek. Indeed, in adjudicating this suit this Court would necessarily have to pass judgment on the practices of the mortgage industry in the electronic era, affecting pending foreclosure suits throughout the State of New York and fundamentally shaping the law of foreclosure actions in a way the courts and legislature of New York have not yet done.

## CONCLUSION

WHEREFORE, the Baum defendants respectfully request that the court enter an order, dismissing plaintiffs' second amended complaint in its entirety as against them, and granting such other and further relief the court deems necessary and proper.


Dated: Woodbury, New York
       October 18, 2010

KAUFMAN DOLOWICH VOLUCK & GONZO, LLP

By: Brett A. Scher
Attorneys for the Baum Defendants
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
(516) 681-1100
Our File No.: 045610-0002


4824-7300-4295, v. 1

37