UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONCEPCION CAMPBELL & JEFFREY F. MILLER, individually and for all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN J. BAUM, ESQ., et. al,<br><br>Defendants. | Case No. 10-cv-03800 (JBW) (JO) |

**DEFENDANTS MERSCORP INC. AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B) AND 9(b)**

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 12(b) and 9(b), the court's inherent authority, and upon the instant motion and the following Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint, such other matters as may hereafter be presented to the Court, and any other evidence that the Court deems appropriate, Defendants MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc.[1] (together "MERS") will bring the following motion to be heard before the Honorable Jack B. Weinstein, United States District Court Senior Judge, on a date and time to be designated by the Court, at the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201, for an Order granting the MERS Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint.

---

[1] Incorrectly designated as Mortgage Electronic Registrations, Inc. in the Complaint.

The MERS Defendants, pursuant to Rules 12(b)(6) and 9(b), move to dismiss Plaintiffs' Second Amended Complaint[2] ("Complaint" or "SAC") [ECF 4], and submit this Memorandum of Law in support of the motion.

## I.  NATURE OF THE MOTION

The Second Amended Complaint amounts to an allegation that filing a complaint with a technical or temporal deficiency as to standing is "mail fraud." The allegation finds no support in the law. The allegation is particularly frivolous when applied to MERS because MERS is not alleged to have been a party to the foreclosure actions. MERS' only involvement with Plaintiffs Miller or Campbell is Plaintiffs' and their lenders' designation of MERS to act as mortgagee, as nominee for the lenders and the lenders' successors and assigns. After being designated as mortgagee, MERS recorded the mortgages, and then later assigned the mortgages. Those are the only factual allegation relating to MERS in the Complaint. Nonetheless, MERS is being sued and accused of participating in an undefined RICO conspiracy. And the bank that brought the foreclosure actions complained of is not a defendant in this case.

Plaintiffs do not allege any facts that plausibly suggest that MERS committed any of the indictable crimes under 18 U.S.C. § 1961(1). The necessity to plead a pattern of criminal predicate acts is the most fundamental requirement of a RICO claim. To allege a pattern of mail fraud as the predicate acts in a RICO claim, Plaintiffs must plead, with the particularity required by Rule 9(b), misrepresentations likely to deceive and intended to deceive. Here, Plaintiffs use the words "mail fraud," but they do not allege any deception by MERS. Indeed, they do not allege any representations or communications by MERS to the Plaintiffs, truthful or untruthful.

---

[2] The Complaint is incorrectly titled First Amended Complaint by Plaintiffs.

In fact, at not time do Plaintiffs allege any actions of any kind taken by MERS directed toward the Plaintiffs, or any actions taken by MERS that could plausibly be linked to any alleged harm.

Plaintiffs' failure to meet the pleading standard becomes more evident when their allegations are examined individually. Plaintiff Miller not only fails to plead that MERS made any representations to him, misleading or otherwise, he affirmatively pleads that he was never misled as to anything. Miller's allegations are that through an alleged "scheme," which is not described in any manner, the Defendants intended to allow HSBC to foreclose on Miller's property without standing. SAC ¶¶ 89, 103. Yet Miller pleads that he objected to the foreclosure on the grounds that HSBC lacked standing. *Id.* ¶ 89. Miller, therefore, affirmatively pleads that there was no deception. Additionally, Miller contends that HSBC attempted to foreclose without standing because no documentation was produced to show that the mortgage security instrument on his property was assigned to HSBC prior to HSBC initiating the foreclosure. *Id.* ¶ 83. But, whether a party produces proper documentation of an assignment is not a matter of a criminal fraud, it is a simple evidentiary matter in a civil action. As such, Miller's contentions cannot support a criminal fraud claim.

