```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK




----------------------------X
                            :
CONCEPCION CAMPBELL,        :
et al.,                     :    10-CV-3800 (JBW)(MLO)
            Plaintiff.      :
                            :    February 10, 2011
                            :
            V.              :    Brooklyn, New York
                            :
STEVEN J. BAUM, ESQ.,       :
et al.,                     :
            Defendant.      :
----------------------------X


         TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
        BEFORE THE HONORABLE MICHAEL L. ORENSTEIN
             UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          SUSAN CHANA LASK, ESQ.




For the Defendant:          BRETT A. SCHER, ESQ.
                            ANDREW B. BOESE, ESQ.


Audio Operator:


Court Transcriber:          ARIA TRANSCRIPTIONS
                            c/o Elizabeth Barron
                            375 Salt Point Turnpike, #5D
                            Poughkeepsie, NY 12603
                            (215) 767-7700


Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

1           THE CLERK:  Civil cause for pretrial conference,

2    Campbell v. Baum, Esq., et al., docket number 10-CV-3800.

3           Counsel, state your appearances for the record,

4    please.  For the plaintiff?

5           MS. LASK:  Susan Chana Lask for plaintiffs, 244 5th

6    Avenue, New York, New York.

7           THE COURT:  Good morning.

8           MS. LASK:  Good morning, Your Honor.

9           MR. SCHER:  Brett Scher, Your Honor, on behalf of

10   the Baum defendants, Kaufman, Dolowich, Voluck & Gonzo.

11          THE COURT:  Good morning.

12          MR. SCHER:  Good morning.

13          MR. BOESE:  Andrew Boese from Morgan, Lewis &

14   Bockius, on behalf of the Mers defendants.

15          THE COURT:  Good morning.

16          MR. BOESE:  Good morning, Your Honor.

17          THE COURT:  All right, folks.  So you've had a

18   number of discovery disputes that have been pending for a

19   while.  Have you made any progress in narrowing or resolving

20   your disputes?

21          MS. LASK:  No, Your Honor, nothing.

22          THE COURT:  All right.  We're going to resolve

23   them today and we're going to get this case back on track in

24   terms of discovery.  I want to make clear a few ground

25   rules, which I'm surprised that I have to make clear to you

1   folks, but let's be clear about certain things.  In general,

2   requests for discovery are independent of other requests.

3          Ms. Lask, you actually point that out in one of

4   your letters, citing 26(d)(2), and yet you have insisted

5   that you cannot provide discovery until you get it.  I don't

6   understand why it makes sense to take both of those

7   positions but requests are independent.  You do not withhold

8   discovery on the ground that you have not gotten it.

9          Second, with respect to a protective order, in the

10  absence of an agreed upon protective order or a court order

11  of protection, a party must produce discoverable

12  information.  If you haven't gotten an agreed upon

13  protective order and you think you need one, you ask me for

14  one.  And if a party has asked for one, I want specific

15  objections to specific proposals.

16         A party must not delay providing responsive

17  documents on the ground that the same documents can be

18  requested again at a deposition, which I have seen, much to

19  my dismay.

20         If a party has no information responsive to a

21  request, say so explicitly in the response to the request,

22  and make that response specific to the specific request.

23  You don't have to waive any objection but I am not going to

24  spend time resolving disputes based on an objection where

25  the party says, but in any event, we simply don't have the

1    information.  I expect every party to say so explicitly.

2         If one of the objections being preserved is

3    burdensomeness or harassment or vexatiousness, the response

4    must explain in detail -- you're nodding your head, Ms.

5    Lask, but this is directed to you.  The response must

6    explain in detail why it is unduly burdensome to produce

7    nothing.

8         There is no formatting requirement in the Federal

9    Rules of Civil Procedure.  My experience has been that most

10   word processing formats are recognized by most software.

11   But in any event, it is not a basis to withhold discovery or

12   withhold response based on a preference that your opponent

13   provide a request in a particular format.

14        Finally -- well, not finally.  I expect you folks

15   to make a good faith effort through personal contact to

16   narrow or resolve your disputes before coming to court with

17   them.  And when you feel you must come to court, I think it

18   serves everybody's interests if, instead of jumping

19   immediately to the most severe sanction that can possibly be

20   granted, you ask instead for relief that will allow the

21   parties to resolve the case on the merits.

22        Finally, in terms of general observations, in

23   light of the problems that I've seen -- I've rarely seen a

24   case where the breakdown is this profound.  I think it would

25   make sense for you folks to deal attorney to attorney.

1    Please don't make requests of an adversary's support staff,

2    other than to speak to the attorney.  If the attorney

3    doesn't respond promptly, feel free to send a letter, but I

4    don't want to have satellite disputes over who said what to

5    whose secretary.

6           All right, now, document demands:  There is no

7    numerical limit on document demands, period.  It is improper

8    to refuse to respond to document demands simply because they

9    exceed a certain number.