Moreover, it does not appear from the Complaint that Miller intends to sue MERS because there are no allegations against MERS. The "Miller Facts" are pled in paragraphs 62-96 of the Complaint. In those 34 paragraphs, Miller alleges three "facts" regarding MERS: (1) that MERS was the "nominee" for Miller's lender on the mortgage security instrument, SAC ¶ 62; (2) that MERS assigned the mortgage to HSBC on December 12, 2008, *id.* ¶ 77; and (3) that "upon information and belief," MERS did not have authority to assign the Mortgage to HSBC and did not "produce documentation [in Miller's case] that an assignment was made." *Id.* ¶ 83, 84. There is no explanation as to why MERS would "produce documentation" in a case to which

it was not a party. There are no other allegations against MERS by Miller. And the concluding paragraphs of the "Miller Facts" solely address the Baum Defendants and the filing of the foreclosure complaint as the alleged cause of Miller's damages. *Id.* ¶91-96. Regardless of whether Miller's pleadings are directed toward MERS, he fails to allege any wrongdoing by MERS. All of Miller's claims should, therefore, be dismissed.

Campbell's pleadings are equally deficient. In the 49 paragraphs of "Campbell Facts," Campbell alleges only two facts about MERS: (1) that Campbell and her lender designated MERS as the mortgagee on the mortgage security instrument, *id.* ¶ 12-13; and (2) that when Campbell defaulted on her promissory note and HSBC sued to enforce the note through foreclosure, "no assignment existed [of the mortgage] from Defendant MERS to HSBC." *Id.* ¶ 34. Campbell additionally alleges that the satisfaction of mortgage, which released Campbell from her mortgage with HSBC after she paid the loan, was somehow "fictitious, false, and fraudulent." *Id.* ¶ 46. But Campbell does not explain how this is relevant to the cause of action alleged in the Complaint against MERS, or why she believes that HSBC still has a mortgage.

Overall, both Plaintiffs allege **only** that (1) MERS was designated as the mortgagee on their mortgages, and (2) MERS failed to effectively assign its interest in the mortgage to HSBC prior to HSBC initiating foreclosure actions. Accepting these allegations as true, Plaintiffs have failed to plead any cause of action against MERS.

Acting as mortgagee, as nominee for lender and lender's successors or assigns, is one of the principle services MERS has provided since its inception in 1993. MERS' legal capacity to provide this service, including the recording of the security instruments in the county land records, as nominee for the lender, was first formally approved by New York's courts in 2006. *See MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 861 N.E.2d 81, 828 NY.S.2d 266 (2006). Since

that time, MERS' capacity to serve as mortgagee and to assign the mortgage to either the original note holder/lender or to a successor note holder has been affirmed. *E.g.*, *U.S. Bank N.A. v. Flynn*, 897 N.Y.S.2d 855, 859 (2010) ("a written assignment of the note and mortgage by MERS, in its capacity as nominee, confers good title to the assignee"). Indeed, Plaintiffs implicitly acknowledge this by alleging that HSBC did not have standing to foreclose because MERS had not assigned the mortgage to HSBC at the time HSBC filed its foreclosure complaint. SAC ¶ 34. Plaintiffs' allegation that HSBC's alleged failure to obtain the assignment from MERS prior to initiating foreclosure somehow amounts to a crime by MERS is frivolous and finds no support in the law.

In sum, there is not a single allegations of wrongdoing by MERS. Yet MERS is inexplicably alleged to be part of an unexplained criminal conspiracy, which is not supported by any allegations of criminal wrongdoing by any party. Stripped of the absurd allegation of a conspiratorial plan to lend money to people who cannot repay it--although no lenders are sued-- the only factual allegations in the Complaint are that HSBC did not have standing to initiate foreclosure actions on Plaintiffs' properties. In the case of Miller, HSBC was given leave to amend to show standing. In the case of Campbell, she paid the note and obtained a satisfaction of mortgage. These are not allegations of crimes. Most importantly, they are not allegations that involve MERS. It is an abuse of the judicial process to bring this claim, which is based on whether HSBC--a non-party to this action--had standing in prior state court lawsuits, as the basis for alleged RICO claims against MERS.

Plaintiffs also purport to bring claims under three federal criminal statutes for which there are no private causes of action and which must, therefore, be dismissed. Likewise, Plaintiffs' claims under RESPA, FDCPA, and for unjust enrichment are wholly unsupported by fact or law.

Because Plaintiffs plead no facts that plausibly state a cause of action, the Second Amended Complaint should be dismissed.