10          I want all documents to be produced in a way that

11   plainly identifies the documents responsive to each request

12   for discovery.  And if you folks can't reach an agreement on

13   the costs of production, we're going to set a protocol for

14   each attorney to provide unrestricted access in that

15   attorney's office for the documents it is producing, for

16   purposes of inspection, and I mean unrestricted access for a

17   significant amount of time.

18          I strongly urge you folks to consider being

19   courteous and cooperative with each other, as the local

20   rules require, and to consider, instead of putting on

21   yourself the burden of making your office available in an

22   unrestricted way to your adversary, to simply taking the

23   time to copy documents and provide them, as most attorneys

24   do.

25          Interrogatories:  There is of course the general

1    limitation of 25 including subparts, absent consent or a

2    court order.  If you want more, explain the need.  However,

3    this is a case in which there is an extensive complaint with

4    many factual allegations, and it seems to be fair that with

5    respect to allegations in the complaint and affirmative

6    allegations of fact in any responsive pleading, the

7    adversary is entitled to know what the party who pleaded the

8    allegation had in mind, what the factual support is.  And if

9    that requires more than 25, I intend to grant more than 25.

10   I don't intend to allow parties to engage in self-help by

11   simply ignoring those responses -- those interrogatories.

12            Also improper in response to interrogatories are,

13   as examples, the complaint speaks for itself.  If the

14   complaint spoke for itself, there would not be an

15   interrogatory.  Or, and this pertains to interrogatories or

16   document demands, something along the lines of, you already

17   have the information or you could get it elsewhere.  Those

18   are not proper responses.

19            With those general principles in mind, let's turn

20   to the specific disputes.  Defendants' document requests.

21            Ms. Lask, you refused to respond to any requests

22   beyond the first 25; is that correct?

23            MS. LASK:  Your Honor, following Rule 33, I

24   understood that he would have to make a motion, and I

25   understood that --

```
 1              THE COURT:  Excuse me.  Let's examine that,
 2  please.
 3              MS. LASK:  Okay.
 4              THE COURT:  Following Rule 33, interrogatories to
 5  parties.  What has that to do with documents?
 6              MS. LASK:  Oh, the documents, I'm sorry.
 7              THE COURT:  Yes.  You refused to respond to any
 8  document requests beyond the first 25; is that not correct?
 9              MS. LASK:  Let me find his thing.  I don't recall
10  doing that but --
11              THE COURT:  You don't recall?
12              MS. LASK:  Not this second.
13              THE COURT:  I recall.  I saw it.
14              MS. LASK:  Your Honor, I don't.
15              THE COURT:  It was improper.
16              MS. LASK:  Hold on.
17              THE COURT:  Ms. Lask, if you're not familiar with
18  your own responses, that's fine, but we're not going to
19  pause on it now.  It was improper, you did it.
20              Beyond the number of requests, is there any reason
21  why you shouldn't provide what you have, particularly since
22  you said in one of your letters that you don't have
23  anything?
24              MS. LASK:  What I have is -- actually, I gave them
25  everything I have, Your Honor.
```

1           THE COURT:  Then you will say so, but you will say

2   so item by item.  You will certify --

3           MS. LASK:  Yes, I will.

4           THE COURT:  -- that you have nothing responsive to

5   that request.

6           MS. LASK:  Okay.

7           THE COURT:  And I want that to be based on a

8   reasonable inquiry, that you have in fact consulted your

9   clients and done a good faith search for responsive

10  documents.  Of course, you will be bound by that response.

11          I find a lot of the boiler plate objections to be

12  entirely inappropriate, so I expect all responsive documents

13  to all of the requests to be provided.

14          Defendants' interrogatories:  You engaged in self-

15  help by refusing to respond to interrogatories 26 through 56

16  and really provided substantive responses to very few.  I

17  take it now that you understand that you cannot respond by

18  saying, the complaint speaks for itself or to say that the

19  defendants have access to the information from other

20  sources.  You will in fact respond promptly to all of the

21  interrogatories, and by respond I mean actually provide the

22  responsive information.  Ms. Lask?

23          MS. LASK:  Yes, Your Honor.  I'm writing it down.

24          THE COURT:  Is there any reason I should not order

25  you to do that?

1    MS. LASK:  I am certainly not going to argue with

2 that, Your Honor.  I was not being malicious, I was going by

3 the rules.  And I thought we were all doing -- we all

4 limited ourselves, myself, Mers, to 25.  But yes, Your

5 Honor, I will comply with what you just ordered.

6    THE COURT:  You know, that's fine as to the last

7 30 that you simply ignored.  I don't think that's the proper

8 way to do it but that's at least a colorable argument.  But

9 what about the complaint speaks for itself as a response to

10 the first 25 or objecting as harassive or vexatious, when

11 you were simply asked to say what it is you relied on in

12 making a factual allegation in your complaint?  I just don't

13 understand that.