## II. BACKGROUND AND ALLEGATIONS IN SECOND AMENDED COMPLAINT

### A. MERS as Mortgagee

MERS and the MERS® System electronically track the mortgage interests of MERS' members.  When a mortgage lender loans money to a home buyer, two documents are obtained from a borrower:  (1) a promissory note; and (2) a mortgage instrument.  The promissory note is a negotiable instrument under Article 3 of the Uniform Commercial Code, and, as such, it is often bought and sold.  The security instrument or mortgage is typically recorded in the local land records so that the lien holder's priority is established.

At the origination of the loan, the lender takes possession of the note (and becomes the holder of the note), and the borrower and lender designate MERS (as the lender's nominee) to serve as the mortgagee or beneficiary such that the lender's secured interests in the property are held by MERS.  The borrower(s), in this case Plaintiffs, agree in the mortgage contract that it is MERS, as the nominee of the lender, who will serve as the mortgagee.  The mortgage is recorded with MERS as mortgagee.  This practice has been expressly approved by New York's courts.  *MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 861 N.E.2d 81, 828 NY.S.2d 266 (2006) (explaining how MERS and the MERS® System work and holding that MERS mortgages must be accepted and recorded by the county clerk).

As the note is sold, the MERS® System tracks who holds the note and thus who has the beneficial rights to the secured interest.  If the sale of the note involves MERS members, MERS remains the named mortgagee of record.  Because MERS remains the mortgagee in the local land records, when the note is sold the seller does not and need not assign the mortgage to lender's successor and assign for recording.  Through this process, the multitude of costs associated with

preparing and recording assignments of mortgages are saved. If a note is in default, MERS assigns its interest in the mortgage to the holder of the note, who then initiates a foreclosure action. That is what occurred in both the Campbell and Miller defaults.

**B.  Allegations from Second Amended Complaint Regarding Plaintiff Campbell**

- Campbell borrowed money from HSBC Mortgage Corporation and executed a mortgage agreement naming MERS as the mortgagee, and MERS recorded the mortgage. SAC ¶ 12-13 & Exhibit A.[3]

- HSBC Mortgage Corporation filed a foreclosure complaint against Campbell, through Steven J. Baum, P.C., on June 7, 2007. *Id.* ¶ 26.

- MERS had not assigned the mortgage to HSBC upon HSBC's commencement of the foreclosure. *Id.* ¶34

- Campbell paid off the loan and a satisfaction of mortgage was recorded on October 30, 2007. *Id.* ¶ 36.

- Plaintiffs allege that the Campbell satisfaction of mortgage was signed by Rebecca Cosgrove as an officer of MERS, that, upon information and belief, Rebecca Cosgrove is not an officer of MERS, and that the satisfaction of mortgage is false and fraudulent. *Id.* ¶40, 43, 45.

**C.  Allegations from Second Amended Complaint Regarding Plaintiff Miller**

- Miller closed a loan with Real Estate Mortgage Network of New Jersey as lender, and Miller's mortgage names MERS as nominee for lender. *Id.* ¶ 62-63.

---

[3]  The Second Amended Complaint refers to "Exhibit 'A'–attached hereto and made a part hereof as if fully set forth herein," but does not attach any exhibits. The exhibits were, however, attached to the first amended complaint. MERS will, therefore, presume that those are the exhibits to which Plaintiffs refer.

- On December 12, 2008, HSBC initiated a foreclosure action as trustee for Wells Fargo Alternative Loan Trust (WFALT). *Id.* ¶ 69, 71.

- MERS assigned the mortgage to HSBC, which assignment was recorded on December 26, 2008. *Id.* ¶ 78.

- Miller alleges that, upon information and belief, MERS did not have authority to assign the mortgage to HSBC. *Id.* ¶ 84.

- The Sullivan County Supreme Court held that HSBC did not have standing and dismissed the foreclosure complaint. *Id.* ¶ 92.

### D. General Allegations

- Paragraph 105, SAC:

    Upon information and belief, Defendant MERS and its bank members and shareholders acting by themselves or through or with the other persons, associations and/or companies, have formulated, directed, controlled, or participated in the acts or practices of Defendants Baum and all other Defendants named herein as set forth in this Complaint, including developing, producing, creating, and disseminating to Plaintiffs and the purported class members internationally [sic] false, fraudulent and deliberately deceitful (a) collection letters regarding impending foreclosures, (b) Notice of Pendencies, (c) Summons and complaint for Foreclosure, (d) other legal documents filed with courts and clerks throughout the State of New York and (e) Reinstatement and Payoff letters.