14    MS. LASK:  Your Honor, when I do say -- I'm just

15 looking real quickly, like number 24.  I say, the complaint

16 speaks for itself, but I do add the information anyway.  I'm

17 not saying the complaint speaks for itself and I'm not

18 saying anything else.  For instance, if we look at number

19 24, I do --

20    THE COURT:  One moment.

21    MS. LASK:  Okay, sure.  It's page 8 of my

22 response.  And number 23.  Whenever I've said it, Your

23 Honor, I didn't just drop it right there.  I also provide a

24 response.  In my -- when I'm saying the complaint speaks for

25 itself, I made that complaint so detailed, I thought it gave

1   more information than anyone could ever -- I made it

2   factually detailed for the very reason to give them every

3   piece of factual information that I had.  So even answering

4   these, I'm trying to say, look at the complaint as well but

5   here's a response.  I don't know what more I can answer but

6   I could try, and I gave this to my --

7            THE COURT:  All right, let's take up number 24.

8            MS. LASK:  Okay, sure.

9            THE COURT:  Mr. Scher, what more are you looking

10   for on that?

11            MR. SCHER:  I'm sorry.

12            MS. LASK:  Number 24, page 8.

13            THE COURT:  Set forth with specificity the basis

14   for your allegation that plaintiff Miller has been damaged

15   by losing his right to sell his home because of defendants'

16   false foreclosure complaint, as alleged in paragraph 95 of

17   the complaint.

18            MR. SCHER:  Your Honor, on that particular one,

19   what I was looking for is more information about this sale,

20   in terms of who it was to, were there contracts?  This

21   obviously dovetailed with the document demand, which was

22   ignored, which would have hopefully given us the documents

23   and could have been referred to in the interrogatory

24   response, saying here's the purported sale contract, here's

25   the broker listing, here's something that I could have had

1    to say okay, this is his alleged RICO damages, I can look at

2    it and analyze it and see whether it actually is in fact

3    that he lost out on some particular sale that he claims in

4    the complaint that he did.

5              THE COURT:  All right.

6              Ms. Lask?

7              MS. LASK:  Your Honor, Mr. Scher seems to forget

8    that we gave him 107 pages and I did get the broker's

9    contract and I did provide it to him.

10             THE COURT:  Well, you didn't provide any

11   directions to that in this response.  And you know that

12   under Rule 33, which you cited to me before, if you want

13   your response -- if you want him to understand that this

14   response incorporates those documents by reference, you need

15   to say so.

16             MS. LASK:  Your Honor, I will do that, and I

17   apologize if I honestly was ignorant not to do that, but the

18   documents are in his possession, he has them.

19             THE COURT:  Look, comply with Rule 33.

20             MS. LASK:  That's fine.

21             THE COURT:  If you want to incorporate by

22   reference a specific document, and don't just say, you have

23   documents responsive to this.  Say the specific document

24   that provides this information is, and however you want to

25   refer to it, by Bates number, by specific description.

1          So on the plaintiffs' side, you're going to

2     provide all of the documents, item by item response

3     identifying all existing documents within your possession,

4     custody or control.  For each document demand, you're going

5     to provide a supplemental response as to every

6     interrogatory, including all responsive information,

7     specifically identifying responsive documents, if that's how

8     you wish to do so.

9          Now, on the plaintiffs' requests, I think this is

10    mainly with respect to the Baum defendants.  Let's start

11    with the protective order, then we're back to the requests

12    themselves.

13         Is there anything besides the protective order,

14    Mr. Scher, that is preventing you from providing documents?

15         MR. SCHER:  No, Your Honor.  As a matter of fact,

16    we've made clear that the documents have been available for

17    inspection since I believe early -- I'm sorry, mid-December.

18         THE COURT:  All right.

19         Ms. Lask, what is the objection to the proposed

20    protective order?

21         MS. LASK:  His protective order?

22         THE COURT:  Have you proposed one?

23         MS. LASK:  No, we have not proposed one.

24         THE COURT:  Okay.  So then I would think that,

25    that being the only one in the record, that's the one we're

1    most likely discussing.

2              MS. LASK:  His confidentiality agreement.

3              THE COURT:  Just direct me, paragraph by

4    paragraph, to the parts that you wish me to change.

5              (Pause in Proceedings)

6              THE COURT:  I take it that we're at this point --

7              MS. LASK:  This is the four-page -- the five-page

8    -- it's five pages is what I have; is that correct?

9              THE COURT:  I have an eight-page document.  Ms.

10   Lask, I take it we are in this position because you have

11   actually thought through what your objections are to the

12   proposal.  Is that not correct?

13             MS. LASK:  The -- I didn't --

14             THE COURT:  I don't propose to sit here while you

15   read it for the first time and say, wait a minute, maybe

16   this one is a problem.

17             MS. LASK:  No.  The confidentiality agreement

18   wasn't the problem.  The problem was --

19             THE COURT:  All right, then I will so order it.

20             MS. LASK:  Yes.

21             THE COURT:  What was the problem?

22             MS. LASK:  The problem was, he was sending out the

23   documents to us, which I've never -- and the day he was

24   sending out all the documents -- I think he said he had

25   three hundred pages or something -- he said, you need to pay

1    for them.  I said, Brett, how could you just do that?  And

2    he pulled out the documents and he said, I'm stopping Fed

3    Ex, you're not getting anything.  I don't think that's a way

4    to handle discovery.  You send the documents.  You don't

5    withhold them and say, I want a check from you, and you

6    don't just send somebody a bill without telling them ahead

7    of time.  I've never --

8              THE COURT:  Folks, I expect you all to act like

9    grown-ups and professionals.