- The general allegations pled "upon information and belief" in paragraph 105 are contradicted by the remainder of Plaintiffs' pleadings. MERS is not alleged to have sent anything to Plaintiffs or filed any of the items listed paragraph 105.

### III.  STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1974 (2007). The obligation to provide the grounds of entitlement to relief requires more than labels and

conclusions; the allegations must be sufficient to raise a right to relief above the speculative level. *Id*. at 1964-65. Although factual allegations in the Complaint must be accepted as true and the facts must be construed in the light most favorable to the plaintiff, a court will not accept as true a plaintiff's legal conclusions or conclusory allegations. *See Ashcroft v. Iqbal*, 550 S. Ct. 1937, 1949 (2009); *Metlife Investors USA Ins. Co. v. Zeidman*, 2010 WL 3418251 (E.D.N.Y 2010).

The heightened pleading requirements of Fed. R. Civ. P. 9(b) also apply where, as here, Plaintiffs allege RICO claims based on mail or wire fraud. *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995). To satisfy the requirements of Rule 9(b), the Second Amended Complaint must specify the details of the alleged fraudulent statements and must allege facts that give rise to a strong inference of fraudulent intent. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

## IV. ARGUMENT

### A. Counts I-III – Plaintiffs Fail to Plead a RICO Claim

#### 1) The purpose of RICO

At the heart of a RICO claim is the allegation that the defendants are involved in criminal racketeering. Congress' intentions in passing RICO were in "protecting legitimate businesses from infiltration by organized crime." *United States v. Porcelli*, 865 F.2d 1352, 1362 (2d Cir. 1989), *cert. denied.* RICO seeks to accomplish this goal by providing for "severe" criminal and civil penalties. *Beck v. Prupis*, 529 U.S. 494, 496 (2000). Because RICO was originally directed at organized crime and was premised on serious criminal activity, courts have found that "[c]ivil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)). Because "the mere assertion of a RICO

claim . . . has an almost inevitable stigmatizing affect on those named as defendant, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Id.* (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)). Against this background, courts must be vigilant in guarding against plaintiffs who would use RICO allegations to improperly secure access to the federal courts.

### 2) The elements of a RICO claim

To state a RICO claim, Plaintiffs must allege "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of § 1962. *Pinnacle Consultants, Ltd. v. Leucadia Nat. Corp.*, 101 F.3d 900, 903 - 904 (2d Cir. 1996) (citations omitted). "In establishing a violation of § 1962, the plaintiff must prove, *inter alia,* a 'pattern of racketeering activity.' Racketeering activity includes the commission of specified state-law crimes, conduct indictable under various provisions within Title 18 of the United States Code, including mail and wire fraud, and certain other federal offenses." *Id.* (citations omitted).

Thus, a pattern of racketeering activity means the commission of a pattern of indictable crimes as listed under 18 U.S.C. § 1961(1). *Id.*; *see also Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999) ("RICO's list of acts constituting predicate acts of racketeering activity is exhaustive") (overruled on other grounds). Here, MERSCORP is not alleged, with specificity or otherwise, to have committed any offense listed within 18 U.S.C. § 1961(1).

### 3) Filing a lawsuit without standing is not mail fraud or any other indictable offense

Plaintiffs purport to predicate their RICO allegations on the theory that Defendants committed "mail fraud." SAC ¶¶ 107, 110, 141. Plaintiffs allege that Defendants committed "mail fraud," but Plaintiffs do not allege any fraudulent or deceptive activity or any scheme to