10             MS. LASK:  Yes.

11             THE COURT:  I have not yet seen that.

12             MS. LASK:  Yes.

13             THE COURT:  If you don't want to just produce

14   things at your own expense or reach an agreement about how

15   you're going to share costs, fine, be that way.  But if you

16   can't reach an agreement about visiting each other's

17   offices, I'll give you a room here.  You will spend your

18   days in the jury room and you will not leave there until you

19   are done with your review.  I don't expect to see that

20   problem further.

21             Do you understand?

22             MR. SCHER:  Yes, Your Honor.

23             THE COURT:  Do you?

24             MS. LASK:  Yes, Your Honor.

25             THE COURT:  That's good.

1          MS. LASK:  We've produced every --

2          THE COURT:  Stop, please.

3          So the protective order will be so ordered, as

4     proposed, as of today.  The documents will be produced.

5          Are there any other objections that we should

6     spend our time on, Mr. Scher, with respect to the

7     plaintiffs' document requests or interrogatories?

8          MR. SCHER:  The only -- I don't know if this is

9     what you were planning on getting at.

10          THE COURT:  No, I'm not getting at anything other

11     than this:  If there is a reason for me to do anything other

12     than to have each party provide all responsive information

13     to all of its adversary's document requests and

14     interrogatories, I want to hear it now, item by item.

15          MR. SCHER:  The only other issue is the joinder

16     discovery.

17          THE COURT:  Yeah, well, we'll get to that in a

18     moment.

19          MR. SCHER:  Okay.  Then that's the only issue that

20     I had, Your Honor.

21          THE COURT:  Okay, so that's the ones identifying

22     attorneys who work for your firm or your client's firm?

23          MR. SCHER:  Yeah.  Your Honor, the joinder

24     discovery deadline has passed.

25          THE COURT:  You know something?  You folks have so

1    blown the deadlines through your lack of cooperation that if

2    something needs to -- if a deadline needs to be adjusted to

3    accommodate the fact that you folks have not provided

4    discovery to one another and have not cooperated as you're

5    supposed to, I'm going to reset the deadlines, so let's not

6    worry about that.

7          Now, I read Judge Weinstein's order fairly clearly

8    that he sees there being fairly discrete legal issues

9    relating to the nature of the complaint that he wants to

10   resolve on an expedited basis.  I don't think we need to

11   have discovery aimed solely at identifying other people

12   against whom you can bring the same claims to get to the

13   point where Judge Weinstein can resolve the issues he wants

14   resolved on the merits.

15         Does that seem like a fair characterization?

16         MS. LASK:  Yes, Your Honor.

17         THE COURT:  Okay.  So then let's not delay this

18   needlessly by pursuing discovery that isn't going to the

19   merits but goes to identifying other people against whom you

20   might wish to make the same claims.

21         MS. LASK:  Can I say one thing for clarification,

22   please?

23         THE COURT:  Yes, of course.

24         MS. LASK:  The only thing that we've been finding

25   out -- because of the discovery issues, the best I could do

1    was go to other attorneys in other cases on the internet and

2    get depositions and everything.  I got as much -- tens of

3    thousands of pages.  That's fine.  I'm going through it.

4           And what I discovered on my own, after the

5    deadlines -- and I'm not making an issue with it right now.

6    What they did is, they waited until after the deadline and

7    then I get a signing agreement between Mr. Baum and Mers,

8    which really helps the plaintiff's case.  That signing

9    agreement I got January 12th, which was way after the

10   deadline for joinder.  I asked for it before.  They held it

11   back and then they said, too bad, you lost your right.

12          That signing agreement tells me that I can bring

13   in just one party, Pillar (ph) Processing.  When I looked

14   through the documents, now I realize that Pillar Processing

15   was actually part of this with Steven Baum.

16          THE COURT:  If the case survives the dispositve

17   motion that Judge Weinstein is waiting to decide, we can

18   certainly take up then requests to amend, to add new parties

19   to the same claims, whatever claims survive that motion

20   process.

21          But, again, I'm going to ask you this time to be

22   responsive to the question that I ask.  Is there some reason

23   not to defer discovery that is only geared towards

24   identifying new people to sue on the same charges?

25          MS. LASK:  At this point, I think I know that it's

1   only Pillar that we'd like to add at some point, so yes.

2            THE COURT:  So you don't need discovery towards

3   joinder.

4            MS. LASK:  No, Your Honor, I think I have pretty

5   much --

6            THE COURT:  Okay, so then --

7            MS. LASK:  I received the -- January 12th is when I

8   received it.  I got the signing agreement.