deceive. The Second Circuit Court of Appeals expressly held that "[t]he mail fraud statute requires some element of deception." *McLaughlin v. Anderson*, 962 F.2d 187, 192 -193 (2d Cir. 1992) ("[plaintiff] has alleged that the April 9th letter was part of some sort of wrongful conduct. An allegation of wrongful conduct, however, is insufficient since 'not every use of the mails or wires in furtherance of an unlawful scheme to deprive another of property constitutes mail or wire fraud.'" (citing *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,* 904 F.2d 786, 791 (1st Cir.1990), *cert. denied,* 498 U.S. 992, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990))); *see United States v. Starr,* 816 F.2d 94 (2d Cir.1987) (holding that mail fraud requires use of a scheme or artifice). The deception required in a mail fraud allegation "must involve some sort of fraudulent misrepresentation or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406 (3d Cir.1991). For example, the Second Circuit holds that the "element of deception requirement is satisfied where the mailing itself is misleading or where there is some other deception which the mailing serves." *McLaughlin*, 962 F.2d at 193. Here, neither is alleged. Because Plaintiffs do not allege any misrepresentations or omissions by MERS, they cannot allege violations of the federal mail fraud statute as a basis for a pattern of criminal acts.

Although Plaintiffs purport to allege predicate acts of mail fraud, the only factual allegations in the Complaint are allegations that HSBC filed lawsuits against Plaintiffs without standing. But there is no basis whatsoever for Plaintiffs' proposition that a party who files a complaint without standing commits a crime, and doing so is certainly not one of the enumerated indictable offenses listed in 18 U.S.C. § 1961(1). *Annulli*, 200 F.3d at 200. At most, Plaintiffs allege that HSBC and Baum were incorrect about a disputed point of law. This is not a crime--if it were, there would be a RICO case following every lawsuit. And, of course, Plaintiffs do not

and cannot allege that MERS had any involvement in filing the foreclosure claims against Plaintiffs. The allegations against MERS simply describe MERS being designated as mortgagee, as nominee for Plaintiffs' lenders--a portion of MERS' business that has been affirmatively held by New York courts to be in accordance with the law. *Flynn*, 897 N.Y.S.2d at 859; *Romaine*, 828 N.Y.S.2d at 269.

Plaintiffs' allegations are that HSBC Bank, who is not a defendant in this action, foreclosed on their property without standing. *See* SAC ¶¶ 34, 50, 89, 92. **There are no allegations in the Complaint that Plaintiffs were deceived;** not by HSBC Bank, not by Baum, and not by MERS. Nor is there an allegation that anyone else was deceived or intended to be deceived. Rather, there are vague unexplained allegations of a "scheme" related to the nationwide recession, *id.* at ¶¶ 97-100, and allegations that assignments were made after a foreclosure action was initiated, or that assignments were executed by agents without authority to do so. *Id.* ¶¶ 28, 34, 83-84. These are not allegations of mail fraud.

Even if Plaintiffs had pled that they were deceived in some way, the filing of a lawsuit cannot be the basis of a predicate act in a RICO claim. *Kashelkar v. Rubin & Rothman*, 97 F.Supp.2d 383 (S.D.N.Y 2000) (rejecting allegations that "[d]efendants violated the wire fraud statute by transmitting and receiving 'falsified' legal papers"); *Goldberg v. Lynch*, 1998 WL 321446 (S.D.N.Y 1998) ("This court has already rejected the notion that [litigation and pre-litigation] can form the basis of a claim for mail or wire fraud"); *Von Bulow v. Von Bulow*, 657 F.Supp 1134, 1145 (S.D. N.Y. 1987); *Gabovitch v. Shear*, 1995 WL 697319, *2 (1st Cir. 1995) ("Numerous courts have held that the filing of litigation--no matter how lacking in merit--does not constitute a predicate racketeering act of extortion."); *Paul S. Mullin & Assoc. v. Bassett*, 632 F.Supp 532, 540 (D. Del 1986).

And there are no allegations—because there could not be—that MERS was a party or represented a party in either foreclosure action. In both cases, MERS assigned the mortgage security instrument to HSBC, and HSBC, as the mortgagee of record and alleged holder of the promissory note, attempted to enforce the promissory notes by filing foreclosure actions. *See* SAC ¶¶ 26, 69. Because a lawsuit cannot be the basis for a RICO predicate act, and because there are no allegations of any other actions by MERS that deceived or misled Plaintiffs, the Second Amended Complaint fails to plead a single predicate criminal act, much less a pattern of criminal acts, and should be dismissed.