9            THE COURT:  So then --

10           MS. LASK:  I would like -- I would like the

11   opportunity --

12           THE COURT:  All right.  You'd like the opportunity

13   to?

14           MS. LASK:  I wanted to amend the complaint and put

15   the right parties in there.  I wanted to -- and I discussed

16   it with them.  I'd actually like to take out a couple of

17   causes of action, you know, to clean it up, and we could

18   focus on the two main actions, which are the RICO and the

19   Fair Debt Collection Practices action.

20           I wanted to add, Your Honor, in considering Sykes

21   (ph) that just came out, the judicial 487 cause of action as

22   well, with respect to the Baum defendants.  What I was

23   researching and what I wanted to do was a cross-motion to

24   amend the complaint, and I'd like to make that -- put that

25   on the floor right now to Your Honor.

1          THE COURT:  Well, if you want to make a motion,

2     make a motion.  But right now, we have an expedited

3     discovery schedule to get you folks to the point where you

4     can take up, as Judge Weinstein hoped to do -- I'm looking

5     now for my copy of his order.  Just give me a moment,

6     please.

7          MS. LASK:  Your Honor --

8          THE COURT:  Please let me just find what I'm

9     looking for.

10         MS. LASK:  Okay, sure.

11         THE COURT:  If I have it here, which I may not.

12         MR. SCHER:  Your Honor, I have a copy, if it

13    helps.

14         THE COURT:  Yes, please.

15         All right, so it's the motion to dismiss and Judge

16    Weinstein converted it to a motion for summary judgment,

17    minimized the burden of litigation on all parties.  He did

18    so bearing in mind that the Law of Mortgages and their

19    enforcement is essentially state in nature, while the

20    gravamen of this action is a hard to prove federal RICO

21    accusation of widespread fraud with a serious criminal

22    color.

23         The point is to get to resolution of the converted

24    motion for dismissal as soon as possible.  To the extent

25    that there are other claims possibly to be brought, I think

1    we should defer that until we are past the point where Judge

2    Weinstein has addressed the issue before him.

3            Mr. Scher, the joinder-related interrogatories

4    that you object to, just run through which ones they are, so

5    we're all on the same page about what we're going to defer,

6    and we can discuss whether there should be any changes to

7    what you propose.  I have on my list 3, relating to

8    attorneys who work for Baum; 5, information about directors,

9    shareholders and employees; 6, corporate filings of Pillar;

10   7, directors, shareholders and employees of Pillar; and then

11   9, sort of a catch-all, in which the plaintiff asks the

12   defendant to identify other potential defendants.

13           MR. SCHER:  I believe plaintiff was not asking for

14   supplemental responses on 9 anymore, if I'm not mistaken.

15           THE COURT:  Is that correct?

16           MS. LASK:  We discussed it on January 3rd.  I was

17   asking for him to respond to all supplemental responses.

18           THE COURT:  Is it correct or not?

19           MS. LASK:  No, it's not correct.

20           THE COURT:  Okay, so you still want -- you still

21   want to have your adversary identify for you people whom you

22   should sue.

23           MS. LASK:  I'll withdraw it, Your Honor.  We'll

24   make that easy.  But the Pillar Processing is very

25   important.  They completely -- if you look at their answers

1    on that one, they completely blow us off, give us nothing.

2                THE COURT:  Do you have documents -- filings about

3    Pillar Processing?

4                MR. SCHER:  Your Honor, Pillar Processing is not

5    my client.

6                THE COURT:  Do you have the documents?

7                MR. SCHER:  I do not.

8                THE COURT:  Then say so, right?  This is one of

9    the things that I was trying to convey at the outset.  Let's

10   not get into litigation to avoid having you say, we don't

11   have something.

12               All right, so 9 is withdrawn, 6 you'll answer by

13   saying you don't have it.

14               MR. SCHER:  Your Honor, just for the record, in my

15   supplemental response to Ms. Lask, I specifically stated

16   that the documents sought are not in our custody or control.

17   I did -- we did give her a supplemental response, as she

18   requested.

19               MS. LASK:  Pillar Processing is a company of

20   Steven Baum.  He leases the employees.  They do have

21   documents regarding it but --

22               THE COURT:  Okay, look, I am going to -- however

23   unlikely it may seem when either one of you says, as to a

24   particular request, we don't have anything, I rely on

25   attorneys to be candid.  If we get to the point where I have

1    reason to believe that the attorneys here have been less

2    than candid in denying access to documents that they -- to

3    which they actually do have access, we're going to have a

4    very different kind of hearing, where all of the attorneys

5    are on the stand.

6            Mr. Scher, you will in any event be providing a

7    supplemental response.  It won't kill you to say once again,

8    we don't have anything responsive to number 6, if that is

9    true.  If you do have it, you'll provide it.

10           MR. SCHER:  Understood.

11           THE COURT:  3, 5 and 7, about Baum and Pillar

12   employees, directors, attorneys, shareholders, et cetera.