### 4) Plaintiff Campbell's claims are barred by res judicata

Campbell's prior foreclosure action occurred in a New York state court, so New York's *res judicata* doctrine governs. *See Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466, 482, 483 n. 24 (1982). Under New York law, the doctrine of *res judicata* or claim preclusion bars future litigation of claims that were or could have been raised in a prior proceeding where that prior proceeding resulted in a final judgment on the merits. *Boguslavsky v. South Richmond Securities Inc.*, 225 F.3d 127, 130 (2d Cir.2000) (per curiam). This doctrine also applies to defenses that could have been raised or decided in a prior action, *Clarke v. Frank*, 960 F.2d 1146, 1150 (2d Cir.1992), including defenses to a foreclosure action, *Drew v. Chase Manhattan Bank*, NA, No. 95 Civ. 3933(JGK), 1998 WL 430549, at *7 (S.D.N.Y. July 30, 1998) (quoting *Gray v. Bankers Trust Co.*, 442 N.Y.S.2d 610, 612 (3d Dep't 1981) (citations omitted), appeal denied, 459 N.Y.S.2d 1026 (1983)). A party may not remain silent in an action in which she is a defendant and then bring a second action on the basis of a preexisting claim for relief that would impair the rights or interests established in the first action. *Henry Modell & Co. v. Minister, Elders & Deacons of Ref. Prot. Dutch Church,* 68 N.Y.2d 456, 462 n. 2 (1986) (citations omitted).

A holding by this Court that HSBC's foreclosure action upon Campbell's property was part of a criminal enterprise would necessarily impair rights and interests established by the state court's order discontinuing all causes of action, including "any and all counterclaims and cross claims." *See* Order of Discontinuance, Exhibit H to Defendant Baum's Motion to Dismiss.[4] The discontinuance resulted from Plaintiff's satisfaction of the mortgage and was a final judgment of dismissal. Had Plaintiff desired to avoid the damages that she now alleges were caused by a fraudulent attempt to foreclose, the time to have made such allegations was during the pendency of that foreclosure action—not after the foreclosure action had gone to final judgment. Following the issuance of the order discontinuing all of Campbell's counterclaims or cross-claims, *res judicata* bars Campbell from asserting those claims in a separate action.

B. **Counts IV-VI—The Federal Crimes Upon Which Plaintiffs Base Counts IV-VI Do Not Provide For Private Causes of Action**

In Counts IV through VI, Plaintiffs attempt to allege causes of action for wire fraud under 18 U.S.C. § 1343, obstruction of justice under 18 U.S.C. § 1503, and false oaths under 18 U.S.C. § 1623, respectively. SAC ¶¶ 156-162. But 18 U.S.C. § 1343, which creates a federal wire fraud crime, does not provide a private cause of action. *E.g. Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 478 (E.D.N.Y. 1998) ("Nor may Vasile bring an action alleging wire or mail fraud, because the respective statutes do not create a private right of action." (citing *Official*

---

[4] "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Matters of public record, such as court filings, may also be considered in deciding a motion to dismiss, without converting the motion to one for summary judgment. *Blue Tree Hotels, Inc. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). Here, Plaintiffs have attached records from the state court foreclosure actions to the Second Amended Complaint, and made extensive references to the state court records. Therefore, the records from the state court actions, which are also a matter of public record, can be considered by the Court in deciding the motion to dismiss without converting the motion to one for summary judgment.

*Publications, Inc. v. Kable News Co.,* 884 F.2d 664, 667 (2d Cir.1989))); *Spiegel v. Quality Bakers of America Co-op., Inc.* 1992 WL 349799, *3 (S.D.N.Y. 1992) ("mail fraud, wire fraud, and illegal monetary transactions in property claims involve federal criminal statutes which do not provide private rights of action"); *Pappas v. Arfaras*, 1991 WL 218072, at *2 (D.Conn. Aug. 27, 1991) (no legislative history or case law indicates that either 18 U.S.C. § 1341 (mail fraud) or 18 U.S.C. § 1343 (wire fraud) offers basis for private cause of action).