13   Any reason we can't defer that until after we have the

14   ruling from Judge Weinstein?

15           MS. LASK:  I'm going to answer the summary

16   judgment.  I'd like to know the relationship between Pillar

17   and Baum.  I found on every document that's been filed

18   Pillar is in the same office as Baum.  Also, on every

19   document that Mr. Baum files, Pillar Processing is -- has a

20   stamp on there as well.  And I think --

21           THE COURT:  I'll give you 7, which is about

22   Pillar.

23           MS. LASK:  Okay, Your Honor.

24           THE COURT:  3 and 5, attorneys, shareholders,

25   directors, employees of Baum, denied.

1          So in all other respects, the defendants will

2    provide all information responsive to all outstanding

3    interrogatories and documents -- document requests.  The

4    protective order is so ordered, with the exception that to

5    the extent you refer to the individual rules of I think it's

6    Judge Sullivan --

7          MR. SCHER:  Judge Gardafi (ph), Your Honor.

8          THE COURT:  I'm sorry?

9          MR. SCHER:  It's Judge Gardafi.

10         THE COURT:  Gardafi.  Obviously, that's inapposite

11   here; it would be Judge Weinstein.

12         All right, depositions.  Well, before we get on to

13   depositions, now that you all understand, or hopefully more

14   clearly your obligations in this case and understand that

15   you must comply with them, how quickly will we have all of

16   the document and interrogatory responses?

17         MR. SCHER:  Just to be clear, Your Honor, you've

18   been saying all the defendants to all this.  Right now --

19         THE COURT:  No outstanding --

20         MR. SCHER:  -- there are no motions to compel

21   between the Mers defendants and --

22         THE COURT:  Okay, all right.

23         MR. SCHER:  Okay.

24         THE COURT:  Any reason why this can't be done in

25   two weeks?

1          MS. LASK:  Today is February 15th.

2          THE COURT:  Today is February 10th.

3          MS. LASK:  February 10th.

4          THE COURT:  That would be February 24th.

5          MS. LASK:  Your Honor, could we have three weeks

6    at least?

7          THE COURT:  For you to say -- for you to say, item

8    by item, you don't have anything?

9          MS. LASK:  I'm going to go through it again with

10   my -- I send it to my clients.  I have an eighty-year-old

11   woman --

12         THE COURT:  Well, they've had it for quite some

13   time.

14         MS. LASK:  I also -- Jeffrey Miller just sent me

15   an e-mail the other say asking about depositions.  I said,

16   we have a hearing, and he went on a trip, I think he said

17   somewhere in Central America.

18         THE COURT:  Who is Jeffrey Miller?

19         MS. LASK:  The plaintiff.  There are two

20   plaintiffs.  Ms. Campbell is eighty, Jeffrey Miller is --

21         THE COURT:  February 24th.

22         So with the understanding that you will both have

23   in hand on February 24th all of your adversary's productions,

24   how many depositions do you have in mind and how quickly can

25   we get them done?

1          MS. LASK:  There's Steven Baum, there's Epinicke

2     Vukakis (ph) and they're doing Jeffrey Miller and the

3     eighty-year-old plaintiff, Concepcion Campbell.

4          THE COURT:  Anyone else?

5          MS. LASK:  Actually, I think we had three.  Who

6     did we have?  I noticed Steven Baum, Epinicke Vukakis.

7          MR. SCHER:  That's it.

8          MS. LASK:  Are you sure?

9          MR. SCHER:  Two plaintiffs, two defendants.

10          THE COURT:  Two plaintiffs, two defendants?

11     Anyone from Mers?

12          MS. LASK:  No.  There are depositions out there

13     and we're not going to --

14          THE COURT:  Anyone else that anyone thinks we need

15     to -- so four depositions.  Any reason we can't get that

16     done three weeks after you have the documents in hand?

17          MR. SCHER:  No.

18          THE COURT:  Ms. Lask?

19          MS. LASK:  I think it should be okay.

20          THE COURT:  Then here's how we're going to leave

21     it.  We have a deadline for documents and interrogatory

22     responses.  I'll set the deadline three weeks beyond that

23     for depositions.  I've contacted Judge Weinstein's chambers

24     just to make sure that they're okay with having to schedule

25     that -- it necessarily requires the hearing on summary

1    judgment to slip back somewhat, to accommodate this.   I

2    don't have a date for you on that.   You can contact Judge

3    Weinstein's chambers to get a new date for the summary

4    judgment hearing.

5          Now, look, we are -- I'm trying to streamline this

6    to the extent possible, so that you can get to the

7    resolution of the issue Judge Weinstein had in mind.   I'm

8    not foreclosing the possibility that there will be other

9    issues that either side might want to litigate, once you

10   have a resolution of those issues.   That's largely, of

11   course, your desire, Ms. Lask, to amend.