Similarly, 18 U.S.C. § 1503, provides no private right of action for obstruction of justice. *E.g. Intersimone v. Bell*, 1980 WL 2237, *9 (S.D.N.Y. 1980) ("Plaintiff also cites 18 U.S.C. §§ 242, 245(b), 1503 and 1504 but these are criminal statutes, none of which creates a private civil cause of action."); *Shaw v. Neece,* 727 F.2d 947, 949 (10th Cir.1984) (holding that 18 U.S.C. § 1503 does not create a private cause of action under § 1983); *Burke v. Patchen* WL 2783490, *1 -2 (D.Conn. 2008) ("Here, there is no evidence that Congress intended there to be a private cause of action under 18 U.S.C. § 1503 . . . Therefore, Mr. Burke's § 1983 claim, insofar as it is based on a violation of 18 U.S.C. § 1503, must fail.").

And 18 U.S.C. § 1623, also does not create a private right of action for making false oaths. *E.g. Faraldo v. Kessler*, WL 216608, *5-6 (E.D.N.Y. 2008) ("Plaintiff also attempts to invoke the jurisdiction of this Court by asserting claims for violations of . . . 18 U.S.C. § 1623, which addresses false declarations before a jury or grand jury.  However, none of those federal criminal statutes provide a private right of action."); *Piorkowski v. Parziale,* 2003 WL 21037353, at * 8 (D.Conn. May 7, 2003) (holding that 18 U.S.C. §§ 1001, 1621 and 1623 do not provide a civil cause of action); *Traveler v. CSX Transportation, Inc.,* 2007 WL 1830807, at * 2 (N.D. Ind. June 22, 2007) (holding that 18 U.S.C. §§ 1621 and 1623 are criminal statutes which do not provide a civil right of action for damages); *Isbell v. Stewart & Stevenson, Ltd.,* 9 F. Supp. 2d

731, 734 (S.D. Tex. 1998) (finding that there is no basis under 18 U.S.C. §§ 1621 and 1623 for any private right of action).

There is, therefore, not private right of action for Plaintiffs' Counts four through six, and the Counts must be dismissed.

### C. Count VII – Plaintiffs Fail to Plead a Claim For Unjust Enrichment

The three elements of an unjust enrichment claim under New York law are: "(1) ... the defendant benefitted; (2) at the plaintiff's expense; and (3) ... equity and good conscience require restitution." *Federal Treasury Enterprise Sojuzplodoimport v. Spirits Intern. N.V.*, 2010 WL 3933560, *2 (2d Cir. 2010). There are no allegations in the Second Amended Complaint that MERS obtained any money at Plaintiffs' expense, whether from Plaintiffs or from any other source related to the foreclosure actions filed against Plaintiffs. In fact, Miller alleges that he was awarded sanctions against HSBC when HSBC's foreclosure action against him was dismissed. SAC ¶ 92. And Campbell only alleges that MERS was the recorded mortgagee on Campbell's mortgage. *Id.* ¶¶ 12-13. Because there are no allegations that MERS was enriched, unjustly or otherwise, Plaintiffs have not made a claim for unjust enrichment and Count seven of the Second Amended Complaint should be dismissed.

### D. COUNT VIII – Plaintiffs Fail to plead a violation of § 2605 of RESPA

The statute upon which Plaintiffs purport to base Count eight, 12 U.S.C. § 2605, requires that "each servicer of any federally regulated mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1), (2010); *Beckford v. Citibank N.A.*, 2000 WL 1585684, *2 (S.D.N.Y. 2000). "Servicer" is defined in the statute as "the person responsible for servicing of a loan (including the person who makes or holds a loan **if** such person also services the loan)." 12 U.S.C.

§ 2605(i)(2). And "servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan." *Id.* § 2605(3).