12         That's not to say that it may not be in your

13   interest to reach an agreement to have an amendment now, so

14   that you only have one round of dispositive litigation

15   before Judge Weinstein.   I'm not going to force that on you,

16   certainly not in the first instance, but I do think it's

17   something you might want to consider, and I will be more

18   than open to a slight adjustment of our schedule to

19   accommodate that, if it's something you agree on.   But

20   absent agreement, I think we're best advised to try and get

21   the issues before Judge Weinstein ready for him to resolve.

22         MS. LASK:  Your Honor?

23         THE COURT:  Yes.

24         MS. LASK:  I don't want to upset the Court but,

25   again --

1          THE COURT:  You won't.

2          MS. LASK:  Okay.  If I don't do the right thing

3   and preserve my rights to amend under the rules as I

4   understand them, I think I should do a cross-motion or --

5   there's no way they're going to agree, I don't think.  The

6   only person I want -- the only entity I want to add is

7   Pillar, which is critical to this whole scenario.

8          THE COURT:  I guess what I don't understand is --

9   and walk me through the reasoning here.  What you're saying

10  is, you have the same RICO claim and some other related

11  claims that you can bring against a party who is not here,

12  but that is not substantively different from the claims

13  against the pending parties, correct?

14         MS. LASK:  Yes.  Mers -- if I don't add Pillar now

15  and get some quick information about Pillar and why it was

16  created -- I know why but I want to get the information to

17  prove my summary judgment to Judge Weinstein.

18         THE COURT:  Is there something that impedes you

19  from doing that without having them as a party?

20         MS. LASK:  Is there something that prevents me

21  from not adding -- from doing it later?

22         THE COURT:  You say you need information.  I guess

23  -- look, if it's a claim, winning or losing the issue before

24  Judge Weinstein won't affect your ability to pursue a non-

25  party on any claim that is viable.

1          MS. LASK:  You mean to freely amend later, if

2    this --

3          THE COURT:  Or bring a separate lawsuit, however

4    you prefer to do it.  But you don't need to do that to have

5    a fair resolution of the claims before Judge Weinstein.  If

6    it's a matter of getting information to litigate fairly the

7    claims before Judge Weinstein, I may be missing something

8    but I don't see why it matters if they're a party.

9          MS. LASK:  It's a matter of showing the enterprise

10   -- it clarifies --

11         THE COURT:  Forgive me for interrupting but the

12   enterprise is a matter of proof, and it is a separate

13   concept under RICO from the defendant.  In fact, the

14   enterprise has to be distinct from the defendant.  So

15   whether or not Pillar or anyone else is a party does not

16   affect your ability to prove that Pillar is a part of the

17   enterprise.

18         MS. LASK:  Without alleging it in the complaint at

19   this point?  So what you're saying is, in my summary

20   judgment, I'm going to explain that with facts from

21   somewhere.

22         THE COURT:  Look, you're going to explain however

23   you see fit, how you satisfy the enterprise requirement of a

24   RICO claim.

25         MS. LASK:  If it's not alleged in the complaint

1　now, what I'm concerned with is -- now that I know, it makes

2　the enterprise that much stronger and that much more

3　understandable to Judge Weinstein, to the Court.

4　　　　　THE COURT:  That the enterprise -- that one of the

5　members of the enterprise is Pillar.

6　　　　　MS. LASK:  Yes.

7　　　　　THE COURT:  Okay.  Is there reason not to allow an

8　amendment that says just that?

9　　　　　MR. SCHER:  To --

10　　　　　THE COURT:  Say that -- to have the plaintiff say,

11　we think there's an enterprise out there that's violating

12　RICO or members which are violating RICO, and you guys are

13　violating RICO by carrying out -- by conducting the affairs

14　of this enterprise through a pattern of racketeering

15　activity.  So the amendment, as I understand the proposal by

16　Ms. Lask, is to amend the description of the enterprise to

17　include Pillar.

18　　　　　MR. SCHER:  Your Honor, obviously, I don't know

19　why this allegation hasn't been made earlier, if she's

20　alleging --

21　　　　　THE COURT:  As we tried to clear up earlier, we're

22　not going to worry about the timing aspect of it, so that we

23　can get to a fair resolution of the merits.  Am I correct?

24　　　　　MR. SCHER:  Right.

25　　　　　THE COURT:  Okay.  So that being off to the side

1    and not part of anything that would be responsive to the

2    question I asked you, let's try again.

3             MR. SCHER:  To the extent not adding Pillar as a

4    party but simply adding an allegation to the RICO enterprise

5    element that plaintiffs are alleging upon information and

6    belief that Pillar is also -- I wouldn't have any objection

7    to adding that allegation.

8             THE COURT:  Is that all what you want to do?

9             MS. LASK:  No.  What I want to do is add them as a

10   party.  That's what I wanted to do.  I wanted to add them as

11   a party so I could explain it clearly to the Court.