First, Plaintiffs cannot and do not allege that MERS was a servicer of their loans or that MERS ever received any scheduled payments from Plaintiffs. Therefore, section 2605 is inapplicable to MERS on its face. *Id.*; *see also Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 2009 WL 1748743, *8 (N.D.N.Y. 2009) (dismissing a § 2605 claim where the "claim does not appear to be targeted at the moving defendants . . . because Section 6 applies only to loan servicers, and lenders acting as servicers . . . . Because New Century was not Allah's servicer, he fails to state a claim against New Century or the individual defendants associated with New Century."); *Dolan v. Fairbanks Capital Corp.*, 2005 WL 1971006, *5 (E.D.N.Y. 2005) (dismissing the § 2605 claim where the "[c]omplaint is devoid of any allegations that either PMI or FCHC made any federally related loans to Plaintiff, serviced his loan with FCC, or collected any payments from him"); *Daw v. Peoples Bank & Trust Co.*, 5 Fed.Appx. 504, 2001 WL 195077 (7th Cir. 2001) (holding that RESPA "did not apply to lender's assignment of mortgage to guarantors who had paid off defaulted loan; no servicing rights were assigned"); *Jones v. ABN Amro Mortg. Group, Inc.*, 606 F.3d 119 (3d Cir. 2010) (holding that "[e]ven though mortgagees performed typical loan servicing activities of collecting periodic mortgage payments from mortgagors and passing payments on to lenders, mortgagees were not 'loan servicers' under RESPA, and accordingly, owed no duty to provide notice required under RESPA to mortgagors when the servicing of the mortgage loans at issue were transferred to loan servicing agent"). Because MERS is not the servicer, 12 U.S.C. § 2605 is unavailable to Plaintiffs as a cause of action.

Second, in addition to the statute being inapplicable to MERS, Campbell does not plead that the servicing rights on her loan were ever assigned, and Miller affirmatively pleads that he "received notice that the servicing was transferred." SAC ¶ 64. And neither Plaintiff alleges any damages resulting from a violation of section 2605. Even if section 2605 were applicable to MERS, Plaintiffs have made no allegations that the duty to notify the borrower of an assignment, sale, or transfer was breached. Indeed, Plaintiffs affirmatively state that such duty was not breached. And Plaintiffs allege no damages that were caused by a violation of section 2605. *See Allah v. New Century Mortg. Corp.*, 2006 WL 3196851, *3 (E.D.N.Y. 2006) ("by alleging a breach of RESPA duties alone without alleging actual damages and the proximate cause of the breach of duty to those damages, Plaintiff fails to state a RESPA claim"). Plaintiffs have not pled any facts to support a claim for relief under 12 U.S.C. § 2605, as such, Count eight should be dismissed.

### E. Count IX – Plaintiffs' Fair Debt Collection Practices Act Claim is not Directed Toward MERS

Count nine in the Second Amended Complaint alleges that "Defendants Baum were and are debt collector [sic] under the FDCPA. SAC ¶ 178. Each paragraph in Count nine is similarly directed solely at the Baum Defendants, *id.* ¶¶ 178-183, and there are no allegations in the Complaint that MERS collected or attempted to collect any money from Plaintiffs. Therefore, Plaintiffs have not stated a cause of action against MERS under FDCPA, and the cause of action should be dismissed.

### F. Count X – Punitive Damages

New York does not recognize an independent cause of action for punitive damages. A request for punitive damages "possesses no viability absent its attachment to a substantive cause

of action." *Rocanova v. Equitable Life Assur. Soc'y of U.S.*, 83 N.Y.2d 603, 616, 634 N.E.2d 940 (1994).  Accordingly, Plaintiffs' cause of action for punitive damages should be dismissed.

## V.  CONCLUSION

Wherefore, the MERS Defendants respectfully request that the Court enter an order dismissing Plaintiffs' Second Amended Complaint.

Dated: Miami, Florida
November 22, 2010

MORGAN, LEWIS & BOCKIUS LLP

By:   s/Robert M. Brochin
Robert M. Brochin
*Admitted Pro Hac Vice*
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131-2339
305-415-3456

*Attorneys for Defendants MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2010, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

>Susan Chana Lask
>244 Fifth Avenue, #2369
>New York, NY 10001
>212-358-5762
>Fax: 212-000-0000
>Email: susanlesq@verizon.net
>*Attorney for Plaintiffs*
>
>Brett A Scher
>Kaufman Dolowich Voluck & Gonzo LLP
>135 Crossways Park Drive, Suite 201
>Woodbury, NY 11797
>516-681-1100
>Fax: 516-681-1101
>Email: bscher@kdvglaw.com
>*Attorneys for Defendants Steven J. Baum, Esq., Steven J. Baum, PC, Stephanie M. Vampotic, and Dawn Hanzlik-Hexemer, Esq.*

>s/Robert M. Brochin
>Robert M. Brochin