12            THE COURT:  But that's the thing; you're saying --

13   you're somehow connecting the addition of a party to your

14   ability to explain something.  You can explain something

15   quite well, I'm sure, regardless of who's across the table

16   from you.  There seems to be no objection to changing the

17   description of the enterprise to include Pillar, and that

18   seems to be key to a fair resolution of the issue before

19   Judge Weinstein.

20            He wants to take a look at the viability of the

21   RICO claim.  And I can understand, in litigating that, you

22   want to have -- to take your best shot at saying, here's why

23   we can succeed on a RICO claim, because there is this

24   enterprise and the enterprise includes Pillar.  There's no

25   objection to that.

1          But in terms of adding Pillar as a party, the

2    claim may or may not be viable at all against Baum, against

3    Pillar, against anyone.  If it is viable, according to Judge

4    Weinstein, what I'm saying is we can address later adding

5    Pillar as a party.  But adding them now won't affect your

6    ability to litigate the issue before Judge Weinstein but

7    will slow down the process of getting to that.  That's sort

8    of how I see it and I wanted to see if you have any

9    disagreement with that.

10         MS. LASK:  If the Court is talking about

11   explaining it in the summary judgment, yes, I could do that.

12         THE COURT:  Okay.

13         MS. LASK:  But I just -- if we went to depositions

14   and something came out and I needed to amend it based on the

15   depositions, would the Court hear that?

16         THE COURT:  I will hear any motion at any time.

17   I'm not saying I will grant the relief.

18         MS. LASK:  Okay.

19         THE COURT:  But we don't know what's going to

20   happen tomorrow, and we're not going to plan around what e

21   don't know, all right.  Okay.

22         Anything else for today?

23         MS. LASK:  If we -- if anything happened, Your

24   Honor, that we needed maybe a couple more days and we

25   agreed, would the Court acknowledge that, just in case the

1  24th is a little too short?

2          THE COURT:  We'll cross that bridge when we come

3  to it.

4          MS. LASK:  Okay.

5          THE COURT:  And no order of mine is ever going to

6  prevent you folks from cooperating with each other and

7  exchanging information on a voluntary basis.

8          MS. LASK:  Thank you.

9          THE COURT:  What I very much doubt I am going to

10 do is adjust the deadlines in a way that will further delay

11 the resolution of the summary judgment motion.

12          MR. BOESE:  I have just two quick questions, Your

13 Honor.

14          THE COURT:  Yes, sir.

15          MR. BOESE:  Are the dates in which Ms. Lask

16 responds to the dispositive motions, are those going to

17 shift in addition to the hearing date for the summary

18 judgment and our replies?

19          THE COURT:  I don't have the -- I don't think I

20 do.  Hold on a second -- the schedule before me.

21          MR. BOESE:  Currently, the response would be due

22 on the 15th and then our reply on the 24th.

23          THE COURT:  I think we have to change -- change

24 those dates to accommodate that.

25          MS. LASK:  Can we -- you said three weeks after,

1    then we're going to hold depositions.  So --

2             THE COURT:  Right, so we need to go beyond --

3             MS. LASK:  That brings us -- right -- March 8th.

4             THE COURT:  Why don't I do this?  I don't have

5    specific dates in mind and I don't want to do the math right

6    now.  We had a schedule geared towards the March 4th date

7    that had these interim dates for the submissions.  We are

8    delaying the close of discovery through whatever the date

9    is, three weeks after February 24th.  I'm just going to add

10   to your submission dates whatever that delay is.

11            I want to run that by Judge Weinstein's chambers

12   to make sure that he's okay with that, but I assume it will

13   be.  And if the particular dates for those submissions are

14   things that you want to agree to change, just write me a

15   letter, okay?

16            MS. LASK:  Thank you, Your Honor.

17            MR. BOESE:  Judge, my only other understanding is

18   that discovery is closed as between Mers and the plaintiffs,

19   other than --

20            THE COURT:  Is there anything outstanding between

21   you folks?

22            MR. BOESE:  -- without further motion.  I mean,

23   there are no motions pending.

24            THE COURT:  Is there anything outstanding that

25   either of you is looking for?

1          MS. LASK:  No.  I think most -- no, we've been

2    talking.

3          THE COURT:  Okay.

4          MS. LASK:  We're fine.  But I don't think there's

5    an order -- there could be an order that says discovery is

6    closed but I think we're fine.  I'm not --

7          THE COURT:  I'm not going to look for problems

8    here.  If somebody learns something in the remaining

9    discovery -- this is something that's always --

10         MR. BOESE:  I understand --

11         THE COURT:  -- always inherent in the process.

12         MR. BOESE:  I understand that, Your Honor.

13   There's going to be depositions.

14         THE COURT:  Right, and you learn something and

15   say, wait, I need to follow up on that.  I'm not going to

16   foreclose it.  It sounds like you folks -- between plaintiff

17   and Mers, it sounds like there's no pending disputes.

18         All right, thank you all.

19         MS. LASK:  Thank you very much, Your Honor.

20         MR. SCHER:  Thank you.

21                    * * * * * * * *

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18      I certify that the foregoing is a correct transcript

19  from the electronic sound recording of the proceedings in

20  the above-entitled matter.

21

22

23

24

25  ELIZABETH BARRON                    February 17, 2011